IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA ex rel.<br>  MONTEZ BAKER, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. 08 C 0918 |
| | ) | |
| DONALD A. HULICK, Warden, | ) | |
| | ) | The Honorable |
| | ) | Suzanne B. Conlon, |
| Respondent. | ) | Judge Presiding. |

**ANSWER**

Pursuant to Rule 5 of the Rules Governing Section 2254 Cases in the United States District Courts and this Court's February 19, 2008 order directing respondent to answer, respondent GERARDO ACEVEDO[1] submits this answer to petitioner's petition for writ of habeas corpus and states as follows:

1.    Petitioner MONTEZ BAKER, is incarcerated at the Hill Correctional Center in Galesburg, Illinois, where he is in the custody of Gerardo Acevedo.  Petitioner's prison identification number is K70097.

---

[1]    Since the filing of this action, petitioner was transferred to the Hill Correctional Center, where Gerardo Acevedo is the warden.  Thus, Mr. Acevedo is the proper respondent in this matter and should be substituted in Mr. Hulick's stead.  *See* Rule 2(a) of the Rules Governing Section 2254 Cases in the United States District Courts; Fed. R. Civ. P. 25(d)(1); *Bridges v. Chambers,* 425 F.3d 1048, 1049-50 (7th Cir. 2005); *Rumsfeld v. Padilla,* 542 U.S. 426, 434-35 (2004) (citing *Hogan v. Hanks,* 97 F.3d 189, 190 (7th Cir. 1996)).

2.    In 2002, following a bench trial in the Circuit Court of Cook County, petitioner was convicted of the first degree murder of Darryl Landry and the aggravated battery of Kip Bell.  *See* Rule 23 Order, *People v. Baker,* No. 1-03-0688 (Ill.App. 2004) (Exhibit A).  For his crimes, petitioner was sentenced to concurrent prison terms of 30 years and five years, respectively.  *Id* at 1.  Petitioner's convictions stemmed from his stabbing of Landry during a physical altercation with him.  Bell was injured when he attempted to break up the fight between the two. *Id.* at 3.

3.    Petitioner appealed his judgment of conviction to the Illinois Appellate Court, First District, raising three claims:

(1)    his conviction for first degree murder should be reduced to second degree murder because the evidence established that petitioner acted under a sudden and intense passion resulting from serious provocation of mutual combat;

(2)    his sentences were excessive; and

(3)    the sentencing order should be amended to reflect a conviction of only one count of first degree murder, rather than two.

*See* Pet. Br., *People v. Baker*, 1-03-0688 (Exhibit B); State Br., *People v. Baker*, 1-03-0688 (Exhibit C); Pet. Reply Br., *People v. Baker*, 1-03-0688 (Exhibit D).

4.    In 2004, the state appellate court affirmed petitioner's convictions, finding that petitioner was the aggressor and that a rational trier of fact could have found that there was no mutual combat sufficient to support a finding of serious provocation.  Exhibit A.  Additionally, the state appellate court vacated petitioner's sentences and remanded for the imposition of consecutive sentences.  *Id.* at 8.

5.      Petitioner filed a pro se petition for leave to appeal (PLA) in the Illinois Supreme Court, arguing that his conviction for first degree murder should be reduced to second degree murder because the evidence established that petitioner acted under a sudden and intense passion resulting from serious provocation of mutual combat.  *See* PLA, *People v. Baker,* No. 99787 (Exhibit E). The supreme court denied the PLA on March 30, 2005.  *See* Order, *People v. Baker,* No. 99787 (Ill. 2005) (Exhibit F).

6.      On September 3, 2005, petitioner filed a pro se postconviction petition pursuant to 725 ILCS 5/122-1, *et seq.,* in the Circuit Court of Cook County, raising the following grounds for relief:

(1)     trial counsel was ineffective for failing to interview or call the medical examiner who performed the autopsy on Landry, and for stipulating to the medical examiner's report;

(2)     appellate counsel was ineffective for failing to raise trial counsel's ineffectiveness on direct appeal; and

(3)     the trial court improperly sentenced petitioner to consecutive prison terms.

*See* Postconviction petition, *People v. Baker,* No. 00 CR 20175 (Exhibit G); Pet. Br., *People v. Baker,* No. 1-05-3937 (Exhibit H); State Br., *People v. Baker,* No. 1-05-3937 (Exhibit I); Reply Br., *People v. Baker,* No. 1-05-3937 (Exhibit J).  The trial court summarily dismissed the petition, finding that the claims were frivolous and without merit.  *See* Order, *People v. Baker,* No. 00 CR 20175 (Exhibit K).  Petitioner appealed.

7.      The state appellate court affirmed, determining that petitioner's allegations were inadequate to demonstrate the gist of a meritorious claim of ineffective assistance of counsel.  *See* Rule 23 Order, *People v. Baker,* No. 1-05-3937 (Ill.App. 2006) (Exhibit L).  Petitioner filed a PLA that was denied on January 24, 2007.  *See* PLA, *People v. Baker,* No. 103828 (Exhibit M); Order, *People v. Baker,* No. 103828 (Ill. 2007) (Exhibit N).

8.      Meanwhile, on direct appeal, the appellate court's mandate was stayed pending the direct appeal PLA filed in the Illinois Supreme Court.  Exhibit E.  After the supreme court denied the PLA on March 30, 2005, the state appellate court issued its mandate in No. 1-03-0688 on April 27, 2005.  On May 31, 2005, the trial court resentenced petitioner to consecutive prison terms of 25 years for murder and 5 years for aggravated battery.  *See* Certified Statement of Conviction/Disposition, *People v. Baker,* No. 00 CR 20175 (Exhibit O).

9.      Petitioner appealed, arguing that:

(1)     the trial court erred in resentencing petitioner without allowing him to present mitigating evidence; and

(2)     the trial court failed to adequately admonish him regarding his right to appeal his sentence under Illinois Supreme Court Rule 605(a).

*See* Pet. Br., *People v. Baker,* No. 1-05-2181 (Exhibit P); State Br., *People v. Baker,* No. 1-05-2181 (Exhibit Q); Reply Br., *People v. Baker,* No. 1-05-2181 (Exhibit R).

10.     The state appellate court affirmed.  *See* Rule 23 Order, *People v. Baker,* No. 1-05-2181 (Ill.App. 2007) (Exhibit S).  Petitioner filed a pro se PLA in the

supreme court that raised the same claims advanced in the appellate court; it was denied on May 31, 2007. *See* PLA, *People v. Baker,* No. 104307 (Exhibit T); Order, *People v. Baker,* No. 104307 (Ill. 2007) (Exhibit U).

11.    On February 11, 2008, petitioner filed in this Court a pro se petition for habeas corpus relief pursuant to 28 U.S.C. § 2254, raising the following grounds for relief:

> (1)    trial counsel was ineffective for failing to call or investigate the medical examiner who performed the autopsy on Landry, because the medical examiner's testimony would allegedly corroborate petitioner's defense theory of mutual combat; and
>
> (2)    the trial court erred in denying petitioner's right to present mitigation factors during resentencing.

Pet. at 5a-5f.

12.    Pursuant to Rule 5 of the Rules Governing Section 2254 Cases in the United States District Courts, the following state court materials are filed under separate cover in this Court:

> Exhibit A:    Rule 23 Order, *People v. Baker,* No. 1-03-0688 (Ill.App. 2004);
>
> Exhibit B:    Pet. Br., *People v. Baker*, 1-03-0688;
>
> Exhibit C:    State Br., *People v. Baker*, 1-03-0688;
>
> Exhibit D:    Pet. Reply Br., *People v. Baker*, 1-03-0688;
>
> Exhibit E:    PLA, *People v. Baker,* No. 99787;
>
> Exhibit F:    Order, *People v. Baker,* No. 99787 (Ill. 2005);
>
> Exhibit G:    Postconviction petition, *People v. Baker,* No. 00 CR 20175;

Exhibit H:     Pet. Br., *People v. Baker,* No. 1-05-3937;

Exhibit I:     State Br., *People v. Baker,* No. 1-05-3937;

Exhibit J:     Reply Br., *People v. Baker,* No. 1-05-3937;

Exhibit K:     Order, *People v. Baker,* No. 00 CR 20175;

Exhibit L:     Rule 23 Order, *People v. Baker,* No. 1-05-3937 (Ill.App. 2006);

Exhibit M:     PLA, *People v. Baker,* No. 103828;

Exhibit N:     Order, *People v. Baker,* No. 103828 (Ill. 2007);

Exhibit O:     Certified Statement of Conviction/Disposition, *People v. Baker,* No. 00 CR 20175;

Exhibit P:     Pet. Br., *People v. Baker,* No. 1-05-2181;

Exhibit Q:     State Br., *People v. Baker,* No. 1-05-2181;

Exhibit R:     Reply Br., *People v. Baker,* No. 1-05-2181;

Exhibit S:     Rule 23 Order, *People v. Baker,* No. 1-05-2181 (Ill.App. 2007);

Exhibit T:     PLA, *People v. Baker,* No. 104307; and

Exhibit U:     Order, *People v. Baker,* No. 104307 (Ill. 2007).

13.     The entire state-court record is not filed with this answer because the petition can fairly and justly be disposed of based on the above-listed exhibits filed with this Court.  *See Simental v. Matrisciano*, 363 F.3d 607, 612 (7th Cir. 2004); *Kines v. Godinez*, 7 F.3d 674, 677 (7th Cir. 1993) (where federal habeas petitioner does not "identify any inaccuracies or incompleteness" in the appellate court factual summaries, a federal habeas court may exclusively rely on those factual summaries in adjudicating the claims contained in the habeas petition).

14.    For the reasons set forth below, petitioner is not entitled to habeas

corpus relief.  Upon the filing of this Answer, with the attendant exhibits and any

supplemental pleadings permitted by the Court, the petition should be denied.

## STATEMENT OF FACTS

The following factual recitation is taken from the state appellate court's

opinion on direct appeal (Exhibit A).  The "state court factual findings . . . are

presumed correct," and "the petitioner has the burden of rebutting the presumption

by "clear and convincing evidence."  *Rice v. Collins*, 546 U.S. 333, 338-39 (2006)

(quoting 28 U.S.C. § 2254(d)(2)); *see, e.g.*, *Amerson v. Farrey*, 492 F.3d 848, 852 (7th

Cir. 2007).

> At [petitioner's] trial, Timothy Harper testified that on the
> afternoon of July 25, 2000, he was with Kelly Sandifer in
> apartment 1401 of the building located at 624 West Division
> Street in Chicago.  He and Sandifer went to apartment 1403,
> where defendant and Landry were "arguing."  Harper left the
> apartment, but returned shortly thereafter and saw defendant
> and Landry "fighting" or "sort of wrestling."  Defendant had a
> butcher knife in his hand, Landry was weaponless, and there
> was another knife on the couch.  Hollis Holloway and [Kip]
> Bell were present and tried to break up the fight, to no avail.
> Harper saw Bell pull on Landry's legs, causing defendant and
> Landry to fall to the floor.  At that point, Landry was bleeding
> from his head and his shoulder blade.  Harper then stepped
> on the knife blade in an unsuccessful attempt to get it away
> from defendant.  While defendant was on the ground, the
> knife was in defendant's hand, resting on the floor, and
> Landry was over defendant's back, holding defendant around
> his neck.  After the fighting stopped, defendant left the
> apartment, threw the knife down the building's garbage
> incinerator, and ran down the hall.  Approximately 10
> minutes later, Harper saw defendant near the garbage
> incinerator in another building located at 630 West
> Evergreen, dressed only in his boxer shorts.  Harper asked

defendant "what you [sic] doing, man?"  Defendant replied that "[h]e should not have took [sic] my food."  Defendant also said that Landry should not have accused defendant of stealing food and that he "would kill that bitch again." According to Harper, defendant was drunk, although Harper had not seen defendant consume any alcohol that day.

Sandifer testified that she and Harper went to apartment 1403, where she saw defendant and Landry arguing.  She left the apartment, but returned shortly thereafter without Harper and saw defendant and Landry "wrestling" or "fighting."  She saw defendant stab Landry three times in the back with a knife, but Landry was weaponless.  Harper then returned to apartment 1403 and he and Bell attempted to break up the fight.  Bell suffered a cut on his arm and Landry was bleeding from his head and back.  At that point, Landry was holding defendant down "so he won't [sic] stab him again."  Landry then lost consciousness, and defendant left the apartment and threw the knife down the building's garbage incinerator chute.

On cross-examination, Sandifer testified that she did not see any punches thrown between defendant and Landry.  Defense counsel then impeached Sandifer with her grand jury testimony, wherein she testified that she had seen Landry "hit" defendant in the face.  Sandifer also testified on cross-examination that when defendant stabbed Landry, Landry was on top of defendant holding defendant's arms down.  On re-direct, Sandifer testified that at the time Landry hit defendant, defendant already had the knife in his hand.

Bell testified that on the afternoon of July 25, 2000, he Holloway, and Landry were in apartment 1403.  He heard glass breaking in the living room, and upon entering the room, Bell saw Landry holding defendant's arm against the wall "so he wouldn't stab him."  At that time, defendant had a knife in his hand, but Landry was weaponless.  Bell testified that he saw defendant stab Landry once in the back.  Bell then attempted to break up the fight, and was cut on the wrist in the process.  As defendant and Landry fell on the couch, Bell saw that Landry's back was bleeding.  Bell grabbed Landry and defendant by their legs and both Landry and defendant fell to the ground.  Harper then entered the

apartment and helped Bell in trying to break up the fight. Landry put defendant in a headlock, but began to lose his grip. Landry's eyes rolled back into his head and he fell to the ground. Defendant then left the apartment with the knife in his hand. Bell testified that he did not hear defendant and Landry argue and did not see any punches thrown.

Assistant State's Attorney Catherine Kelly testified that on July 26, 2000, defendant gave a handwritten statement. Therein, defendant stated that he first encountered Landry at his mother's apartment at 630 West Evergreen, where a fight ensued between the two men. He then went for a walk to try and relax. About an hour later, he went to his sister's apartment, apartment 1403, where he saw Landry and Holloway seated on the living room floor. Defendant walked over to Landry, kicked his feet, and told him to leave because he was still angry with Landry about their fight earlier in the day. At that point, Landry stood up and the men began to argue. Landry followed as defendant proceeded to the kitchen to grab a butcher knife with a six or eight inch blade. After returning to the living room, defendant began to point and wave the knife at Landry and told Landry to leave. Landry then punched defendant in the face and the two began to wrestle and fell on the couch. Defendant then stabbed Landry two or three times, including once in the stomach. Bell and Harper attempted to get the knife away from him, and defendant became scared and dropped the knife down the incinerator at 634 West Division. Defendant then returned to his mother's apartment building and threw his clothing down the incinerator.

The parties stipulated that a 13-inch Faberware knife with a black handle was recovered from the trash compactor at 624 West Division Street. The knife did not contain any latent fingerprints suitable for comparison and did not contain a sufficient amount of blood to be tested. The State also admitted into evidence a certified report of the autopsy performed on Landry indicating that he died from multiple stab wounds, including four to his back.

Defendant neither called witnesses nor testified in his own defense. The trial court rejected defendant's mutual combat

theory and found him guilty of first degree murder and
aggravated battery.

*See* Exhibit A at 1-4.

## ARGUMENT

### I.    Application of AEDPA

Petitioner's habeas corpus petition is governed by the amendments to 28

U.S.C. § 2254 contained in the Antiterrorism and Effective Death Penalty Act of

1996 (AEDPA).   *See Hardaway v. Young*, 302 F.3d 757, 761 (7th Cir. 2002).

### II.    Merits Adjudication Under AEDPA

Under § 2254(d), a habeas petition shall not be granted unless the state

court's adjudication of a claim "(1) resulted in a decision that was contrary to, or

involved an unreasonable application of, clearly established Federal law, as

determined by the Supreme Court of the United States; or (2) resulted in a decision

that was based on an unreasonable determination of the facts in light of the

evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).

A state court's decision is "contrary to" clearly established federal law, within

the meaning of § 2254(d)(1), if the court "applies a rule that contradicts the

governing law set forth in [Supreme Court] cases," *Williams v. Taylor*, 529 U.S. 362,

405 (2000), or "decides a case differently than [the Supreme Court has] done on a

set of materially indistinguishable facts."  *Bell v. Cone*, 535 U.S. 685, 694 (2002).

This Court is obligated to deny habeas relief under the "contrary to" clause even if

the state court's decision is not an exemplar of good legal drafting: "[a]voiding these

pitfalls does not require citation of [Supreme Court] cases – indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002) (emphasis in original).

A state court's decision involves "an unreasonable application" of federal law, within the meaning of § 2254(d)(1), when the "state court identifies the correct governing legal principle from th[e Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 410. Put another way, where "the state court's application of governing federal law is challenged, it must be shown to be not only erroneous, but objectively unreasonable." *Yarborough v. Gentry*, 540 U.S. 1, 5 (2003).

Finally, if a petitioner seeks federal habeas relief under § 2254(d)(2) by challenging the reasonableness of a state court's factual determinations, he must overcome, with clear and convincing evidence, the presumption of correctness that attaches in federal habeas proceedings to state court determinations of factual issues. *See* 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State

court, a determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence"); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003) ("Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary").  The Seventh Circuit has called this a "rigorous burden of proof."  *Sanchez v. Gilmore*, 189 F.3d 619, 623 (7th Cir. 1999).

### III.    Petitioner's Claims

### A.    Trial Counsel's Decision Not To Call The Medical Examiner As A Witness, And To Stipulate To The Medical Examiner's Medical Report, Was Strategic And Not Prejudicial.

Petitioner claims that his trial counsel was ineffective for failing to interview, investigate, and call the medical examiner as a witness, and for stipulating to the medical examiner's medical report.  Pet. at 5a.  According to petitioner, if trial counsel had made such an investigation, counsel could have demonstrated that the "tracks" of Landry's stab wounds supported a theory of mutual combat, and could have refuted the trial court's inference that Landry was attempting to flee from petitioner.  Pet. at 5b.  On appeal from the denial of petitioner's postconviction petition, the state appellate court rejected this claim:

> This court reviews ineffective assistance of counsel claims under the standard set forth in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed. 2d 674 (1984).  Under Strickland, a petitioner must prove that (1) counsel's performance was deficient; and (2) the deficient performance prejudiced the defense in that absent counsel's deficient performance, there is a reasonable probability that the results of the proceeding would have been different.  Strickland, 466 U.S. at 687, 694, 104 S.Ct. at 2064, 2068, 80 L.Ed. 2d at 693,

12

698; People v. Evans, 209 Ill.2d 194, 219-20, 808 N.E.2d 939, 953 (2004).  Under the first Strickland prong, the petitioner must demonstrate that his attorney's performance fell below an objective standard of reasonableness.  Evans, 209 Ill.2d at 220, 808 N.E.2d at 953.  Regarding the second Strickland prong, a reasonable probability that the result would have been different is a probability sufficient to undermine confidence in the outcome — or put another way, that "counsel's deficient performance rendered the result of the trial unreliable or fundamentally unfair."  Evans, 209 Ill.2d at 220, 808 N.E.2d at 953-54.  A reasonable probability of a different result is not merely a possibility of a different result.  Evans, 209 Ill.2d at 220, 808 N.E.2d at 954.  To prevail, a defendant must satisfy both the performance and prejudice prongs of Strickland.  Evans, 209 Ill.2d at 220, 808 N.E.2d at 954.

Applying these principles to the present case, petitioner's allegations are inadequate to demonstrate the gist of a meritorious claim of incompetent representation.  Initially, with respect to the investigation, the record reflects that counsel disclosed [the medical examiner] Dr. Kalekar to the prosecution as a potential witness, evidencing that counsel did not fail to investigate, but, rather, strategically chose not to call the medical examiner at trial, and instead chose to stipulate to the medical examiner's report.  See People v. Deloney, 341 Ill.App.3d 621, 634, 793 N.E.2d 189, 200 (2003).  Furthermore, to the extent that petitioner claims counsel failed to investigate "where [petitioner] stabbed the deceased," that information was indeed contained in the medical examiner's report and was therefore already considered by the finder of fact.  Accordingly, petitioner's allegations of deficient performance fail.

Moreover, although a [postconviction] petition need not present all of the details at the first stage, the petition must at least present some details. [People v. Edwards, 197 Ill.2d 239, 244, 757 N.E.2d 442, 445 (2001)].  In the present case, petitioner presented no facts to support his conclusory allegation.  On direct appeal, we explained that mutual combat would not be found where (1) the evidence showed that petitioner was the aggressor, or (2) where his actions were disproportionate to the provocation.  The evidence at

trial revealed that petitioner was the aggressor as he initiated the combat, by kicking Landry and waving a knife at him before any wrestling began. The evidence also revealed that petitioner's actions were disproportionate where he wielded a butcher's knife and Landry was, by all accounts, weaponless during the entire struggle. Furthermore, there was ample evidence to support the trial court's finding that Landry was attempting to stop petitioner from stabbing him. People v. Baker, No. 1-03-0688 (2004).

Although on appeal from his postconviction petition, petitioner argues that the medical examiner's testimony "could have supported [petitioner's] mutual combat theory," petitioner fails to allege what, if anything, the medical examiner would have testified to and has failed to explain how that testimony would have impacted the trial court's findings that petitioner was the aggressor and that his actions were disproportionate to any provocation by Landry. As such, he cannot establish a reasonable probability that the outcome of the trial would have been different.

See Exhibit L at 5-7.

As the appellate court stated, under *Strickland v. Washington*, 466 U.S. 668 (1984), petitioner must prove two elements to succeed on his ineffective assistance of counsel claim: (1) that his trial counsel's performance fell below "an objective standard of reasonableness," *id.*, 466 U.S. at 688; and (2) "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *id.* at 694. With respect to the prejudice prong of the *Strickland* test, it is not enough to show that counsel erred, or that the error had "some conceivable effect on the outcome." *Strickland*, 466 U.S. at 693. Rather, "the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A

reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. Counsel is obligated to either investigate possible defenses or make reasonable decisions that such investigations are unnecessary. *Kimmelman v. Morrison*, 447 U.S. 365, 385 (1986). But under §2254(d), petitioner "must do more than show that he would have satisfied *Strickland*'s test if his claim were being analyzed in the first instance, because under §2254(d)(1), it is not enough to convince a federal habeas court that, in its independent judgment, the state-court decision applied *Strickland* incorrectly. Rather, he must show that the [state appellate court] applied *Strickland* to his case in an objectively unreasonable manner." *Bell*, 535 U.S. at 698-99 (internal citations omitted); s*ee also Holman v. Gilmore*, 126 F.3d 876, 881 (7th Cir. 1997) ("*Strickland* builds in an element of deference to counsel's choices in conducting the litigation; §2254(d)(1) adds a layer of respect for a state court's application of the legal standard").

Here, the state appellate court held that counsel's performance was not deficient and that petitioner failed to prove he was prejudiced by counsel's failure to call the medical examiner as a witness. This determination was neither contrary to, nor an unreasonable application of, *Strickland. See Williams,* 529 U.S. at 409. First, the state appellate court reasonably determined that trial counsel's decision not to call the medical examiner as a witness was trial strategy: the record disclosed that counsel was aware of the medical examiner and even tendered the name of that potential witness to the prosecution during discovery. *See* Exhibit L at

5.  As *Strickland* instructs, decisions regarding what witnesses to call and what proof to introduce are virtually immune from second-guessing, and, on federal habeas review, are even less likely to succumb to such attacks.  *Strickland,* 466 U.S. at 688; *Holman,* 126 F.3d at 881.  When viewed under § 2254(d)(1), petitioner's challenge to trial counsel's handling of the medical examiner is without merit.  *See, e.g., Foster v. Schomig,* 223 F.3d 626, 632-34 (7th Cir. 2000) (trial counsel's decision not to call witness was strategic and could not form basis for habeas relief under § 2254(d)(1)); *Spreitzer v. Peters,* 114 F.3d 1435, 1455 (7th Cir. 1997) (reaching same conclusion in pre-AEDPA case); *People v. Flores,* 538 N.E.2d 481, 488 (Ill. 1989) ("In general, whether to call a particular witness is a matter of trial strategy").  For the same reason, petitioner has not overcome the "strong presumption" that his counsel's decision to stipulate to the medical examiner's report was "sound trial strategy," and that the state appellate court's like assessment was anything but reasonable under § 2254(d)(1).  *Strickland,* 466 U.S. at 689.  The reason for not calling the medical examiner is apparent from the record.  His report indicated that Landry died of multiple stab wounds, including several to his back.  It would be inconceivable that the medical examiner would testify differently from his report. Live testimony, consistent with the report, that Landry was stabbed several times in his back would be inconsistent with petitioner's claim that he and Landry were engaged in mutual combat.  Thus, as the state appellate court reasonably found, trial counsel's performance here was not deficient.  *Id.* at 687.

Further, contrary to petitioner's argument, it is unlikely that, based on the medical examiner's testimony, the trial court would have accepted petitioner's defense theory of mutual combat. As stated, back wounds are inconsistent with mutual combat. Furthermore, much evidence was produced at trial that indicated petitioner was the aggressor, kicking and taunting Landry before stabbing him multiple times while fighting. The evidence also showed that Landry was unarmed during the struggle. In light of these circumstances, the state appellate court's holding that petitioner failed to prove he was prejudiced by his counsel's performance was reasonable. *See Barrow v. Uchtman,* 398 F.3d 597, 606 (7th Cir. 2005) (in light of the evidence against petitioner, the state court's ruling on the second *Strickland* prong was not unreasonable). The state appellate court's overall decision that petitioner failed to demonstrate that counsel was ineffective "[was] at least minimally consistent with the facts and circumstances of the case." *Taylor v. Bradley*, 448 F.3d 942, 948 (7th Cir. 2006). Because the state appellate court took "the constitutional standard seriously and produce[d] an answer within the range of defensible positions," this Court should deny this claim. *Id.*, § 2254(d).

**B.    Petitioner's Claim That The Trial Court, On Remand, Erred In Resentencing Him To Consecutive Sentences Without Allowing Him To Present Evidence In Mitigation Is Not Cognizable On Federal Habeas Review.**

Petitioner next argues that the trial court erred in resentencing him to consecutive sentences on remand without allowing him to present evidence in mitigation. Pet. at 5e. This claim is not cognizable on federal habeas review. *See,*

*e.g., Gleason v. Welborn,* 42 F.3d 1107, 1112 (7th Cir. 1994) (sentencing claims are generally not cognizable for federal habeas review since they do not implicate federal constitutional concerns).

A state prisoner may obtain federal habeas relief "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Habeas corpus is "unavailable to remedy errors of state law." *Dellinger v. Bowen*, 301 F.3d 758, 764 (7th Cir. 2002) (citing *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991)).

Here, petitioner bases his sentencing claim primarily on state sentencing statutes 730 ILCS 5/5-5-3(d) and 730 ILCS 5/5-4-1(a). Specifically, petitioner asserts that these statutes require the trial court to hold a sentencing hearing where he could present mitigating evidence, despite the appellate court's mandate remanding only for consecutive sentences. Pet. at 5e-5f; Exhibit S at 8. Initially, it should be noted that the appellate court held that there was no error under state law. Exhibit S at 8-9. But, for habeas purposes, the salient point is that an alleged state sentencing error does not justify federal habeas relief since it does not involve an error of federal law. 28 U.S.C. § 2254(a); *Naughten*, 414 U.S. at 147; *Dellinger*, 301 F.3d at 764. Further, federal courts are bound to defer to the prerogative of the state legislature when reviewing the appropriateness of a petitioner's sentence. *See, e.g., Webster v. Detella,* 965 F.Supp. 1124, 1133 (N.D. Ill. 1997). Thus, a federal court will not normally review a state sentencing determination which, as here, falls within the sentencing range provided by a valid state statute. *See Koo v.*

18

*McBride,* 124 F.3d 869, 875 (7th Cir. 1997). In fact, federal courts in habeas proceedings will only review a state sentencing determination that is "grossly disproportionate" to the crime. *Koo,* 124 F.3d at 875. Here, as the state appellate court found, *see* Exhibit A at 7-8, the valid state sentencing statute at the time of petitioner's convictions — 730 ILCS 5/5-8-4(a), (b) — mandated the imposition of consecutive sentences. Because petitioner's claim alleges only an error of state sentencing law and does not implicate any federal right, it is not cognizable. *See United States ex rel. King v. Cahill-Masching,* 169 F.Supp.2d 849, 855 (N.D. Ill. 2001) (challenges to sentences within statutory limits, in the absence of evidence that the trial court lacked the jurisdiction to impose it or that the conviction itself was unconstitutional, are simply not cognizable on habeas review) (*citing United States v. Addonizio,* 442 U.S. 178, 186 (1979)).

In any event, petitioner's claim is foreclosed by § 2254(d)(1), as there is no clearly established Supreme Court authority that mandates that a trial court, when imposing consecutive sentences on remand, allow a defendant to submit, or resubmit, evidence in mitigation. *Calloway v. Montgomery,* 512 F.3d 940, 944-45 (7th Cir. 2008) (in absence of "clearly established" Supreme Court authority on question of constitutional law, habeas petition cannot possibly meet constraints in § 2254(d)(1), and habeas relief must be denied) (*citing Carey v. Musladin,* __ U.S. __, 127 S.Ct. 649 (2006)); *see also Lockhart v. Chandler,* 446 F.3d 721 (7th Cir. 2006) (same). Finally, petitioner's claim is barred for two procedural defaults. First, the

state appellate court held that petitioner forfeited his claim based on these statutes and only reviewed it for plain error.  *See* Exhibit S at 7; *Miranda v. Leibach,* 394 F.3d 984, 992 (7th Cir. 2005) (review of claim for plain error does not eliminate procedural default).  Second, to the extent petitioner frames this sentencing issue in his habeas petition as a federal constitutional issue, he did not present it in those terms to the state court.  *See Baldwin v. Reese,* 541 U.S. 27, 33 (2005); *Verdin v. O'Leary,* 972 F.2d 1467, 1474-75 (7th Cir. 1992).  Accordingly, he did not, as required, give the state courts the first opportunity to resolve the issue.  *Lieberman v. Thomas,* 505 F.3d 665, 670 (7th Cir. 2007).  Those two procedural defaults bar habeas relief here.  Thus, this claim should be denied.

### <u>CONCLUSION</u>

This Court should deny the instant habeas corpus petition.


April 18, 2008                                    Respectfully submitted,

                                                 LISA MADIGAN
                                                 Attorney General of Illinois


                        By:      s/ Dale M. Park
                                 DALE M. PARK, Bar # 6280822
                                 Assistant Attorney General
                                 100 West Randolph Street, 12th Floor
                                 Chicago, Illinois 60601-3218
                                 PHONE: (312) 814-2197
                                 FAX: (312) 814-2253
                                 EMAIL: dpark@atg.state.il.us

## CERTIFICATE OF SERVICE

I hereby certify that on April 18, 2008, I electronically filed respondent's **Answer** with the Clerk of the United States District Court for the Northern District of Illinois, Eastern Division, using the CM/ECF system; and I hereby certify that on the same day, I mailed by United States mail the document to the following non-registered party:

Montez Baker, K70097
Hill Correctional Center
600 South Linwood Road
P.O. Box 1700
Galesburg, IL 61402

LISA MADIGAN
Attorney General of Illinois

By:     s/ Dale M. Park
DALE M. PARK, Bar # 6280822
Assistant Attorney General
100 West Randolph Street, 12th Floor
Chicago, Illinois 60601-3218
PHONE: (312) 814-2197
FAX: (312) 814-2253
EMAIL: dpark@atg.state.il.us