

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA ex rel. MONTEZ BAKER, | ) ) ) | |
| Petitioner, | ) ) | |
| v. | ) ) | No. 08 C 0918 |
| DONALD A. HULICK, Warden, | ) ) ) | The Honorable |
| Respondent. | ) ) ) | Suzanne B. Conlon, Judge Presiding. |

*L FILED*

*APR 18 2008*

*APR 18 2008*
*MICHAEL W. DOBBINS*
*CLERK, U.S. DISTRICT COURT*

## TO THE CLERK OF THE UNITED STATES DISTRICT COURT

Pursuant to Rule 5 of the Rules Governing Section 2254 Cases in the United States District Courts, respondent hereby files the attached Exhibits to respondent's Answer in this matter:

Exhibit A:    Rule 23 Order, *People v. Baker,* No. 1-03-0688 (Ill.App. 2004);

Exhibit B:    Pet. Br., *People v. Baker*, 1-03-0688;

Exhibit C:    State Br., *People v. Baker*, 1-03-0688;

Exhibit D:    Pet. Reply Br., *People v. Baker,* 1-03-0688;

Exhibit E:    PLA, *People v. Baker,* No. 99787;

Exhibit F:    Order, *People v. Baker,* No. 99787 (Ill. 2005);

Exhibit G:    Postconviction petition, *People v. Baker,* No. 00 CR 20175;

Exhibit H:    Pet. Br., *People v. Baker,* No. 1-05-3937;

Exhibit I:    State Br., *People v. Baker,* No. 1-05-3937;

Exhibit J:    Reply Br., *People v. Baker,* No. 1-05-3937;

Exhibit K:    Order, *People v. Baker,* No. 00 CR 20175;

Exhibit L:    Rule 23 Order, *People v. Baker,* No. 1-05-3937 (Ill.App. 2006);

Exhibit M:    PLA, *People v. Baker,* No. 103828;

Exhibit N:    Order, *People v. Baker,* No. 103828 (Ill. 2007);

Exhibit O:    Certified Statement of Conviction/Disposition, *People v. Baker,* No. 00 CR 20175;

Exhibit P:    Pet. Br., *People v. Baker,* No. 1-05-2181;

Exhibit Q:    State Br., *People v. Baker,* No. 1-05-2181;

Exhibit R:    Reply Br., *People v. Baker,* No. 1-05-2181;

Exhibit S:    Rule 23 Order, *People v. Baker,* No. 1-05-2181 (Ill.App. 2007);

Exhibit T:    PLA, *People v. Baker,* No. 104307; and

Exhibit U:    Order, *People v. Baker,* No. 104307 (Ill. 2007).


April 18, 2008                          LISA MADIGAN
                                        Attorney General of Illinois

                          By:           _Dale Park_____

                                        DALE M. PARK, Bar # 6280822
                                        Assistant Attorney General
                                        100 West Randolph Street, 12th Floor
                                        Chicago, Illinois 60601-3218
                                        PHONE: (312) 814-2197
                                        FAX: (312) 814-2253
                                        EMAIL: dpark@atg.state.il.us

NOTICE
The text of this order may be
changed or corrected prior to the
time for filing of a Petition for
Rehearing or the disposition of
the same.

FOURTH DIVISION
November 4, 2004

No. 1-03-0688

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellee, | ) | |
| v. | ) | No. 00 CR 20175 |
| MONTEZ BAKER, | ) | Honorable Evelyn B. Clay, Judge Presiding. |
| Defendant-Appellant. | ) | |

O R D E R

Following a bench trial, defendant Montez Baker was convicted of the first degree murder of Darryl Landry and the aggravated battery of Kip Bell. Defendant was sentenced to prison terms of 30 years and five years, respectively, to be served concurrently. On appeal, defendant contends (1) that his first degree murder charge should be reduced to murder in the second degree because he acted under the sudden and intense passion of mutual combat when he killed Landry, and (2) that his sentences are excessive. For the following reasons, we affirm defendant's convictions, vacate the current sentences imposed, and remand for resentencing.

At trial, Timothy Harper testified that on the afternoon of July 25, 2000, he was with Kelly Sandifer in apartment 1401 of the building located at 624 West Division Street in Chicago. He and Sandifer went to apartment 1403, where defendant and Landry were "arguing." Harper left the apartment, but returned shortly thereafter and saw defendant and Landry "fighting" or "sort of wrestling." Defendant had a butcher knife in his hand, Landry was weaponless, and there



EXHIBIT A

1-03-0688

was another knife on the couch. Hollis Holloway and Bell were present and tried to break up the fight, to no avail. Harper saw Bell pull on Landry's legs, causing defendant and Landry to fall to the floor. At that point, Landry was bleeding from his head and his shoulder blade. Harper then stepped on the knife blade in an unsuccessful attempt to get it away from defendant. While defendant was on the ground, the knife was in defendant's hand, resting on the floor, and Landry was over defendant's back, holding defendant around his neck. After the fighting stopped, defendant left the apartment, threw the knife down the building's garbage incinerator, and ran down the hall. Approximately 10 minutes later, Harper saw defendant near the garbage incinerator in another building located at 630 West Evergreen, dressed only in his boxer shorts. Harper asked defendant "what you [sic] doing, man?" Defendant replied that "[h]e should not have took [sic] my food." Defendant also said that Landry should not have accused defendant of stealing food and that he "would kill that bitch again." According to Harper, defendant was drunk, although Harper had not seen defendant consume any alcohol that day.

Sandifer testified that she and Harper went to apartment 1403, where she saw defendant and Landry arguing. She left the apartment, but returned shortly thereafter without Harper and saw defendant and Landry "wrestling" or "fighting." She saw defendant stab Landry three times in the back with a knife, but Landry was weaponless. Harper then returned to apartment 1403 and he and Bell attempted to break up the fight. Bell suffered a cut on his arm and Landry was bleeding from his head and back. At that point, Landry was holding defendant down "so he won't [sic] stab him again." Landry then lost consciousness, and defendant left the apartment and threw the knife down the building's garbage incinerator chute.

On cross-examination, Sandifer testified that she did not see any punches thrown between defendant and Landry. Defense counsel then impeached Sandifer with her grand jury testimony, wherein she testified that she had seen Landry "hit" defendant in the face. Sandifer also testified on cross-examination that when defendant stabbed Landry, Landry was on top of defendant

-2-

1-03-0688

holding defendant's arms down. On re-direct, Sandifer testified that at the time Landry hit defendant, defendant already had the knife in his hand.

Bell testified that on the afternoon of July 25, 2000, he, Holloway, and Landry were in apartment 1403. He heard glass breaking in the living room, and upon entering the room, Bell saw Landry holding defendant's arm against the wall "so he wouldn't stab him." At that time, defendant had a knife in his hand, but Landry was weaponless. Bell testified that he saw defendant stab Landry once in the back. Bell then attempted to break up the fight, and was cut on the wrist in the process. As defendant and Landry fell on the couch, Bell saw that Landry's back was bleeding. Bell grabbed Landry and defendant by their legs and both Landry and defendant fell to the ground. Harper then entered the apartment and helped Bell in trying to break up the fight. Landry put defendant in a headlock, but began to lose his grip. Landry's eyes rolled back into his head and he fell to the ground. Defendant then left the apartment with the knife in his hand. Bell testified that he did not hear defendant and Landry argue and he did not see any punches thrown.

Assistant State's Attorney Catherine Kelly testified that on July 26, 2000, defendant gave a handwritten statement. Therein, defendant stated that he first encountered Landry at his mother's apartment at 630 West Evergreen, where a fight ensued between the two men. He then went for a walk to try and relax. About an hour later, he went to his sister's apartment, apartment 1403, where he saw Landry and Holloway seated on the living room floor. Defendant walked over to Landry, kicked his feet, and told him to leave because he was still angry with Landry about their fight earlier in the day. At that point, Landry stood up and the men began to argue. Landry followed as defendant proceeded to the kitchen to grab a butcher knife with a six or eight inch blade. After returning to the living room, defendant began to point and wave the knife at Landry and told Landry to leave. Landry then punched defendant in the face and the two began to wrestle and fell on the couch. Defendant then stabbed Landry two or three times, including

-3-

1-03-0688

once in the stomach. Bell and Harper attempted to get the knife away from him, and defendant became scared and dropped the knife down the incinerator at 624 West Division. Defendant then returned to his mother's apartment building and threw his clothing down the incinerator.

The parties stipulated that a 13-inch Faberware knife with a black handle was recovered from the trash compactor at 624 West Division Street. The knife did not contain any latent fingerprints suitable for comparison and did not contain a sufficient amount of blood to be tested. The State also admitted into evidence a certified report of the autopsy performed on Landry indicating that he died from multiple stab wounds, including four to his back.

Defendant neither called witnesses nor testified in his own defense. The trial court rejected defendant's mutual combat theory and found him guilty of first degree murder and aggravated battery.

On appeal, defendant argues that he stabbed Landry out of serious provocation, as he was acting under the sudden and intense passion of mutual combat at the time he killed Landry, and accordingly, we should reduce his first degree murder conviction to second degree murder.

Where a defendant asserts that he or she has sufficiently proven a factor which would mitigate a finding of first degree murder to second degree murder, the question on review is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the mitigating factor was not present. People v. Blackwell, 171 Ill. 2d 338, 357-58, 665 N.E.2d 782, 790 (1996).[1]

A person commits second degree murder when he or she commits first degree murder while "acting under a sudden and intense passion resulting from serious provocation." 720 ILCS 5/9-2(a)(1) (West 2002). "Serious provocation is conduct sufficient to excite an intense passion

---

[1] We reject defendant's contention that the standard of review should be *de novo*, and note that the result would be the same under either standard.

-4-

1-03-0688

in a reasonable person." 720 ILCS 5/9-2(b) (West 2002). In order to warrant the mitigation of a first degree murder charge to second degree murder, the defendant must prove the provocation by a preponderance of the evidence. 720 ILCS 5/9-2©) (West 2002).

Mutual combat is one category of provocation recognized in Illinois as sufficient to mitigate a charge of first degree murder to second degree murder. People v. Garcia, 165 Ill. 2d 409, 429, 651 N.E.2d 100, 110 (1995). Mutual combat is defined as "a fight or struggle which both parties enter willingly or where two persons, upon a sudden quarrel and in hot blood, mutually fight upon equal terms and where death results from the combat." People v. Austin, 133 Ill. 2d 118, 125, 549 N.E.2d 331, 334 (1989). "The term 'mutual combat' connotes a willingness by both parties to engage in a fight," (People v. Delgado, 282 Ill. App. 3d 851, 859, 668 N.E.2d 173, 179 (1996)), and will not be found where the evidence shows that the defendant was the aggressor or instigated the combat (Austin, 133 Ill. 2d at 126, 549 N.E.2d at 334; Delgado, 282 Ill. App. 3d at 859, 668 N.E.2d at 179; People v. Crum, 183 Ill. App. 3d 473, 484, 539 N.E.2d 196, 203 (1989)), or where the defendant's actions were disproportionate to the provocation (People v. Matthews, 21 Ill. App. 3d 249, 253, 314 N.E.2d 15, 19 (1974)). Generally, whether mutual combat constitutes serious provocation is a question for the trier of fact. Garcia, 165 Ill. 2d at 430, 651 N.E.2d at 110.

Defendant's reliance on People v. Johnson, 4 Ill. App. 3d 249, 280 N.E.2d 764 (1972) is misplaced. In Johnson, the defendant, who was aiding his friend from an attack instigated by the victim, fought with the victim and stabbed him in the leg, resulting in the victim's death. Johnson, 4 Ill. App. 3d at 252-53, 280 N.E.2d at 766-67. This court reasoned that the unlawful physical assault brought on by the victim, who was larger than the defendant and was reputed to be a "skillful and aggressive fighter," evidenced that the defendant and the victim engaged in mutual combat sufficient to support a finding of voluntary manslaughter. Johnson, 4 Ill. App. 3d at 250, 280 N.E.2d at 766. This case is distinguishable from Johnson because there is no evidence that Landry was a

-5-

1-03-0688

skillful and aggressive fighter or bigger than defendant. Moreover, while the victim in <u>Johnson</u> was clearly the aggressor, here, defendant kicked Landry's feet and pointed and waved a knife at the him before Landry punched defendant. Defendant was not at a physical disadvantage or acting in self-defense, which were the circumstances that supported a finding of mutual combat in <u>Johnson</u>.

The other cases upon which defendant relies are equally distinguishable. For example, defendant cites <u>People v. Goolsby</u>, 45 Ill. App. 3d 441, 449, 359 N.E.2d 871, 877 (1977), in which the defendant and the victim engaged in "a violent struggle...over money." After the two argued and exchanged punches, the victim hit the defendant several times with a five or six pound lead paperweight. In order to frighten the victim, the defendant grabbed a knife that was used to slice open newspaper packages, but the two men began wrestling and the defendant stabbed the victim, killing him. <u>Goolsby</u>, 45 Ill. App. 3d at 444, 359 N.E.2d at 873-74. This court concluded that the evidence supported a finding of voluntary manslaughter rather than first degree murder on the basis of mutual combat. <u>Goolsby</u>, 45 Ill. App. 3d at 449-50, 359 N.E.2d at 877. The facts of this case are distinguishable from <u>Goolsby</u> in that defendant had the knife in his hand before any wrestling between the two men began. Moreover, whereas the victim in <u>Goolsby</u> used a lead paperweight as a weapon, Landry was not armed. Accordingly, the circumstances that supported mutual combat in <u>Goolsby</u> are not present here.

Defendant also relies upon <u>People v. Stepheny</u>, 76 Ill. App. 2d 131, 221 N.E.2d 798 (1966), in which this court concluded that there was sufficient provocation to support the trial court's finding of voluntary manslaughter, where the evidence demonstrated that the defendant shot the victim to death after they engaged in a "quarrel of some duration" over a craps game. <u>Stepheny</u>, 76 Ill. App. 2d at 134, 221 N.E.2d at 799-800. The evidence at trial conflicted as to whether the victim was also armed. <u>Stepheny</u>, 76 Ill. App. 2d at 133, 221 N.E.2d at 799. Unlike in <u>Stepheny</u>, there is no conflicting testimony in the case at bar as to whether Landry was armed. Harper, Sandifer, and Bell testified that Landry did not have a weapon in his hands during his struggle with defendant.

-6-

1-03-0688

Although Harper testified that he saw a knife on the couch, there was no testimony that Landry used or possessed that knife at any time during the struggle. Therefore, the circumstances of this case are distinguishable from those in Stepheny.

The evidence in this case indicates that defendant was the aggressor. According to defendant's own statement, during his second encounter with Landry, defendant kicked Landry's feet and told him to leave. After an argument ensued between the two men, defendant used a knife from the kitchen to taunt Landry. Only then did Landry punch defendant and the two men began to wrestle. Testimony from Sandifer and Bell indicates that Landry attempted to keep the knife away from him by holding defendant down and placing him in a headlock. Although defendant characterizes Landry's actions as an attempt to continue fighting with defendant even after he was stabbed, the conclusion that Landry was attempting to stop defendant from stabbing him could also be supported. We therefore affirm defendant's first degree murder conviction, as a rational trier of fact could have found that there was no mutual combat sufficient to support a finding of serious provocation.

The State contends that section 5-8-4 of the Unified Code of Corrections (730 ILCS 5/5-8-4 (West 2002)) requires that defendant serve his sentences consecutively, rather than concurrently. At the time defendant committed the crimes, section 5-8-4(a) provided that consecutive sentences must be imposed when the offenses arose from a single course of conduct and one of the offenses was a triggering offense (730 ILCS 5/5-8-4(a) (West 2000)), while section 5-8-4(b) provided that consecutive sentences must be imposed when the offenses arose from a separate course of conduct and one of the offenses was a triggering offense (730 ILCS 5/5-8-4(b) (West 2000)). Here, defendant was convicted of first degree murder, a triggering offense, as well as aggravated battery, and severe bodily injury was inflicted. Under sections (a) and (b), regardless of whether the offenses were committed within a single or separate course of conduct, defendant's sentences must be consecutive. 730 ILCS 5/5-8-4(a),(b) (West 2000). Thus, defendant's concurrent sentences are void

-7-

1-03-0688

and we must remand the cause for resentencing. See People v. Arna, 168 Ill. 2d 107, 113 (1995) (concurrent sentences are void when consecutive sentences are mandatory).

Because we are remanding this case, we need not determine whether defendant's sentences are excessive.[2] See People v. Causey, 341 Ill. App. 3d 759, 773-74 (2003).

For the reasons stated above, we affirm defendant's first degree murder and aggravated battery convictions. We vacate the concurrent sentences imposed and we remand this cause to the circuit court of Cook County for resentencing and the imposition of consecutive sentences.

Affirmed in part and vacated in part; cause remanded with directions.

THEIS, J., with REID, P.J. and QUINN, J., concurring.

---

[2] We note that in his opening brief, defendant argues that the mittimus must be corrected to reflect only one conviction for first degree murder, rather than two, because only one death occurred. See People v. Kuntu, 196 Ill. 2d 105, 130 (2001). In his reply brief however, defendant withdraws this issue from review and concedes that the sentencing order correctly reflects his convictions.

-8-

No. 1-03-0688

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| **PEOPLE OF THE STATE OF ILLINOIS,** | ) | Appeal from the Circuit Court |
| | ) | of Cook County, Illinois. |
| Plaintiff-Appellee, | ) | |
| | ) | |
| -vs- | ) | No. 00 CR 20175. |
| | ) | |
| **MONTEZ BAKER,** | ) | Honorable |
| | ) | Evelyn B. Clay, |
| Defendant-Appellant. | ) | Judge Presiding. |

---

## BRIEF AND ARGUMENT FOR DEFENDANT-APPELLANT

MICHAEL J. PELLETIER
Deputy Defender

DEBORAH ISRAEL
Assistant Appellate Defender
Office of the State Appellate Defender
203 North LaSalle Street - 24th Floor
Chicago, Illinois 60601
(312) 814-5472

JAN 3 0 2004

COUNSEL FOR DEFENDANT-APPELLANT

**ORAL ARGUMENT REQUESTED**

EXHIBIT B

## POINTS AND AUTHORITIES

Page

I.   Montez Baker's conviction for first degree murder should be reduced to second

degree murder because the evidence established that at the time of the killing Baker

acted under a sudden and intense passion resulting from serious provocation of

mutual combat. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

720 ILCS 5/9-1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*People v. Smith*, 191 Ill. 2d 408, 732 N.E.2d 513 (2000) . . . . . . . . . . . . . . . . . . . . . 10

*People v. Lamborn*, 185 Ill. 2d 585, 708 N.E.2d 350 (1999) . . . . . . . . . . . . . . . . . . . . 10

*People v. Austin*, 133 Ill. 2d 118, 549 N.E.2d 331 (1989) . . . . . . . . . . . . . . . . . . . . . 11

*People v. Collins*, 106 Ill. 2d 237, 478 N.E.2d 267 (1985) . . . . . . . . . . . . . . . . . . . . . 10

*People v. Cooksey*, 309 Ill. App. 3d 839, 723 N.E.2d 784 (1st Dist. 1999) . . . . . . . . . 11

*People v. Johnson*, 215 Ill. App. 3d 713, 575 N.E.2d 1247 (1st Dist. 1991) . . . . . . . . . 11

*People v. Goolsby*, 45 Ill. App. 3d 441, 359 N.E.2d 871 (1st Dist. 1977) . . . . . . . . . . . 13

*People v. Johnson*, 4 Ill. App. 3d 249, 280 N.E.2d 764 (1st Dist. 1972) . . . . . . . . . . . . 13

*People v. Stephany*, 76 Ill. App. 2d 131, 221 N.E.2d 798 (1st Dist. 1966) . . . . . . . . . . 13

*People v. Hawkins*, 311 Ill. App. 3d 418, 723 N.E.2d 1222 (4th Dist. 2000) . . . . . . . . 11

II.  The sentences imposed by the trial court for first degree murder and aggravated

battery are excessive and should be reduced in light of the nature of the offenses and

the mitigating evidence. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Ill. Const., Art. I, sec. 11 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

720 ILCS 5/5-8-1(a)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

730 ILCS 5/1-1-2(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

730 ILCS 5/5-8-1(a)(1)(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

134 Ill. 2d R. 615(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 20

*People v. Stacey*, 193 Ill. 2d 203, 737 N.E.2d 626 (2000) . . . . . . . . . . . . . . . . . . . . . . . . 17

*People v. O'Neal*, 125 Ill. 2d 291, 531 N.E.2d 366 (1988) . . . . . . . . . . . . . . . . . . . . . . 16

*People v. Maldonado*, 240 Ill. App. 3d 470, 608 N.E.2d 499 (1st Dist. 1992) . . . . 16, 19

*People v. Center*, 198 Ill. App. 3d 1025, 556 N.E.2d 724 (1st Dist. 1990) . . . . . . . . . 16

*People v. Steffens*, 131 Ill. App. 3d 141, 475 N.E.2d 606 (1st Dist. 1985) . . . . . . . 16, 17

*People v. Nelson*, 106 Ill. App. 3d 838, 436 N.E.2d 655 (1st Dist. 1982) . . . . . . . . . . . 19

*People v. Rickard*, 99 Ill. App. 3d 914, 425 N.E.2d 1317 (1st Dist. 1981) . . . . . . . . . . 17

*People v. Gibbs*, 49 Ill. App. 3d 644, 364 N.E.2d 491 (1st Dist. 1977) . . . . . . . . . . . . 17

*People v. Bigham*, 226 Ill. App. 3d 1041, 590 N.E.2d 115 (5th Dist. 1992) . . . . . . . . . 17

III.    **The sentencing order should be amended to reflect a conviction on only one count of first degree murder, rather than two, because there was only a single offense of first degree murder in this case.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*People v. Kuntu*, 196 Ill. 2d 105, 752 N.E.2d 380 (2001) . . . . . . . . . . . . . . . . . . . . . . . 21

*People v. Chapman*, 194 Ill. 2d 186, 743 N.E.2d 48 (2000) . . . . . . . . . . . . . . . . . . . . . 21

*People v. Hayes*, 54 Ill. App. 3d 617, 370 N.E.2d 68 (1st Dist. 1977) . . . . . . . . . . . . . 21

## NATURE OF THE CASE

Montez Baker was convicted of first degree murder and aggravated battery after a bench trial and was sentenced to thirty and five years, respectively, in prison.

This is a direct appeal from the judgment of the court below. No issue is raised challenging the charging instrument.

## ISSUES PRESENTED FOR REVIEW

1.      Whether Montez Baker's conviction for first degree murder should be reduced to second degree murder because the evidence at trial established that at the time of the killing Baker acted under a sudden and intense passion resulting from serious provocation of mutual combat.

2.      Whether the sentences imposed by the trial court for first degree murder and aggravated battery are excessive and should be reduced in light of the nature of the offenses and the mitigating evidence.

3.      Whether the sentencing order should be amended to reflect a conviction on only one count of first degree murder, rather than two, because there was only a single offense of first degree murder in this case.

## JURISDICTION

Montez Baker appeals from a final judgment of conviction in a criminal case. He was sentenced on November 1, 2002. (C. 91) A motion to reduce sentence was filed on November 27, 2002, which was denied on February 5, 2003. (C. 6) (R. 4) Notice of appeal was timely filed on February 5, 2003. (C. 92) Jurisdiction therefore lies in this Court pursuant to Article VI, Section 6, of the Illinois Constitution, and Supreme Court Rules 603 and 606.

-3-

## STATEMENT OF FACTS

Daryl "Cesar" Landry died from stab wounds he sustained during a fight with his stepson, Montez "Skeeter" Baker, that took place on July 25, 2000, at 625 West Division in Chicago. (I Sup. R. 36, 107) Kip Bell was cut on the wrist with a knife when he tried to break up the fight between Baker and Landry. (I Sup. R. 90) The State charged Baker with two counts of murder for the death of Landry and one count of aggravated battery of Bell. (C. 13)

At Baker's bench trial, Timothy Harper and Kelly Sandifer testified that they were at Sandifer's apartment at 625 West Division, number 1401, watching soap operas on July 25, 2000. (I Sup. R. 39-41, 65-66) At 2:30 p.m., Harper's niece came over from apartment 1403. (I Sup. R. 41, 66) After the niece spoke to Harper and Sandifer, they went to apartment 1403 and saw Baker and Landry verbally arguing. (I Sup. R. 39, 43, 67-70) Harper thought the argument would stop, so he went back to Sandifer's apartment. (I Sup. R. 45) Sandifer also returned to her apartment, but went back to 1403 after Harper's niece came to her apartment a second time. (I Sup. R. 71) When Harper heard Sandifer screaming, he went to apartment 1403 and saw Baker and Landry fighting. (I Sup. R. 47) Hollis Holloway and Kip Bell were also there. (I Sup. R. 47)

According to Harper and Sandifer, Baker and Landry were wrestling and holding each other. (I Sup. R. 47-48, 60, 72) Harper saw that one of them was on a chair. (I Sup. R. 47) Baker had a butcher knife but Landry did not have anything in his hands. (I Sup. R. 48, 74) Sandifer testified that she saw Baker stab Landry in the back three times. (I Sup. R. 73) Harper and Bell tried to break them up, but they wouldn't stop fighting. (I Sup. R. 49) Harper and Bell

-4-

tried to get the knife from Baker, but he wouldn't let go. (I Sup. R. 50)  After Bell tried to get the

knife, Sandifer saw that Bell's arm was bleeding. (I Sup. R. 75)

At one point, Baker was on his hands and knees and Landry was on Baker's back. (I Sup.

R. 50, 61)  Landry was holding Baker around the neck. (I Sup. R. 62)  Harper tried to put his

foot on the knife, which was on the floor in Baker's hand, but Baker did not let go. (I Sup. R. 50,

78)  When Baker let go of Landry, Landry was bleeding from his head and shoulder blade. (I

Sup. R. 51)  Harper never saw anything in Landry's hands. (I Sup. R. 53)  He only saw Baker

with a knife, but there was a knife on the couch too. (I Sup. R. 54)

Although Sandifer testified at trial that the second time she went to apartment 1403,

Baker and Landry were already wrestling and she did not see any punches thrown, Sandifer

changed her testimony when she was confronted with her grand jury testimony. (I Sup. R. 79-81)

Before the grand jury, Sandifer described seeing Landry hit Baker in the face with his fist before

they started tussling. (I Sup. R. 79-81)  After being impeached with her grand jury testimony,

Sandifer confirmed that she had seen Landry hit Baker in the face with his fist before they started

fighting. (I Sup. R. 80-81, 83)  According to Sandifer, Baker had the knife when Landry hit him.

(I Sup. R. 81-82, 84)  Baker stabbed Landry when Landry was on top of him. (I Sup. R. 81)

Landry was holding Baker down with Baker's stomach on the floor and was holding Baker's arm

that held the knife. (I Sup. R. 81-83)

Harper and Sandifer testified that after the fight, Baker threw the knife into the incinerator

in the hallway. (I Sup. R. 54-55, 77)  Ten minutes later, Harper saw Baker at the incinerator at

630 West Evergreen wearing only his boxer shorts. (I Sup. R. 56, 63)  When Harper asked Baker

what he was doing, Baker responded that Landry shouldn't have taken his food and shouldn't

-5-

have accused him of stealing food and that he would "kill that bitch again." (I Sup. R. 57)

Harper knew that Baker, an alcoholic, was drunk at the time. (I Sup. R. 57-58)

Kip Bell testified that he was watching television at apartment 1403, where his girlfriend at the time, Zonya Tate, lived. (I Sup. R. 85-86) Tate is Baker's sister. (I Sup. R. 86) Landry and Holloway were also watching television with Bell in the living room. (I Sup. R. 88) Bell went to the bedroom, and while he was there he heard the sound of glass breaking in the living room. (I Sup. R. 88) Bell went back to the living room and saw Baker, Landry, and Holloway. (I Sup. R. 89) Landry was holding Baker's arm against the wall. (I Sup. R. 89) Baker had a knife in his hand. (I Sup. R. 89) Bell never saw Landry with a weapon. (I Sup. R. 90)

Bell saw Baker stab Landry once in the back. (I Sup. R. 90) Bell tried to break up Landry and Baker by grabbing their arms. (I Sup. R. 90) Bell grabbed Baker's hand holding the knife and in the process of doing so cut his wrist. (I Sup. R. 90) Bell saw that Landry was bleeding from his back. (I Sup. R. 91) When Landry and Baker fell on the couch, Bell grabbed them by their legs and pulled them to the floor. (I Sup. R. 91) When Landry and Baker were on the floor, Harper came in and tried to help Bell break them up. (I Sup. R. 91) Baker was on his back on the floor with the knife in his right hand. (I Sup. R. 91-92) Harper stepped on Baker's hand and tried to get the knife out of his hand. (I Sup. R. 91-92) Landry grabbed Baker and put him in a tight headlock but as he lost more blood, he loosened his grip. (I Sup. R. 92) Landry's eyes rolled back and he fell to the ground. (I Sup. R. 92) Baker left the apartment with the knife. (I Sup. R. 92) At trial, Bell identified People's exhibit 34 as the knife that Baker stabbed Landry with. (I Sup. R. 93)

The parties stipulated that a forensic investigator processed the scene and recovered a

-6-

thirteen inch knife from the trash compactor on the first floor of 524 West Division. (I Sup. R. 100-01) The knife was inventoried and later examined by forensic scientists at the Illinois State Police Forensic Science Center. (I Sup. R. 102) No latent fingerprint impressions were suitable for comparison, but the presence of blood was detected. (I Sup. R. 102-04) The blood was not further analyzed as there was an insufficient amount. (I Sup. R. 106) The parties also stipulated that Dr. Kalekar of the Cook County Medical Examiner's Office performed an autopsy on Landry and prepared People's exhibit 35, a post-mortem examination report. (I Sup. R. 107)

Catherine Kelly, a former assistant state's attorney, testified that she interviewed Baker at Area 3 on July 26, 2000. (I Sup. R. 111-12) After she introduced herself and advised him of his constitutional rights, Baker agreed to speak to her. (I Sup. R. 114) The first interview lasted twenty to thirty minutes. (I Sup. R. 115) ASA Kelly spoke to Baker a second time, along with Detective Sobolewski, for another half hour. (I Sup. R. 115-16) After the second conversation, Baker chose to give a handwritten statement. (I Sup. R. 117)

In the statement, Baker explained that Landry is his brother's father. (I Sup. R. 125) On the afternoon of the offense, Baker first saw Landry at his mother's house at 630 West Evergreen, apartment 1303. (I Sup. R. 125) He and Landry got into a fight over some Popeye's chicken. (I Sup. R. 125) Baker's mother told Landry to leave; Landry left. (I Sup. R. 125) She told Baker to cool down and to go for a walk. (I Sup. R. 125) Baker left his mother's house and walked around talking to himself about how mad he was about his fight with Landry. (I Sup. R. 125-26)

About an hour later, Baker went to his sister Zonya Tate's house at 624 West Division, apartment 1403. (I Sup. R. 126) When he got to Tate's apartment, Landry was sitting on the

-7-

floor in the living room watching television with Holloway. (I Sup. R. 126) Bell was in the back room. (I Sup. R. 126) Baker kicked Landry's feet and told him to get out. (I Sup. R. 126) Baker was mad that Landry was at the apartment because he was still mad about the fight. (I Sup. R. 126) Landry got up and started to argue with Baker. (I Sup. R. 126)

Baker went into the kitchen. (I Sup. R. 126) Landry also went to the kitchen. (I Sup. R. 126) Baker got a butcher knife that had a six to eight inch blade. (I Sup. R. 126) Baker and Landry went back into the living rom. (I Sup. R. 126) Baker pointed the knife at Landry, waved it at him, and told him to get out. (I Sup. R. 126) Baker and Landry were face to face. (I Sup. R. 126) Landry punched Baker once in the face. (I Sup. R. 126-27) They started wrestling and fell on the couch. (I Sup. R. 127) Baker still had the knife in his hand. (I Sup. R. 127) Baker stabbed Landry two to three times. (I Sup. R. 127) He could not remember where he stabbed Landry, but he stabbed him once in the stomach. (I Sup. R. 127)

Bell and Timmy tried to get the knife away from Baker. (I Sup. R. 127) Baker got scared and dropped the knife down the incinerator then ran to his mother's house and put his clothes down the incinerator at 630 West Evergreen. (I Sup. R. 127) He walked around until detectives picked him up. (I Sup. R. 127) At the conclusion of his statement, Baker stated that he was giving the statement voluntarily, he had been treated well by the police and ASA Kelly, and he was not under the influence of drugs or alcohol. (I Sup. R. 127) After Baker reviewed the statement, he added that Landry put him in a choke-hold after Baker stabbed him. (I Sup. R. 128)

After the statement was published, the State rested. (I Sup. R. 131) The defense moved for a directed finding, which was denied. (I Sup. R. 132) The defense rested. (I Sup. R. 133)

-8-

After closing arguments, the court found Baker guilty of two counts of first degree murder and one count of aggravated battery of Kip Bell. (I Sup. R. 155)

Baker's motion for a new trial was denied. (II Sup. R. 4) At the sentencing hearing, the State presented evidence in aggravation concerning a charge of attempt robbery, to which Baker pleaded guilty in 1997. (II Sup. R. 11-25) The State also presented the testimony and victim impact statements of Landry's sister, Dawn Jones, and his mother, Velma Lois Landry. (II Sup. R. 26, 30) For the defense, Baker's mother and Landry's ex-wife, Linda Tate, and Baker's sister, Zonya Tate, testified in mitigation that Baker was helpful around the house and good with children. (II Sup. R. 36-41) The mother of Baker's two children, Ursula Johnson, testified that Baker took care of his children. (II Sup. R. 41-42) Baker's aunt, Louella Ellison, testified that Baker was kind and respectful. (II Sup. R. 43-45)

After the State and defense presented arguments, Baker addressed the court and apologized. (II Sup. R. 60) Baker said that he wished it hadn't happened, but he was tired of Landry beating on him and he was just defending himself. (II Sup. R. 60-61) Baker wished it hadn't happened, because he loved Landry like a father. (II Sup. R. 60-61) Baker also apologized to the Landry family. (II Sup. R. 61) The court sentenced Baker to thirty years in prison on the two counts of first degree murder, which the court merged for sentencing. (II Sup. R. 62-63) (C. 91) The court also sentenced Baker to a term of five years for aggravated battery. (II Sup. R. 63) (C. 91) Baker's motion to reconsider sentence was denied. (R. 4)

## ARGUMENT

I.  **Montez Baker's conviction for first degree murder should be reduced to second degree murder because the evidence established that at the time of the killing Baker acted under a sudden and intense passion resulting from serious provocation of mutual combat.**

Montez Baker fatally stabbed his stepfather, Darryl Landry, during a fight that ensued after the two began to argue and Landry punched Baker in the face. (I Sup. R. 73, 80, 90) The trial court found Baker guilty of first degree murder. (I Sup. R. 155) This Court should vacate Baker's first degree murder conviction and enter a judgment of guilty of second degree murder because the evidence at trial established that Baker acted under a sudden and intense passion resulting from serious provocation of mutual combat.

When reviewing the sufficiency of the evidence in a criminal case, the usual standard of review is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *People v. Collins*, 106 Ill. 2d 237, 261, 478 N.E.2d 267 (1985). When, however, a defendant's claim that he was not proven guilty beyond a reasonable doubt does not entail any assessment of the credibility of the witnesses but presents only the question of whether a settled set of facts sufficed to meet the reasonable doubt standard, the standard of review is *de novo* because the question is a purely legal one. *People v. Smith*, 191 Ill. 2d 408, 411, 732 N.E.2d 513 (2000) (where facts are undisputed, question of defendant's guilt is a legal question reviewed *de novo*); *People v. Lamborn*, 185 Ill. 2d 585, 590, 708 N.E.2d 350 (1999) (reviewing *de novo* the

-10-

issue of whether photographs were "lewd" under the child pornography statute). *See also People v. Cooksey*, 309 Ill. App. 3d 839, 846, 723 N.E.2d 784 (1st Dist. 1999) (*de novo* review applies to a sufficiency of the evidence claim that involves whether the "immediate presence" element of vehicular hijacking was proven on an accepted set of facts); *People v. Hawkins*, 311 Ill. App. 3d 418, 423, 723 N.E.2d 1222 (4th Dist. 2000) (*de novo* review applies to the issue of whether the "substantial step" element of attempt was proven on uncontested facts). Here, the question of whether Baker's conviction for first degree murder should be reduced to second degree murder because the evidence established that Baker acted under a sudden and intense passion resulting from serious provocation of mutual combat is a purely legal question; thus, this Court is in the same position to analyze it as the trial court. This Court should therefore review the trial court's ruling *de novo*. Under any standard of review, however, the State failed to prove Baker guilty of first degree murder beyond a reasonable doubt.

Illinois law recognizes that mutual combat constitutes a serious provocation sufficient to mitigate an offense from first to second degree murder. *People v. Johnson*, 215 Ill. App. 3d 713, 575 N.E.2d 1247 (1st Dist. 1991). Mutual combat is a fight or struggle that both parties enter willingly or in which two persons, upon a sudden quarrel and in hot blood, mutually fight upon equal terms and death results. *People v. Austin*, 133 Ill. 2d 118, 549 N.E.2d 331 (1989).

The evidence showed that Baker and Landry engaged in mutual combat constituting serious provocation. Earlier in the afternoon on the day of the offense, Baker and Landry got into a fight over some Popeye's chicken at Baker's mother's house. (I Sup. R. 125) Baker's mother told Landry to leave and told Baker to cool down and go for a walk. (I Sup. R. 125) After walking around for about an hour, Baker went to his sister's apartment. (I Sup. R. 126) When he

-11-

entered the apartment, Landry was sitting on the floor watching television. (I Sup. R. 126) Baker kicked Landry's feet and told him to leave. (I Sup. R. 126) Landry got up and started to argue with Baker. (I Sup. R. 126) When Baker went to the kitchen, Landry also went to the kitchen. (I Sup. R. 126) Baker picked up a butcher knife and waved it and Landry and told him to get out. (I Sup. R. 126)

At that point, Landry punched Baker in the face with his fist. (I Sup. R. 70-81, 83,126-27) Landry and Baker started wrestling and fell on the couch in the living room. (I Sup. R. 127) Landry and Baker were holding each other while they wrestled and fought. (I Sup. R. 47-48, 72) According to witness Kelly Sandifer, Baker stabbed Landry when Landry was on top of him holding him down. (I Sup. R. 81-82) Kip Bell testified that he saw Baker stab Landry once when Landry was holding Baker's hands against the wall. (I Sup. R. 90) Even after he was stabbed, Landry continued to fight and held Baker around his throat in a headlock until Landry passed out. (I Sup. R. 62, 92, 98-99, 130)

This evidence establishes that at the time of the killing Baker was acting under a sudden and intense passion resulting from the serious provocation of mutual combat. Not only had Baker and Landry engaged in a quarrel earlier in the afternoon on the day of the incident, but the quarrel was resumed when they encountered each other at Baker's sister's apartment. In addition, after Landry followed Baker into the kitchen, where Baker picked up a knife, Landry punched Baker in the face. Landry's punch precipitated the physical fight, during which Baker stabbed Landry as Landry either held Baker's hands against the wall or was on top of Baker holding him down. (I Sup. R. 81-82, 90)

In similar cases involving provocation in the form of a physical assault by the deceased,

-12-

this Court has reduced defendants' murder convictions to voluntary manslaughter, the offense now codified as second degree murder. *See* Public Act 84-1450, eff. July 1, 1987 (amending Ill. Rev. Stat. 1985, ch. 38, pars. 9-1, 9-2 (now 720 ILCS 5/9-1, 5/9-2 (1992)). For example, in *People v. Johnson*, 4 Ill. App. 3d 249, 280 N.E.2d 764 (1st Dist. 1972), the defendant's friend got into a fight with one George Shaw during which Shaw struck the friend. After the friend withdrew from the fight, the defendant began to fight with Shaw. *Id.* at 250. During the fight, the defendant fatally stabbed the unarmed Shaw in the leg. *Id.* Based on this evidence, this Court found that the provocation, Shaw's unlawful physical assault, was sufficient in law and fact to come within the definition of serious provocation as contemplated by the manslaughter statute. *Id.* at 252. The defendant's murder conviction was therefore reduced to voluntary manslaughter. *Id.*

In *People v. Goolsby*, 45 Ill. App. 3d 441, 359 N.E.2d 871 (1st Dist. 1977), the defendant and William Byrne, his co-worker, got into an argument over money Byrne was to pay the defendant for helping him. The two exchanged punches and Byrne hit the defendant with a paperweight. *Id.* at 444. The defendant picked up a knife to frighten Byrne, but Byrne grabbed the defendant. *Id.* As they wrestled, the defendant stabbed Byrne, causing his death. *Id.* On appeal, this Court reduced the defendant's murder conviction to voluntary manslaughter because the evidence established that Byrne died as the result of a violent struggle with the defendant over money. *Id.* at 449-50.

Even a quarrel that stemmed from betting in a crap game has been deemed sufficient provocation to reduce a defendant's murder conviction to voluntary manslaughter. *People v. Stephany*, 76 Ill. App. 2d 131, 221 N.E.2d 798 (1st Dist. 1966). In *Stephany*, the defendant and

-13-

four other men were shooting craps. *Id.* at 132. During the game, the defendant and the

deceased argued over their earnings and over the betting that had taken place. *Id.* The defendant

warned the deceased that if he ever offered to bet him at any time, one of the two would have to

be carried away. *Id.* at 132-33. When the deceased responded by asking the defendant for a bet,

the defendant shot him in the chest. *Id.* at 133. This Court held that the quarreling that occurred

during and after the crap game and the deceased's offer to bet with the defendant after he had

been warned about doing so were sufficient provocation to reduce a charge of murder to one of

voluntary manslaughter. *Id.* at 134.

As these cases show, a physical assault by the deceased against the defendant during an

argument constitutes serious provocation sufficient to reduce a first degree murder conviction to

second degree murder. Like the defendants in *Johnson* and *Goolsby*, Baker acted under a sudden

and intense passion resulting from serious provocation in the form of a physical assault by

Landry. Not only did Landry punch Baker in the face, but he physically fought with him and by

all accounts had the upper hand in the fight as he held Baker against the wall and on the floor. (I

Sup. R. 50, 62, 81-82, 89, 92, 97-99) Indeed, Landry's pugnacity was evidenced by the fact that

even after he was stabbed, he continued to fight and held Baker around his throat in a headlock.

(I Sup. R. 62, 92, 99-99, 130) Furthermore, one witness testified that although he did not see a

knife in Landry's hand, he did see another knife on the couch where Landry and Baker had been

fighting. (I Sup. R. 53-54, 91) Certainly the provocation in the instant case is more serious than

the quarrel over a crap game in *Stephany*, and therefore falls within the definition of serious

provocation.

The evidence in this case demonstrates that at the time of the killing, Baker was acting

under a sudden and intense passion resulting from the serious provocation of mutual combat.

Accordingly, Baker's first degree murder conviction should be reduced to second degree murder and the case remanded for resentencing.

II.     **The sentences imposed by the trial court for first degree murder and aggravated battery are excessive and should be reduced in light of the nature of the offenses and the mitigating evidence.**

The court below found Montez Baker guilty of first degree murder and aggravated battery. (I Sup. R. 155) (C. 91)  The range of punishment for first degree murder under the circumstances of the instant case is twenty to sixty years in prison.  730 ILCS 5/5-8-1(a)(1)(a) (2000).  The sentencing range for aggravated battery, a Class 3 felony, is two to five years.  720 ILCS 5/5-8-1(a)(3) (2000).  The court sentenced Baker to thirty years for first degree murder and five years for aggravated battery.  (II Sup. R. 32) (C. 91)  The court denied Baker's motion to reconsider the sentence.  (R. 5)  Considering the circumstances of the offenses along with Baker's family ties and support and minimal criminal history, these sentences are excessive and should be reduced to the minimum terms of twenty years and two years.

The standard of review with respect to an excessive sentence claim is whether the trial court abused its discretion.  *People v. Maldonado*, 240 Ill. App. 3d 470, 485, 608 N.E.2d 499 (1st Dist. 1992).  A sentencing court's discretion is not unfettered.  *People v. O'Neal*, 125 Ill. 2d 291, 297, 531 N.E.2d 366 (1988).  An abuse of discretion may be found even where the sentence is within statutory limitations if that sentence is greatly at odds with the purpose and spirit of the law.  *People v. Center*, 198 Ill. App. 3d 1025, 1033, 556 N.E.2d 724 (1st Dist. 1990).  The Illinois Constitution requires that every sentence take into account the objective of rehabilitating the offender.  Ill. Const., Art. I, sec. 11; *People v. Steffens*, 131 Ill. App. 3d 141, 151, 475 N.E.2d 606 (1st Dist. 1985).  In addition, the stated purpose of the Unified Code of Corrections includes the prescription of criminal sanctions that recognize the rehabilitative potential of individual

-16-

offenders. 730 ILCS 5/1-1-2(a) (1998).

If a sentence reflects a failure to consider the constitutionally required objective of rehabilitation or the pertinent mitigating factors, the sentence should be reduced. *Steffens*, 131 Ill. App. 3d at 151; *People v. Rickard*, 99 Ill. App. 3d 914, 919, 425 N.E.2d 1317 (1st Dist. 1981). Furthermore, the Illinois Constitution requires that the sentencing court do more than simply consider the rehabilitative factors; the court must actually act on the rehabilitative factors as an objective in imposing sentence and the sentence must reflect such consideration. *People v. Gibbs*, 49 Ill. App. 3d 644, 648, 364 N.E.2d 491 (1st Dist. 1977); *People v. Bigham*, 226 Ill. App. 3d 1041, 1049, 590 N.E.2d 115 (5th Dist. 1992). In determining a sentence, the trial court is authorized to consider the seriousness and circumstances of the offense in addition to the defendant's credibility, demeanor, general moral character, mentality, social environment, habits, and age. *People v. Stacey*, 193 Ill. 2d 203, 209, 737 N.E.2d 626 (2000).

In this case, the thirty-year sentence and the five-year sentence imposed by the court for murder and aggravated battery, respectively, do not reflect the constitutionally required objective of rehabilitation. In light of the circumstances of the offenses as well as the mitigating evidence that was presented at the sentencing hearing, the sentences are excessive and should be reduced.

The circumstances of the offenses as well as the events that precipitated them reveal that Baker and Darryl Landry had a contentious relationship. Landry was previously married to Baker's mother when Baker was young. (II Sup. R. 37) Baker's mother allowed Landry to stay with her because he couldn't stay with his relatives due to his "attitude problem." (II Sup. R. 37) As Baker explained at the sentencing hearing, he loved Landry like a father. (II Sup. R. 60-61) Baker, however, was tired of Landry's beating and hitting him and the arguments they would

-17-

have every night "over nothing." (II Sup. R. 61) Sometimes Baker's mother would get caught between them as they were fighting and would get hit herself. (II Sup. R. 61)

As the events leading up to the offense show, Baker and Landry had been arguing over some Popeye's chicken at Baker's mother's house. (I Sup. R. 125) After Baker's mother intervened, Landry left and Baker went for a walk. (I Sup. R. 125-26) When Baker went to his sister's apartment, Landry was there watching television and they started to argue again. (I Sup. R. 126) Baker went into the kitchen and Landry followed him there. (I Sup. R. 126) When Baker waved a knife at Landry, Landry punched Baker in the face. (I Sup. R. 80-81) The two then began to fight each other. (I Sup. R. 80-81) According to witnesses' accounts, Landry was on top of Baker and holding Baker against the wall during the struggle. (I Sup. R. 50, 62, 81, 92) Baker stabbed Landry as Landry held him down. (I Sup. R. 81, 96) Kip Bell, who tried to break up the fight, was cut on the wrist as he tried to take the knife from Baker. (I Sup. R. 90)

As is apparent, Baker and Landry had a history of physical confrontations and arguments, which unfortunately went too far on the day of the offense. In addition, Baker did not purposefully cut Bell, nor was there any evidence that Bell was seriously injured. Evidence was also presented that Baker, an alcoholic, was intoxicated at the time of the fight. (R. 57-58) Furthermore, Baker apologized for his conduct at the sentencing hearing and took responsibility for his actions. Baker apologized to Landry's family and repeatedly emphasized that he was sorry and hated what had happened and wished he could take it back because he didn't mean to do it. (II Sup. R. 60, 61)

In addition to the unique circumstances of the offense, mitigating evidence, which includes Baker's ties to his family and his minimal criminal history, reveals that the sentences are

-18-

excessive. The evidence introduced at the sentencing hearing showed that Baker provided for and cared for his family. Baker's mother, Linda Tate, testified that Baker helped her around the house and took care of his sister's children. (II Sup. R. 37-38) Baker's sister, Zonya Tate, a single mother of four, confirmed that Baker helped take care of her children and would provide the things her children needed. (II Sup. R. 40) The mother of Baker's two children, Ursula Johnson, testified that Baker is a kind-hearted person who takes care of his kids. (II Sup. R. 42) Baker's aunt, Louella Ellison, testified that Baker has a very good heart, would always help his mother and people in the neighborhood, and was always respectful to her family. (II Sup. R. 44)

Baker also had a minimal criminal history which consisted of a disorderly conduct and solicitation of roadway funds conviction and a conviction for trespass of state-supported land without proper identification. (II Sup. R. 57) He also pleaded guilty to an attempt robbery charge, which arose when he worked as a shoe shiner. (II Sup. R. 21, 56) Baker's family ties, his support for his family, and his minimal criminal history are mitigating factors that are not reflected in the sentences the court imposed. *See People v. Maldonado*, 240 Ill. App. 3d 470, 484, 608 N.E.2d 499 (1st Dist. 1992); *People v. Nelson*, 106 Ill. App. 3d 838, 846-47, 436 N.E.2d 655 (1st Dist. 1982) (in both cases, reviewing court considered family status as a mitigating factor when reducing the sentence imposed by the trial court).

All of this evidence was before the court at the sentencing hearing and at the hearing on the motion to reduce sentence. Nevertheless, the trial court sentenced Baker to thirty years for murder and five years for aggravated battery, ten years above the minimum for murder and the maximum term for aggravated battery. Pursuant to Supreme Court Rule 615(b), this Court is empowered to reduce a defendant's sentence. 134 Ill. 2d R. 615(b). Baker's sentence should be

-19-

reduced pursuant to Rule 615(b) given the unusual circumstances of the offenses, the minimal injury that resulted from the aggravated battery, Baker's family ties and support, and his minimal criminal record. Montez Baker therefore respectfully requests that this Court reduce his sentences to the minimum terms of twenty years for murder and two years for aggravated battery.

**III.**    **The sentencing order should be amended to reflect a conviction on only one count of first degree murder, rather than two, because there was only a single offense of first degree murder in this case.**

Montez Baker was charged by indictment with two counts of first degree murder in connection with the death of Darryl Landry. (C. 13-14)  The court found Baker guilty of both charges. (I Sup. R. 155)  At the sentencing hearing, the court merged the two counts and ordered Baker to serve thirty years for first degree murder. (I Sup. R. 62)  Baker's sentencing order, however, reflects convictions for two counts of murder. (C. 91)  Because there was only one murder committed in this case, the sentencing order should be corrected to show a conviction for a single count of murder, as the court ordered.

The standard of review is *de novo,* as this is a legal issue involving uncontested facts. *People v. Chapman,* 194 Ill. 2d 186, 208, 743 N.E.2d 48 (2000).  Although this issue was not included in the post-trial motion, this Court may correct a mittimus where the error deprives a defendant of his rights. *People v. Hayes,* 54 Ill. App. 3d 617, 619, 370 N.E.2d 68 (1st Dist. 1977).

The death of one person can support a conviction on only one count of murder.  "Where but one person has been murdered, there can be but one conviction of murder." *People v. Kuntu,* 196 Ill. 2d 105, 130, 752 N.E.2d 380 (2001) (trial court erred in entering judgment on both knowing and felony murder as to each victim).  Accordingly, the death of Darryl Landry can support a conviction for only one count of murder.  As the court ordered, the findings of guilt on the two murder charges merged. (I Sup. R. 62)  Montez Baker's sentencing order should therefore be amended to reflect a conviction on only a single count of murder.

## CONCLUSION

For the foregoing reasons, Montez Baker, Defendant-Appellant, respectfully requests that this Court reduce his first degree murder conviction to second degree murder and remand the cause for resentencing or reduce his sentence and correct the sentencing order to reflect a conviction on a single count of murder.

Respectfully submitted,

MICHAEL J. PELLETIER
Deputy Defender

DEBORAH ISRAEL
Assistant Appellate Defender
Office of the State Appellate Defender
203 North LaSalle Street - 24th Floor
Chicago, Illinois 60601
(312) 814-5472

COUNSEL FOR DEFENDANT-APPELLANT

-22-

## APPENDIX TO THE BRIEF

Index to the Record ........................................................ A-1

Judgment Order ........................................................... A-4

Motion to Reconsider Sentence ............................................. A-5

Notice of Appeal ......................................................... A-6

## INDEX TO THE RECORD

**Common Law Record ("C")**                                                  **Page**

Certified Statement of Conviction/Disposition .................................... C-1

Complaint for Preliminary Examination ......................................... C-8

Arrest Report (July 25, 2000) ................................................ C-9

Appearance (July 27, 2000, September 6, 2000) ........................... C-10, C-17

Indictment/Information ...................................................... C-13

Defendant's Motion for Discovery (September 6, 2000) ........................... C-18

State's Answer to Discovery (April 30, 2001) ................................... C-25

Defendant's Answer to Discovery (January 3, 2001) .............................. C-29

Notice of Motion (August 7, 2002) ............................................ C-30

Motion to Advance and Reset (August 7, 2002) .................................. C-31

Jury Waiver Form (September 9, 2002) .......................................... C-33

State's Motion for Discovery (September 6, 2000) ............................... C-34

Presentence Investigation Report (October 4, 2002) ............................. C-36

Motion for New Trial (October 4, 2002) ........................................ C-89

Sentencing Order (November 1, 2002) ........................................... C-91

Notice of Appeal (February 5, 2003) ........................................... C-92

A-1

## Report of Proceedings ("R")

| | Direct | Cross | Redir. | Recr. | |
|---|---|---|---|---|---|
| February 5, 2003 | | | | | |
| Motion to Reconsider Sentence | | | | | 3 |
| Motion Denied | | | | | 4 |

## Supplemental Record, Volume I ("I Sup.R.")

| | Direct | Cross | Redir. | Recr. | |
|---|---|---|---|---|---|
| September 6, 2000 | | | | | |
| Continued | | | | | 10 |
| April 30, 2001 | | | | | |
| Continued | | | | | 15 |
| January 3, 2002 | | | | | |
| Continued | | | | | 18 |
| August 12, 2002 | | | | | |
| Continued | | | | | |
| September 9, 2002 | | | | | |

**Bench Trial**

| | Direct | Cross | Redir. | Recr. | |
|---|---|---|---|---|---|
| Jury Waiver | | | | | 26 |
| Opening Statements | | | | | |
|     Mr. Weiner (State) | | | | | 27 |
|     Mr. Moffett (Defense) | | | | | 32 |
| State Witnesses | | | | | |
|     Velma Landry | 34 | | | | |
|     Timothy Harper | 38 | 58 | 63 | | |
|     Kelly Sandifer | 64 | 78 | 82, 84 | 83 | |
|     Kip Bell | 84 | 94 | | | |
| Stipulations | | | | | 100 |

A-2

|  |  | **Direct** | **Cross** | **Redir.** | **Recr.** |
|---|---|---|---|---|---|
|  | Catherine Kelly | 108 |  |  |  |
| State Rests |  |  |  |  | 131 |
| Motion for Directed Finding - Denied |  |  |  |  | 131 |
| Defense Rests |  |  |  |  | 133 |
| Closing Arguments |  |  |  |  |  |
|  | Mr. O'Reilly (State) |  |  |  | 133 |
|  | Mr. Moffett (Defense) |  |  |  | 145 |
|  | Mr. O'Reilly (State) |  |  |  | 150 |
| Finding of Guilt |  |  |  |  | 154 |
| October 4, 2002 |  |  |  |  |  |
| Continued |  |  |  |  | 161 |

**Supplemental Record, Volume II ("II Sup.R.")**

November 1, 2002

**Sentencing Hearing**

| Motion for a New Trial |  |  |  |  | 4 |
|---|---|---|---|---|---|
| Motion Denied |  |  |  |  | 5 |
| Witnesses in Aggravation |  |  |  |  |  |
|  | Det. Cheryl Bromkema | 11 | 20 |  |  |
|  | Dawn Jones | 26 |  |  |  |
|  | Velma Lois Landry | 30 |  |  |  |
| Witnesses in Mitigation |  |  |  |  |  |
|  | Linda Tate | 36 |  |  |  |
|  | Zonya Tate | 39 |  |  |  |
|  | Ursula Johnson | 41 |  |  |  |
|  | Louella Ellison | 43 |  |  |  |

A-3

|  | **Direct** | **Cross** | **Redir.** | **Recr.** |  |
|---|---|---|---|---|---|
| Argument in Aggravation |  |  |  |  | 45 |
| Argument in Mitigation |  |  |  |  | 54 |
| Elocution |  |  |  |  | 60 |
| Imposition of Sentence |  |  |  |  | 61 |
| **Supplemental Record, Volume III ("III Sup. R.")** |  |  |  |  |  |
| Continued |  |  |  |  | 5 |
| **Supplemental Record, Volume IV ("IV Sup. R.")** |  |  |  |  |  |
| Memorandum ("Half Sheet") |  |  |  |  | 2 |

IN THE CIRCUIT COURT OF COOK COUNTY

E OF THE STATE OF ILLINOIS  )    CASE NUMBER      00CR2017501
                  V.         )    DATE OF BIRTH    06/12/73
EZ    BAKER                  )    DATE OF ARREST   07/25/00
                                  IR NUMBER 0906299   SID NUMBER 029159050

ORDER OF COMMITMENT AND SENTENCE TO
ILLINOIS DEPARTMENT OF CORRECTIONS
====================================

The above named defendant having been adjudged guilty of the offense(s) enumerated below
by sentenced to the Illinois Department of Corrections as follows:

| Statutory Citation | Offense | Sentence | Class |
|---|---|---|---|
| 720-5/9-1(A)(1) | MURDER/INTENT TO KILL/INJURE | YRS. 030 MOS.00 | M |
| and said sentence shall run concurrent with count(s) __ __ __ __ | | | |
| 720-5/9-1(A)(2) | MURDER/STRONG PROB KILL/INJURE | YRS. 030 MOS.00 | M |
| and said sentence shall run concurrent with count(s) __ __ __ __ | | | |
| 720-5/12-4(B)(1) | AGG BATTERY/WEAPON/NO FIREARM | YRS. 005 MOS.00 | 3 |
| and said sentence shall run concurrent with count(s) __ __ __ __ | | | |
| | | YRS. __ MOS. __ | __ |
| and said sentence shall run (concurrent with)(consecutive to) the sentence imposed on: | | | |
| | | YRS. __ MOS. __ | __ |
| and said sentence shall run (concurrent with)(consecutive to) the sentence imposed on: | | | |

n Count ___ defendant having been convicted of a class _ offense is sentenced as
s x offender pursuant TO 730 ILCS 5/5-5-3(C)(8).

On Count ___ defendant is sentenced to an extended term pursuant to 730 ILCS 5/5-8-2.

The Court finds that the defendant is entitled to receive credit for time actually served
tody for a total credit of 0829 days as of the date of this order

IT IS FURTHER ORDERED that the above sentence(s) be concurrent with
ntence imposed in case number(s) _____
onsecutive to the sentence imposed under case number(s)
_____ _____ _____ _____

IT IS FURTHER ORDERED THAT ___ COUNT ONE MERGED IN TO COUNT TWO_____
_____ COUNT ONE RUN CONCURRENT WITH COUNT THREE_____
_____ MITT TO ISSUE_____

IT IS FURTHER ORDERED that the Clerk provide the Sheriff of Cook County with a copy of this Order and that the Sheriff
defendant into custody and deliver him/her to the Illinois Department of Corrections and that the Department take
into custody and confine him/her in accordance provided by until the above sentence is fulfilled.

ENTERED
TIME ___

NOV 01 2002

TED  NOVEMBER 01, 2002          ENTER: 11/01/02

IFIED BY  A SMITH          Judge Evelyn Clay
    DEPUTY CLERK            Dorothy Brown
                           Clerk of Circuit Court
                                                 JUDGE: CLAY, EVELYN B.    1692
                           Deputy Clerk Signature

C-91

STATE OF ILLINOIS      )
                       ) SS
COUNTY OF COOK         )

GLORIA DANIELS

IN THE CIRCUIT COURT OF COOK COUNTY **FILED**
CRIMINAL DIVISION

NOV 27 2002

PEOPLE OF THE STATE OF ILLINOIS    )
                                   )
            -vs-                   )      No.  00-CR-20080THY BROWN
                                   )      CLERK OF CIRCUIT COURT
MONTEZ BAKER                       )

### MOTION TO RECONSIDER SENTENCE

Now comes the defendant, MONTEZ BAKER, by his attorney, RITA A. FRY, Public Defender of Cook County, through LAFARRELL MOFFETT, Assistant Public Defender, and moves this Honorable Court to reconsider the sentences imposed in this cause.

In support of this motion, the Defendant states as follows:

1.    On November 1, 2002, this Honorable Court sentenced the Defendant to Thirty (30) years for the offense of First Degree Murder and a concurrent period of Five (5) years on an aggravated battery charge.

2.    These sentences are excessive in view of the Defendant's background and his rehabilitative potential. <u>People v. Williams</u>, 196 Ill.App.3d 851 (1990).  Ill.Const. Art. 1, Sec. 11 (1970).

**WHEREFORE**, the Defendant requests that his sentences be reconsidered and reduced.

Respectfully submitted,

RITA A. FRY
Defender of Cook County

BY: LAFARRELL MOFFETT
Assistant Public Defender 30295

Case 1:08-cv-00918      Document 13      Filed 04/18/2008      Page 44 of 79

JUDITH GORMAN

**FILED**

TO THE APPELLATE COURT OF ILLINOIS
IN THE CIRCUIT COURT OF COOK COUNTY
CRIMINAL DIVISION

FEB 0 5 2003

**DOROTHY BROWN**
CLERK OF CIRCUIT COURT

OF THE STATE OF ILLINOIS      )
                              )      No.  00-CR-20175
          vs.                 )
                              )      Trial Judge: EVELYN B. CLAY
Z BAKER                       )

### NOTICE OF APPEAL

peal is taken from the order of judgment described below:

ANT'S NAME:    MONTEZ BAKER

6299                          D.O.B.  JUNE 12, 1973

ANT'S ADDRESS: ILLINOIS DEPARTMENT OF CORRECTIONS

ANT'S ATTORNEY:  Office of the State Appellate Defender

SS:  203 North LaSalle Street, 24th Flr., Chicago, Illinois  60601

SE:  FIRST DEGREE MURDER AND AGGRAVATED BATTERY

NT:  FINDING OF GUILTY

F JUDGMENT or SENTENCE:    NOVEMBER 1, 2002

*La Farrell Moffett*
APPELLANT or ATTORNEY

### VERIFIED PETITION FOR REPORT OF PROCEEDINGS COMMON LAW RECORD
### AND FOR APPOINTMENT OF COUNSEL ON APPEAL FOR INDIGENT DEFENDANT

Supreme Court Rules 605-608, Appellant asks the Court to order the
al Court Reporter to transcribe an original and copy of the proceedings,
the original with the Clerk and deliver a copy to the Appellant; order the
to prepare the Record on Appeal and to appoint counsel on appeal.

ant, being duly sworn, says that at the time of his/hers conviction he/she
d is unable to pay for the Record or to retain counsel for appeal.

*La Farrell Moffett*
APPELLANT

IBED and SWORN TO THIS _____ DAY OF _____, 20_____

_____
NOTARY PUBLIC

### O R D E R

ORDERED the STATE APPELLATE DEFENDER is appointed as counsel on appeal and
mmon Law Record and Report of Proceedings be furnished to Appellant
t cost, within 45 days or receipt of this Order.  Dates to be trancribed,
pretrial motion dates, jury waiver date, trial dates, and sentencing or
nt date).

DATE: *February 5 2003*      ENTER: *NDClay 1692*
                             JUDGE    EVELYN B. CLAY

*C-92*

NO. 1-03-0688

IN THE

APPELLATE COURT OF ILLINOIS

FIRST JUDICIAL DISTRICT

PEOPLE OF THE STATE OF ILLINOIS,

Plaintiff-Appellee,

vs

WHITTEZ BAKER

Defendant-Appellant.

Appeal from the Circuit Court of Cook County, Criminal Division.
Honorable JAMES B. LINN, Judge Presiding.

BRIEF AND ARGUMENT FOR
PLAINTIFF-APPELLEE

RICHARD A. DEVINE,
State's Attorney,
County of Cook,
Room 309 - Daley Center
Chicago, Illinois 60602

Attorney for Plaintiff-Appellee

GOLDFARB
WM L. TOFFENETTI,
RD SCHROEDER,
Assistant State's Attorneys,
Of Counsel.

EXHIBIT C

IN THE

APPELLATE COURT OF ILLINOIS

FIRST JUDICIAL DISTRICT

PEOPLE OF THE STATE OF ILLINOIS,

Plaintiff-Appellee,

vs.

MONTEZ BAKER,

Defendant-Appellant.

## POINTS AND AUTHORITIES

### I.

**DEFENDANT WAS PROVEN GUILTY BEYOND A REASONABLE DOUBT OF FIRST DEGREE MURDER WHERE DEFENDANT STABBED AN UNARMED VICTIM THREE TIMES IN THE BACK AND WAS NOT ACTING UNDER A SUDDEN AND INTENSE PASSION** ........................ **12**

Jackson v. Virginia, 443 U.S. 307,
        99 S. Ct. 2781 (1979)............................................................    12

People v. Collins, 106 Ill. 2d 237,
        478 N.E.2d 267 (1985).........................................................    12-13

People v. Slim, 127 Ill. 2d 302,
        537 N.E.2d 317 (1989).........................................................    13

People v. Cox, 195 Ill. 2d 378,
        748 N.E.2d 166 (2001).........................................................    13

People v. Blackwell, 171 Ill. 2d 338,
        665 N.E.2d 782 (1996).........................................................    15

1

People v. Huddleston, 243 Ill. App. 3d 1012,
        614 N.E.2d 86 (1st Dist. 1993) ............................................................    15-16

People v. Garcia, 165 Ill. 2d 409,
        651 N.E.2d 100 (1995).............................................................................    16

People v. Williams, 315 Ill. App. 3d 22,
        732 N.E.2d 767 (1st Dist. 2000) ............................................................    16

People v. Hooker, 249 Ill. App. 3d 394,
        618 N.E.2d 1074 (1st Dist. 1993) ..........................................................    16

People v. Bailey, 141 Ill. App. 3d 1090,
        490 N.E.2d 1334 (1st Dist. 1986) ..........................................................    17

People v. Atkins, 39 Ill. App. 3d 908,
        351 N.E.2d 366 (1st Dist. 1976) ............................................................    17

People v. Harris, 8 Ill. 2d 431,
        134 N.E.2d 315 (1956)..............................................................................    17

People v. Chevalier, 131 Ill. 2d 66,
        544 N.E.2d 942 (1989)..............................................................................    17

People v. Delgado, 282 Ill. App. 3d 851,
        668 N.E.2d 173 (1st Dist. 1996) ............................................................    18, 21

People v. Bacon, 91 Ill. App. 3d 673,
        415 N.E.2d 678 (1st Dist. 1980) ............................................................    18

People v. DeJesus, 94 Ill. App. 3d 1018,
        419 N.E.2d 510 (1st Dist. 1981) ............................................................    19

People v. Johnson, 4 Ill. App. 3d 249,
        280 N.E.2d 764 (1st Dist. 1972) ............................................................    19, 20

People v. Goolsby, 45 Ill. App. 3d 441,
        359 N.E.2d 871 (1st Dist. 1977) ............................................................    19, 20

People v. Stepheny, 76 Ill. App. 2d 131,
        221 N.E.2d 798 (1st Dist. 1966) ............................................................    19, 20

People v. Pugh, 187 Ill. App. 3d 860,
        543 N.E.2d 875 (1st Dist. 1989) ............................................................    21

S. Ct. Rule 613(b)(3)................................................................... 16

720 ILCS 5/9-1(a)(1)-(2) (West 2004)....................................... 13

720 ILCS 5/9-2(a)(1) (West 2004)............................................. 16

720 ILCS 5/9-2(c) (West 2004) ................................................. 16

## II.

**THE TRIAL COURT PROPERLY EXERCISED ITS DISCRETION WHEN IT SENTENCED DEFENDANT TO CONCURRENT TERMS OF THIRTY YEARS' INCARCERATION FOR FIRST-DEGREE MURDER AND FIVE YEARS' INCARCERATION FOR AGGRAVATED BATTERY** .................................................. **23**

People v. Stacey, 193 Ill. 2d 203,
    737 N.E.2d 626 (2000)......................................... 23

People v. Fern, 189 Ill. 2d 48,
    723 N.E.2d 207 (1999)......................................... 23, 24, 26, 27

People v. Beals, 162 Ill. 2d 497,
    643 N.E.2d 789 (1994)......................................... 23

People v. Jones, 168 Ill. 2d 367,
    659 N.E.2d 1306 (1995)....................................... 23

People v. Lantz, 186 Ill. 2d 243,
    712 N.E.2d 314 (1999)......................................... 24

People v. Hunzicker, 308 Ill. App. 3d 961,
    721 N.E.2d 765 (3rd Dist. 1999)......................... 24

People v. Streit, 142 Ill. 2d 13,
    566 N.E.2d 1351 (1991)....................................... 24, 25

People v. Boclair, 225 Ill. App. 3d 331,
    587 N.E.2d 1221 (1st Dist. 1992)........................ 24

People v. Harris, 294 Ill. App. 3d 561,
    691 N.E.2d 80 (1st Dist. 1998)........................... 24

3

People v. Baker, 239 Ill. App. 3d 44,
    605 N.E.2d 689 (4th Dist. 1993)........................................................... 24

People v. Trimble, 220 Ill. App. 3d 338,
    580 N.E.2d 1209 (1st Dist. 1991)........................................................ 25

People v. Canet, 218 Ill. App. 3d 855,
    578 N.E.2d 1146 (1st Dist. 1991)........................................................ 25

People v. Maldonado, 240 Ill. App. 3d 470,
    608 N.E.2d 499 (1st Dist. 1992)........................................................ 26, 27

People v. Nelson, 106 Ill. App. 3d 838,
    436 N.E.2d 655 (1st Dist. 1982)........................................................ 26, 27

People v. Whitney, 188 Ill. 2d 91,
    720 N.E.2d 225 (1999).................................................................... 28

People v. Carney, 327 Ill. App. 3d 998,
    765 N.E.2d 1028 (1st Dist. 2002)....................................................... 28

People v. Arna, 168 Ill. 2d 107,
    658 N.E.2d 445 (1995).................................................................... 30

City of Chicago v. Roman, 184 Ill. 2d 504,
    705 N.E.2d 81 (1998)..................................................................... 30

People v. Curry, 178 Ill. 2d 509,
    687 N.E.2d 877 (1997).................................................................... 30

People v. Garcia, 179 Ill. 2d 55,
    688 N.E.2d 57 (1997)..................................................................... 30

People v. Harris, 203 Ill. 2d 111,
    784 N.E.2d 792 (2003).................................................................... 30

730 ILCS 5/5-8-1(a)(1)(a) (West 2004)......................................................... 26

730 ILCS 5/5-8-1(a)(6) (West 2004)............................................................ 26

730 ILCS 5/5-8-4 (West 2000)................................................................. 28

730 ILCS 5/5-8-4 (West 2000)................................................................. 29

730 ILCS 5/5-8-4(a) (West 2000).............................................................. 29

4

730 ILCS 5/5-5-4 (West 2000) ........................................................    30

730 ILCS 5/5-8-4(b)(West 2000) ..................................................    30

## III.

**THE SENTENCING ORDER CORRECTLY REFLECTS THAT DEFENDANT'S TWO MURDER CONVICTIONS WERE MERGED INTO ONE MURDER CONVICTION. ...........    32**

People v. Kuntu, 196 Ill. 2d 105,
        752 N.E.2d 380 (2001) .......................................................    32

People v. Lego, 116 Ill. 2d 323,
        507 N.E.2d 800 (1987) .......................................................    32

## ISSUES PRESENTED FOR REVIEW

I.    Whether the People proved defendant guilty of first degree murder beyond a reasonable doubt where defendant stabbed the unarmed victim three times in the back without legal justification, and where defendant failed to prove by a preponderance of the evidence that his actions were the result of a sudden and intense passion resulting from serious provocation of mutual combat.

II.   Whether the trial court abused its discretion when it sentenced defendant to thirty years of imprisonment for first degree murder and five years' imprisonment for aggravated battery, sentences that fall within the statutory guidelines.

III.  Whether the sentencing order should be amended to reflect only one conviction for first degree murder.

6

## STATEMENT OF FACTS

Defendant Montez Baker was charged with first degree murder and aggravated battery under indictment number 00 CR 20175. (CL 13-16)  The charges arose after defendant fatally stabbed Darryl Landry and wounded Kip Bell on July 25, 2000. (Supp. R. E 25, 50, 67)  On September 19, 2002, defendant was tried to the bench before the Honorable Evelyn B. Clay and was found guilty of first degree murder and aggravated battery. (Supp. R. E 1, 133)  After considering the arguments in aggravation and mitigation, the trial court sentenced defendant to concurrent terms of thirty and five years' incarceration in the Illinois Department of Corrections. (Supp. R. A 61-62)

On July 25, 2000, Timothy Harper was watching soap operas at Kelly Sandifer's apartment located at 624 West Division, Chicago, Illinois. (Supp. R. E 16-17)  At around 2:30 in the afternoon, Mr. Harper's niece came into the apartment to speak with them. (Supp. R. E 18)  After speaking with his niece, Mr. Harper and Ms. Sandifer went to apartment 1403, which was located next door to Ms. Sandifer's apartment. (Supp. R. E 19)  Defendant and the victim, Darryl Landry, were arguing inside the apartment. (Supp. R. E 20)

Mr. Harper had known both the victim and defendant for about nine years. (Supp. R. E 20-21)  After Mr. Harper saw the men arguing, he left the apartment because he thought the argument was going to stop. (Supp. R. E 22)  Mr. Harper and Ms. Sandifer went back to her apartment. (Supp. R. E 22)

Kip Bell and Hollis Holloway were also in apartment 1403 when the fight started. (Supp. R. E 24, 64)  At around 2:30 p.m., Mr. Bell was in a bedroom when he heard the sound of glass breaking. (Supp. R. E 65)  As Mr. Bell entered the living room, he saw defendant holding a knife in

7

his right hand. (Supp. R. E 66, 73)  The victim did not have any weapons. (Supp. R. E 66)

At around this same time, Mr. Harper's niece came back to Ms. Sandifer's apartment and told them about the fight that was taking place in apartment 1403. (Supp. R. E 48)  Again, Ms. Sandifer went to apartment 1403. (Supp. R. E 48)  Mr. Harper remained on the couch watching television. (Supp. R. E 48)

As Ms. Sandifer entered apartment 1403, she saw the victim and defendant wrestling. (Supp. R. E 49)  Ms. Sandifer noticed that defendant was holding a large knife with a black handle. (Supp. R. E 50)  There was nothing in the victim's hands. (Supp. R. E 25, 50-51)  She then saw the victim hit defendant in the face. (Supp. R. E 57)  The victim held defendant's arm against the wall so defendant couldn't stab him. (Supp. R. E 66)  As the victim was holding defendant against the wall, defendant stabbed him three times in the back. (Supp. R. E 50, 67)  Blood flowed from the victim's head and back. (Supp. R. E 52)

Meanwhile, Mr. Harper heard Ms. Sandifer screaming. (Supp. R. E 23)  Mr. Harper rushed to apartment 1403. (Supp. R. E 23)  As Mr. Harper entered the apartment, he also saw defendant holding a butcher knife in his hand. (Supp. R. E 25)  The victim was bleeding from his head and his shoulder blade. (R. E 28)  Mr. Harper joined Mr. Bell in attempting to separate defendant from the victim. (Supp. R. E 26, 67)  As Mr. Bell was trying to grab defendant's hand, defendant slashed Mr. Bell's left wrist with his knife. (Supp. R. E 51, 67)  The men then fell onto the couch. (Supp. R. E 68)  Mr. Bell grabbed both the victim and defendant by the legs and tried to drag them outside. (Supp. R. E 68)  Mr. Harper tried to step on defendant's knife, but his grip was too tight. (Supp. R. E 27)  Defendant would not let go. (Supp. R. E 27)

The victim also grabbed defendant to hold him down. (Supp. R. E 53, 69)  His grip was tight

8

at first. (Supp. R. E 69) However, as the victim lost more and more blood, his grip loosened. (Supp. R. E 69) His eyes rolled back. (Supp. R. E 69) The victim's body fell backwards to the apartment floor. (Supp. R. E 69) Finally, as the victim's blood poured onto the apartment floor, he stopped moving. (Supp. R. E 29-30) The victim went unconscious. (Supp. R. E 53)

Defendant left the apartment. (Supp. R. E 31) He walked over to the incinerator and threw the knife down the chute. (Supp. R. E 31, 53-54) Defendant then ran down the hallway. (Supp. R. E 31) About ten minutes later, Mr. Harper saw defendant near another incinerator in a different building located at 630 West Evergreen, Chicago, Illinois. (Supp. R. E 33, 40) Defendant had thrown his clothes down the incinerator chute. (Supp. R. E 104) When Mr. Harper saw him, defendant only had his boxer shorts on. (Supp. R. E 33) Defendant also appeared to be drunk. (Supp. R. E 34) Mr. Harper asked, "What you doing, man?" (Supp. R. E 34) Defendant replied, "He should not have took my food." (Supp. R. E 34) Defendant then said that he would "kill that bitch again." (Supp. R. E 34) Defendant then walked around until detectives picked him up. (Supp. R. E 104)

Zbigniew M. Niewdach, a forensic investigator for the Chicago Police Department, was called to the scene on July 25, 2000. (Supp. R. E 77) At approximately 4:45 p.m., Investigator Niewdach arrived at the crime scene located at 624 West Division, apartment 1403. (Supp. R. E 77) Investigator Niewdach took photographs of the location and the victim. (Supp. R. E 78) He also recovered a knife with a black handle that was approximately thirteen inches in length from the trash compactor. (Supp. R. E 78) He properly inventoried the knife and sent it to the Illinois State Police Crime Laboratory for testing and analysis. (Supp. R. E 78) An examination of the knife revealed an insufficient amount of blood to be further analyzed. (Supp. R. E 81, 83) The examination did not

9

reveal latent impressions suitable for comparison. (Supp. R. E 80)

Dr. Mitra Kalelkar of the Cook County Medical Examiner's Office performed an autopsy on

the victim's remains. (Supp. R.E 84) During the course of Dr. Kalelkar's examination, she observed

four injuries which included: a stab wound which entered the victim's right midback and perforated

the lung, a stab wound which entered the victim's left back and perforated the skin and muscle, a stab

wound which entered the right upper shoulder, and a non-penetrating puncture wound to the left back.

(Supp. R. E 112)

At approximately 6:30 in the evening on July 26, 2000, Cook County Assistant State's

Attorney Catherine Kelly, who was assigned to the Felony Review Unit, went to the Area 3 police

station. (Supp. R. E 87-88) ASA Kelly introduced herself to defendant and advised him of his rights.

(Supp. R. E 90) Defendant and ASA Kelly then had a brief conversation. (Supp. R. E 92) After this

conversation, ASA Kelly left the interview room. (Supp. R. E 92) She returned at about 9:15 p.m.

(Supp. R. E 92) At 9:15 p.m., defendant and ASA Kelly had a second conversation. (Supp. R. E 92)

After this brief conversation, ASA Kelly memorialized defendant's statement in a handwritten form.

(Supp. R. E 94)

Defendant stated that everyone called him "Skeeter" because he had a lot of kids. (Supp. R.

E 102) Defendant stated that he knew the victim because he is the father of his brother. (Supp. R. E

102) Defendant first saw the victim at defendant's mom's house located at 630 West Evergreen,

apartment 1303, in the afternoon. (Supp. R. E 102) He stated that he got into a fight with the victim

over Popeye's chicken. (Supp. R. E 102)

Defendant stated that about an hour after the fight he went to his sister, Zonya Tate's, house

located at 624 West Division, apartment 1403. (Supp. R. E 103) He stated that the victim was on

10

the floor in the living room, Mr. Holloway was sitting on a chair, and Mr. Bell was in a back room. (Supp. R. E 103) Defendant stated that he was mad that the victim was there because of their earlier fight. (Supp. R. E 103) Defendant stated that he kicked the victim in his feet and told him to get out. (Supp. R. E 103)

Defendant stated that he went into the kitchen and got a butcher knife. (Supp. R. E 103) He stated that the blade of the butcher knife was 6 to 8 inches. (Supp. R. E 103) The victim also went into the kitchen. (Supp. R. E 103) The two men then went into the living room. (Supp. R. E 103) Defendant stated that he pointed and waived the knife at the victim and told him to leave. (Supp. R. E 103) The two men were face to face. (Supp. R. E 103) Defendant stated that the victim punched him in the face and the two men began wrestling. (Supp. R. E 104) Defendant stated that he then stabbed the victim two or three times. (Supp. R. E 104)

Defendant stated that during the altercation Mr. Bell and Mr. Harper tried to get the knife away from him. (Supp. R. E 104) Defendant stated that he got scared and dropped the knife down the incinerator at 624 West Division and then ran to his mom's house and dropped his clothes down the incinerator at 630 West Evergreen. (Supp. R. E 104) Defendant stated that he walked around until detectives picked him up. (Supp. R. E 104) Defendant was then given the opportunity to read through and make corrections to his statement. (Supp. R. E 105) Afterwards, he signed the bottom of each page of his statement to indicate that the statement was correct. (Supp. R. E 105)

The trial court found defendant guilty of first degree murder and aggravated battery. (Supp. R. E 156) After a hearing in aggravation and mitigation, the court sentenced defendant to concurrent thirty and five year terms for first degree murder and aggravated battery respectively. (Supp. R. A 61-62) Defendant now appeals.

11

**ARGUMENT**

**I.**

**DEFENDANT WAS PROVEN GUILTY BEYOND A REASONABLE DOUBT OF FIRST DEGREE MURDER WHERE DEFENDANT STABBED AN UNARMED VICTIM THREE TIMES IN THE BACK AND WAS NOT ACTING UNDER A SUDDEN AND INTENSE PASSION.**

Defendant contends that his conviction for first degree murder should be reduced to second degree murder. (Deft. Br. 10) Defendant specifically claims that his earlier quarrel with the victim on the day of the incident combined with the fact that the victim punched him was sufficient provocation to cause a sudden and intense passion mitigating his culpability. (Deft. Br. 12)   In response, the People submit that defendant was proven guilty beyond a reasonable doubt of first degree murder.  The People further submit that defendant had more than enough time to "cool" after the earlier argument, so that defendant's decision to kill the victim was not caused by a "sudden and intense passion."   Additionally, the evidence adduced at trial, such as the eyewitness testimony and physical evidence, along with defendant's own handwritten statement admitting that he stabbed the unarmed victim, proved that the defendant was the aggressor in the second, fatal altercation. Accordingly, when the evidence is reviewed in the light most favorable to the People, it demonstrates that defendant's conviction for first degree murder must be affirmed.

When a defendant challenges the sufficiency of the evidence on appeal, the relevant question is whether, after reviewing all of the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); People v. Collins, 106 Ill. 2d

237, 261, 478 N.E.2d 267, 277 (1985). Under this standard of review, a reviewing court will not set aside a verdict unless the evidence is so unreasonable, improbable, or unsatisfactory as to create a reasonable doubt of the defendant's guilt. People v. Slim, 127 Ill. 2d 302, 307, 537 N.E.2d 317, 319 (1989). Thus, a conviction will not be overturned on appeal unless the reviewing court determines that no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. People v. Cox, 195 Ill. 2d 378, 384, 748 N.E.2d 166, 172 (2001).

A person commits the offense of first degree murder when he either intends to kill or do great bodily harm to a person, or knows that such acts will cause death to a person; or he knows that such acts create a strong probability of death or great bodily harm to that person. 720 ILCS 5/9-1(a)(1)-(2) (West 2004). In the instant case, the record clearly demonstrates that defendant was proven guilty of first degree murder beyond all reasonable doubt.

The evidence reveals that on July 25, 2000, around 2:30 p.m., the victim was lying on the living room floor of apartment 1403 when defendant walked in. (Supp. R. E 103) Instead of leaving the apartment, defendant kicked the victim and told him to get out. (Supp. R. E 103) Defendant unjustifiably escalated matters when he went into the kitchen and grabbed a butcher knife with a blade almost 8 inches long. (Supp. R. E 103) Three eyewitness, Timothy Harper, Kelly Sandifer, and Kip Bell, all testified that the victim was unarmed when defendant threatened his life with the butcher knife. (Supp. R. E 25, 50-51) As defendant pointed and waived the butcher knife at the victim, the victim punched defendant and the two men began wrestling. (Supp. R. E 25, 57, 66-67, 103-04) The victim tried to defend himself, but to no avail. (Supp. R. E 57, 66, 104) Despite never being threatened with deadly force, defendant raised his butcher knife and stabbed the victim multiple times in the back. (Supp. R. E 25, 50, 67, 104, 112)

13

Defendant's complete disregard for human life is further exemplified by the fact that defendant was relentless in his attack. (Supp. R. E 26, 51) Defendant stabbed the victim at least three times in the back. (Supp. R. E 25, 104, 112) Additionally, numerous men tried to stop the defendant, but were unsuccessful. (Supp. R. E 26, 51) Mr. Harper tried to step on defendant's knife, but his grip was too tight. (Supp. R. E 27) Defendant would not let go. (Supp. R. E 27). Instead, as Mr. Bell tried to grab defendant's hand, defendant slashed Mr. Bell's left wrist. (Supp. R. E 67) Defendant's attack stopped only after the victim went unconscious. (Supp. R. E 29-30, 53, 69)

Moreover, defendant's consciousness of guilt is demonstrated by the actions he took immediately after the stabbing. He did not call the police. He did not get help. Instead, he walked down the hallway and threw the bloodied butcher knife down the incinerator chute. (Supp. R. E 31, 54) Defendant then ran down the hallway in attempt to flee the scene. (Supp. R. E 31) He ran to his mother's house where he dropped his bloodied clothes down the incinerator at 630 West Evergreen, Chicago, Illinois. (Supp. R. E 104) Mr. Harper saw defendant near the incinerator located at 630 West Evergreen. (Supp. R. E 33, 40) Defendant only had his boxer shorts on. (Supp. R. E 33) Mr. Harper asked, "What you doing, man?" (Supp. R. E 34) Defendant replied, "He should not have took my food." (Supp. R. E 34) Defendant then said that he would "kill that bitch again." (Supp. R. E 34)

Further confirmation that defendant unjustifiably killed the victim can be found in defendant's own handwritten and signed statement. Defendant stated that he kicked the victim in his feet and told him to get out. (Supp. R. E 103) Defendant stated that he went into the kitchen and got a butcher knife. (Supp. R. E 103) He stated that the blade of the butcher knife was 6 to 8 inches. (Supp. R. E 103) Defendant stated that he pointed and waived the knife at the victim and told him to

leave. (Supp. R. E 103) Defendant stated that the victim punched him in the face and the two men began wrestling. (Supp. R. E 104) Defendant stated that he then stabbed the victim two or three times. (Supp. R. E 104)

Additionally, defendant stated that during the altercation Mr. Bell and Mr. Harper tried to get the knife away from him. (Supp. R. E 104) Defendant stated that he got scared and dropped the knife down the incinerator at 624 West Division and then ran to his mom's house and dropped his clothes down the incinerator at 630 West Evergreen. (Supp. R. E 104) Defendant stated that he walked around until detectives picked him up. (Supp. R. E 104)

Clearly, the evidence of defendant's guilt adduced at trial was overwhelming. Three eyewitnesses testified that defendant stabbed the unarmed victim multiple times in the back and slashed another man's wrist. Defendant's own handwritten statement admitted that he kicked the victim, stabbed the victim numerous times in the back, left the apartment, and threw the butcher knife and his bloodied clothing down an incinerator chute. Thus, the People proved defendant guilty beyond all reasonable doubt. Accordingly, taking the evidence in the light most favorable to the People, the trial court's decision should not be disturbed on appeal.

Defendant argues, alternatively, that if his conviction for the first-degree murder of Darryl Landry is not reversed, it should be reduced to second-degree murder. When a defendant agues on appeal that he presented sufficient evidence to prove one of the mitigating factors to reduce a crime from first degree murder to second degree murder, a reviewing court must "consider whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found that the mitigating factors were not present." People v. Blackwell, 171 Ill. 2d 338, 357-58, 665 N.E.2d 782 (1996); see also People v. Huddleston, 243 Ill. App. 3d 1012, 1021, 614 N.E.2d

15

86 (1st Dist. 1993) ("Because we are not entitled to reweigh the conflicting evidence, but instead must view it in the light most favorable to the State, we affirm the trial court's determination that defendant failed to prove by a preponderance of the evidence that he acted unreasonably, in self-defense.")

A person commits second degree murder when he commits the offense of first degree murder and at the time of the killing he is acting under a sudden and intense passion resulting from serious provocation by the individual killed. 720 ILCS 5/9-2(a)(1) (West 2004). Mutual combat is one of the recognized forms of serious provocation sufficient to reduce first degree murder to second degree murder. People v. Garcia, 165 Ill. 2d 409, 429, 651 N.E.2d 100 (1995). Mutual combat has been defined as a fight or struggle that both parties enter willingly or where two persons, upon a sudden quarrel and in hot blood, mutually fight upon equal terms and where death results from the combat. People v. Williams, 315 Ill. App. 3d 22, 35, 732 N.E.2d 767 (1st Dist. 2000).

The burden of proof is on the defendant to prove the mitigating factor by a preponderance of the evidence before the defendant can be found guilty of second degree murder. 720 ILCS 5/9-2(c) (West 2004). Moreover, although Supreme Court Rule 613(b)(3) empowers a reviewing court to reduce the degree of the offense for which the defendant was convicted, this Court has recognized that this power "should be used with extreme caution and only in rare cases." People v. Hooker, 249 Ill. App. 3d 394, 403, 618 N.E.2d 1074 (1st Dist. 1993).

In the instant case, defendant's argument that he was acting under a sudden and intense passion is without merit and unsupported by the record. The evidence is clear, defendant had more than enough time to "cool" off from his first argument with the victim. Additionally, defendant was the aggressor in the second, fatal altercation.

16

First, too much time had passed between the first and second altercation to mitigate the killing to second degree murder. An intense passion cannot mitigate a murder to second degree if there was sufficient time between the provocation and the homicide to permit the voice of reason to be heard. People v. Bailey, 141 Ill. App. 3d 1090, 1104, 490 N.E.2d 1334 (1st Dist. 1986). Even a mere pause in the altercation may be sufficient to constitute a cooling-off period. People v. Atkins, 39 Ill. App. 3d 908, 913, 351 N.E.2d 366 (1st Dist. 1976). As was stated by the court in People v. Harris, 8 Ill. 2d 431, 435, 134 N.E.2d 315 (1956):

> What constitutes a sufficient 'cooling-off period' depends upon the extent to which the passions have been aroused and the nature of the act which caused the provocation, and, for that reason, no yardstick of time can be used by the court to measure a reasonable period of passion but it must vary as do the facts of every case. Humans react violently to the infliction of a serious injury, and the degree of pain which results therefrom not only governs the passion itself but also influences the duration of the cooling period.

In this case, defendant's and the victim's first argument was over Popeye's chicken. (Supp. R. E 102) It was not such a serious quarrel or violent dispute that would arouse the passions of a reasonable person. Additionally, there is no evidence in the record that the victim inflicted any injury, let alone serious injury, upon defendant in this argument. See People v. Chevalier, 131 Ill. 2d 66, 73, 544 N.E.2d 942 (1989) (finding that where the provocation is slight and the retaliation is disproportionately great, the crime is first degree murder.).

Moreover, in defendant's own handwritten statement to ASA Catherine Kelly, he stated that about an hour had passed after the first argument before he came into contact with the victim again. (Supp. R. E 103) Cleary, given the nature of the argument which caused the provocation, an argument over food, and the amount of time which had passed between the first argument and the killing, an hour, more than enough time had elapsed such that defendant's passions should have been

17

"cooled."

Second, the evidence clearly shows that that defendant was the aggressor in the second altercation, used excessive force under the circumstances, and he and the victim did not fight on equal terms. A defendant who instigates combat may not rely upon the victim's response as evidence of mutual combat sufficient to reduce first degree murder to second degree murder. People v. Delgado, 282 Ill. App. 3d 851, 859, 668 N.E.2d 173 (1st Dist. 1996); People v. Bacon, 91 Ill. App. 3d 673; 415 N.E.2d 678 (1st Dist. 1980).

In this case, although the victim admittedly struck defendant, he did not do so until after defendant kicked him, yelled at him, had gotten a butcher knife from the kitchen, and waived and pointed it at him. (Supp. R. E 103-104) In defendant's own handwritten statement, he, himself, stated that he kicked the victim in his feet and told him to get out the apartment. (Supp. R. E 103) Defendant even admitted that he went into the kitchen, got a butcher knife, and waived the knife at the victim. (Supp. R. E 103) Only after the victim had been kicked, told to leave, and threatened with a butcher knife, did he hit defendant. (Supp. R. E 103) Thus, pursuant to defendant's own statement, he was the aggressor in this altercation.

Furthermore, three different eyewitnesses testified that defendant stabbed the victim multiple times with a butcher knife that was thirteen inches in length. (Supp. R. E 25, 50, 66, 78) More importantly, all three witnesses testified that the victim was unarmed. (Supp. R. E 25, 50, 66) These witnesses also testified that they attempted to recover the knife from defendant but, "he wouldn't let go," and, instead, actually slashed Mr. Bell across his wrist. (Supp. R. E 26-27, 51, 53, 67) Thus, clearly, defendant used excessive force under the circumstances, and the fight was not on equal terms.

Moreover, at trial, the court made the following comments prior to convicting defendant:

18

> Had this been mutual conduct that would have been a fair
> fight. However, the defendant introduced into this dispute an
> 8 or 9 inch blade butcher knife. The four stab wounds to the
> back of the victim evidences defendant's violent aggression
> toward the victim, who quite possibly at that time the wounds
> being in the back was attempting to get away from the
> defendant. The defendant armed himself with a deadly
> weapon before the victim punched the defendant, and after the
> defendant had reinitiated the dispute by kicking the victim
> while he sat on the floor.
>
> The defendant knew or should have known that when you
> stab someone in the back with a 9 inch knife, with such
> conduct there is a strong probability of death or great bodily
> harm, and that's what happened here. The victim died and
> there was no lawful justification. <u>Certainly not mutual
> combat</u>. (Supp. R. E 132-33) (Emphasis added).

The trial court heard the witnesses' testimony and reasonably concluded that defendant was not

acting under a sudden and intense passion. In a bench trial, it is within the province of the trial court,

sitting as the trier-of-fact, to settle conflicts in evidence and determine whether the circumstances

were such that the killing by the defendant constituted first or second degree murder. <u>People v.

DeJesus</u>, 94 Ill. App. 3d 1018, 1019-20, 419 N.E.2d 510 (1st Dist. 1981). Because the trial court

properly found that this killing was not the result of mutual combat, and this issue is one for the trier

of fact, this Court should uphold the trial court's decision finding defendant guilty of first degree

murder.

Nevertheless, defendant argues that he was under a sudden and intense passion resulting from

serious provocation of mutual combat. (Deft. Br. 10) Defendant relies on <u>People v. Johnson</u>, 4 Ill.

App. 3d 249, 280 N.E.2d 764 (1st Dist. 1972), <u>People v. Goolsby</u>, 45 Ill. App. 3d 441, 359 N.E.2d

871 (1st Dist. 1977), and <u>People v. Stepheny</u>, 76 Ill. App. 2d 131, 221 N.E.2d 798 (1st Dist. 1966), for

support. However, all three cases are factually inapposite.

In <u>Johnson</u>, the evidence clearly established that the deceased was the aggressor, was much

19

bigger than the defendant, and was reputed to be a skillful and aggressive fighter. 4 Ill. App. 3d at 250. Additionally, there was no pause in the activities of the two combatants to show that the fatal blow was attributable to malice or revenge. 4 Ill. App. 3d at 250. Moreover, defendant only stabbed the deceased once in the leg, as opposed to three or four times in the back. 4 Ill. App. 3d at 250. Based on these circumstances, this Court reduced the defendant's murder conviction to voluntary manslaughter. 4 Ill. App. 3d at 252.

In Goolsby, this Court reduced defendant's murder conviction to voluntary manslaughter where the defendant stabbed the deceased only after the deceased picked up a lead paper weight, six inches in length and weighing five or six pounds, and hit the defendant numerous times during a violent struggle. 45 Ill. App. 3d at 444.

In Stepheny, this Court affirmed defendant's voluntary manslaughter conviction where the defendant shot the deceased after the exchange of harsh words and a quarrel of some duration. 76 Ill. App. 2d at 132. Additionally, there was conflicting evidence that the defendant shot the deceased after the deceased turned on him with a .22 caliber revolver in his hand. 76 Ill. App. 2d at 132. This Court found that there was insufficient evidence to show a cooling-off period following provocation by the deceased, and, therefore, determined that the requisite mental state for the offense of murder was not present. 76 Ill. App. 2d at 134.

Unlike all three cases relied upon by defendant, in the present case, defendant clearly was the aggressor. In fact, in defendant's own handwritten statement, he admits to kicking the victim, getting a butcher knife, and pointing and waving the knife at the victim, before the victim struck him. (Supp. R. E 103) Additionally, here, it is undisputed that the victim was unarmed. (Supp. R. E 25, 50, 66) The victim did not have a lead paper weight or a gun, and was not reputed to be a skillful and aggressive fighter. Moreover, unlike abovementioned cases, there was more than enough time

for defendant to "cool" off from the first argument. Again, defendant, himself, admitted that an hour had elapsed after the first argument before he saw the victim again. (Supp. R. E 103) Because all three cases cited by defendant are factually distinguishable, defendant's reliance on them is unwarranted.

The People submit that the case of People v. Delgado, 282 Ill. App. 3d 851, 668 N.E.2d 173 (1st Dist. 1996), is factually similar. In Delgado, defendant was convicted of first-degree murder for stabbing two victims to death following an earlier argument over cocaine. On appeal, the defendant argued that the trial court erred when it denied his tendered instructions on second-degree murder based on provocation. 282 Ill. App. 3d at 857. In rejecting defendant's argument, this Court found that defendant instigated the combat and, thus, cannot rely on the victim's response as evidence of mutual combat. 282 Ill. App. 3d at 859. Likewise, here, defendant instigated the combat by kicking the unarmed victim and waiving a large butcher knife in his face. Thus, like Delgado, defendant's contention that he stabbed the unarmed victim as a result of serious provocation of mutual combat is meritless.

Similarly, in People v. Pugh, 187 Ill. App. 3d 860, 868-69, 543 N.E.2d 875 (1st Dist. 1989), this Court rejected the defendant's argument that his conviction must be reduced to manslaughter because he and the victim were engaged in mutual combat at the time of the victim's death, prompting defendant to act "under a sudden and intense passion resulting from a serious provocation" by the victim. In rejecting defendant's mutual combat argument, this Court found that the defendant's actions of retrieving a gun and shooting an unarmed man were not proportionate to any provocation by the victim. 187 Ill. App. 3d at 868-69. Likewise, here, defendant's actions of retrieving a thirteen-inch butcher knife and stabbing an unarmed victim three or four times in the back were disproportionate to any alleged provocation by the victim. Consequently, pursuant to the

holdings in <u>Delgado</u> and <u>Pugh</u>, this Court should find that defendant was not acting under a sudden and intense passion resulting from a serious provocation of mutual combat when he brutally stabbed the victim death.

In conclusion, the evidence overwhelmingly established that defendant was proven guilty of first degree murder beyond a reasonable doubt. The evidence sufficiently established that defendant, and only defendant, had a weapon, was the initial aggressor, and repeatedly stabbed the unarmed victim in the back. Furthermore, defendant committed this murder without lawful justification and failed to prove by a preponderance of the evidence that any mitigating factor existed. Viewed in the light most favorable to the People, a rational trier of fact certainly could have found that the mitigating factor of mutual combat was not present. Accordingly, the People respectfully request that this Honorable Court affirm defendant's conviction for first degree murder.

## II.

**THE TRIAL COURT PROPERLY EXERCISED ITS DISCRETION WHEN IT SENTENCED DEFENDANT TO TERMS OF THIRTY YEARS' INCARCERATION FOR FIRST DEGREE MURDER AND FIVE YEARS' INCARCERATION FOR AGGRAVATED BATTERY. NEVERTHELESS, THIS MATTER MUST BE REMANDED TO THE TRIAL COURT FOR RESENTENCING BECAUSE DEFENDANT'S SENTENCES SHOULD HAVE BEEN CONSECUTIVE RATHER THAN CONCURRENT.**

Defendant contends that the trial court abused its discretion in sentencing him to serve a concurrent thirty year sentence and five year sentence in the Illinois Department of Corrections. (Deft. Br. 16). Defendant bases his argument on the theory that the sentences were excessive in light of the nature of the offenses and evidence presented in mitigation. (Deft. Br. 18-19). However, the People maintain that the record clearly establishes the trial court properly exercised its discretion and defendant's sentences were justified. Nevertheless, the People submit that this matter must be remanded to the trial court for resentencing because defendant's sentences should have been consecutive rather than concurrent.

It is well established that a trial court has broad discretionary powers in imposing a sentence. People v. Stacey, 193 Ill. 2d 203, 209, 737 N.E.2d 626 (2000), citing People v. Fern, 189 Ill. 2d 48, 53, 723 N.E.2d 207 (1999). When making a determination as to the sentence to be imposed, it is well established that a trial court's decision is entitled to great deference. People v. Beals, 162 Ill. 2d 497, 511, 643 N.E.2d 789 (1994). A reviewing court grants such deference to the trial court because the trial court is in a superior position to judge the credibility of witnesses and the weight of the evidence at the sentencing hearing. People v. Jones, 168 Ill. 2d 367, 373, 659 N.E.2d 1306 (1995). Thus, the

trial court's imposition of a sentence is a matter of judicial discretion which will not be altered upon review absent an abuse of that discretion. People v. Lantz, 186 Ill. 2d 243, 261, 712 N.E.2d 314 (1999).

In determining a sentence, the trial court may consider many factors, including the seriousness of the crime, the general moral character of the defendant, his age, his mentality, his habits, and his social environment. Fern, 189 Ill. 2d at 53. The defendant's criminal history and rehabilitative potential, as well as the seriousness of the offense, the need to protect the public, and the need for deterrence and retribution must also be considered. People v. Hunzicker, 308 Ill. App. 3d 961, 966, 721 N.E.2d 765 (3rd Dist. 1999). In considering the propriety of a sentence, the reviewing court must proceed with great caution and must not substitute its judgment for that of the trial court merely because it would have weighed the factors differently. People v. Streit, 142 Ill. 2d 13, 19, 566 N.E.2d 1351 (1991).

Whenever a sentence falls within the statutorily mandated guidelines, it is presumed to be proper and will not be overturned unless there is an affirmative showing that the sentence varies greatly from the purpose and spirit of the law or is manifestly violative of constitutional guidelines. People v. Boclair, 225 Ill. App. 3d 331, 335, 587 N.E.2d 1221 (1st Dist. 1992). The spirit and purpose of the law are promoted "when a sentence reflects the seriousness of the offense and gives adequate consideration to the rehabilitative potential of the defendant." Boclair, 225 Ill. App. 3d at 335. However, courts are not required to give more weight to a defendant's rehabilitative potential than to the seriousness of the offense. People v. Harris, 294 Ill. App. 3d 561, 691 N.E.2d 80 (1st Dist. 1998).

A sentencing judge is presumed to have considered all relevant factors absent a contrary showing in the record. People v. Baker, 239 Ill. App. 3d 44, 80, 605 N.E.2d 689 (4th Dist. 1993).

Moreover, when mitigation evidence is before the court, it is presumed that a sentencing court considered that evidence. People v. Trimble, 220 Ill. App. 3d 338, 355-56, 580 N.E.2d 1209 (1st Dist. 1991). In order to rebut this presumption, the defendant must affirmatively show that the trial court did not consider the relevant factors. People v. Canet, 218 Ill. App. 3d 855, 864, 578 N.E.2d 1146 (1st Dist. 1991). This affirmative showing includes more than a mere recitation of the sentence imposed. Canet, 218 Ill. App. 3d at 864. Without such a showing, our Supreme Court has reasoned that a rebalancing of aggravating and mitigating factors is proscribed. Streit, 142 Ill. 2d at 20-21.

Defendant in this case makes no such showing. Instead, his brief offers a mere recitation of the arguments offered in mitigation during sentencing, which the trial court is presumed to have already considered. (Deft. Br. 18) As a result, defendant has failed to make an affirmative showing that his arguments in mitigation were not considered by the trial court for purposes of sentencing, and as such, he fails to provide any basis for an effective excessive sentencing claim.

Furthermore, the trial court expressly cited to defendant's arguments in mitigation. (R B 120, 122) In addressing defendant, the trial court stated:

> Considering all of the aggravation that was set forth in this case, the facts that came out during the trial that led to the judgment of guilty of first degree murder of the victim in this case, and your criminal background; taking into consideration the mitigation, your age, there is still time for you to be rehabilitated. All those wonderful things that family members had to say about you. They indicated you are a caring and loving and attentive family member. The Court weighed all of this, that was just set forth in this sentencing hearing. (Supp. R. A 61)

However, the court also found that this was truly astoundingly tragic, that any intelligent, reasonable thinking person could take someone's life, especially a stepfather, someone he knew, in a manner in which he did under the circumstances. (Supp. R. A 61) The court acknowledged that

25

there are consequences for one's actions, and stated that defendant must take responsibility for the death that he caused. (Supp. R. A 61) Consequently, after evaluating all of this information, the court sentenced defendant to a term of thirty years for first degree murder and five years for aggravated battery in the Illinois Department of Corrections. (Supp. R. A 61-62)

In addition, the court did not exceed its authority since the both sentences fell within the statutory guidelines, reinforcing the trial court's propriety. The permissible sentencing range for first-degree murder is twenty to sixty years. 730 ILCS 5/5-8-1(a)(1)(a) (West 2004). The permissible sentencing range for aggravated battery is two to five years. 730 ILCS 5/5-8-1(a)(6) (West 2004). As a result, defendant's concurrent thirty and five year sentences easily fall within the permissible statutory ranges. In fact, the trial judge sentenced defendant to serve thirty years *less* than the maximum for the offense of first degree murder.

Nevertheless, defendant contends that his sentences were excessive. (Deft. Br. 16) Defendant briefly cites People v. Maldonado, 240 Ill. App. 3d 470, 608 N.E.2d 499 (1st Dist. 1992), and People v. Nelson, 106 Ill. App. 3d 838, 436 N.E.2d 655 (1st Dist. 1982), for support. However, in People v. Fern, 189 Ill. 2d 48, 55, 723 N.E.2d 207 (1999), our supreme court explicitly rejected the comparative sentencing approach used by defendant. The Fern court held that the excessiveness of a sentence could not be determined from a consideration of the sentences imposed on defendants in separate, unrelated cases because comparative sentencing analysis ran the risk of erroneous conclusions. Fern, 189 Ill. 2d at 56-58. The court held that no two cases are ever truly the same, and comparative sentencing would unduly interfere with the sentencing discretion vested in our trial courts. Fern, 189 Ill. 2d at 55-57. Finally, the Fern court held that a claim that a sentence is excessive must be based on the particular facts and circumstances of that case and if a sentence is appropriate given the particular facts of that case, it may not be attacked on the ground that a lesser

26

sentence was imposed in a similar, but unrelated, case. Fern, 189 Ill. 2d at 62. Clearly, pursuant to the holding in Fern, defendant's argument that his sentence is excessive based on a comparison with sentences imposed in two unrelated cases has been squarely rejected by our Supreme Court.

Assuming, arguendo, that this Honorable Court reviews the cases cited by defendant for guidance, both cases are readily distinguishable from the case at bar. In People v. Maldonado defendant's murder sentence was reduced from the maximum allowable sentence where defendant was only twenty years old, had two small children, was engaged to the children's mother, and had no prior felony convictions. 240 Ill. App. 3d at 484. In People v. Nelson, this Court reduced defendants' twenty year sentences for armed robbery to ten years in light of defendant's young age, prior scholastic records, work histories, and minor criminal backgrounds. 106 Ill. App. 3d at 846-47.

Unlike the defendants in Maldonado and Nelson, in this case, defendant was twenty-nine years old at the time of sentencing. (CL C 36, 42) Also, defendant never was married, admitted to having drank to excess on a daily basis, had no verifiable employment, and had no plans of returning to high school to pursue his GED at the time of this murder. (CL C 41-42)

Moreover, defendant had a substantial prior criminal background, which included a conviction for attempt robbery of a 14-year-old child, in which he violated his probation and was sentenced to two years in prison, juvenile convictions of aggravated assault, battery, and mob action, a conviction of criminal trespass to land, and another conviction for solicitation of roadway funds and disorderly conduct. (Supp. R. A 34, 45) (CL C 38) Additionally, defendant was not sentenced to the maximum sentence for murder as was the defendant in Maldonado, but was sentenced to a term of thirty years *less* than the maximum sentence for first degree murder. Moreover, defendant had only been discharged from parole for four months when this murder and aggravated battery occurred. (Supp. R. A 47) The facts of Maldonado and Nelson being distinguishable, defendant's

27

reliance is misplaced. Accordingly, this Honorable Court should find that the length of defendant's sentences not only were appropriate, but were justified.

Nevertheless, the People maintain that the matter must be remanded to the trial court for resentencing because defendant's sentences should have been consecutive rather than concurrent. After the Illinois Supreme Court held in People v. Whitney, 188 Ill. 2d 91, 100, 720 N.E.2d 225 (1999) that first degree murder was not a triggering offense under section 5-8-4 of the Unified Code of Corrections (730 ILCS 5/5-8-4), the legislature amended the statute to specifically include first degree murder as a triggering offense. See People v. Carney, 327 Ill. App. 3d 998, 1001 n.1, 765 N.E.2d 1028 (1st Dist. 2002). That amendment, which became Public Act 91-144, went into effect on January 1, 2000. Accordingly, that amended version of section 5-8-4 was in effect when defendant committed the instant first degree murder and aggravated battery on July 25, 2000. The amended statute provides in pertinent part:

> (a) When multiple sentences of imprisonment are imposed on a defendant at the same time, or when a term of imprisonment is imposed on a defendant who is already subject to sentence in this State or in another state, or for a sentence imposed by any district court of the United States, the sentences shall run concurrently or consecutively as determined by the court. When a term of imprisonment is imposed on a defendant by an Illinois circuit court and the defendant is subsequently sentenced to a term of imprisonment by another state or by a district court of the United States, the Illinois circuit court which imposed the sentence may order that the Illinois sentence be made concurrent with the sentence imposed by the other state or district court of the United States. The defendant must apply to the circuit court within 30 days after the defendant's sentence imposed by the other state or district of the United States is finalized. The court shall not impose consecutive sentences for offenses which were committed as part of a single course of conduct during which there was no substantial change in the nature of the criminal objective, unless:
>
>     (i)    one of the offenses for which defendant was convicted was first degree murder or a Class X or Class 1 felony and the defendant inflicted severe bodily injury, or
>
>     (ii)    the defendant was convicted of a violation of Section 12-13, 12-14, or 12-14.1 of the Criminal Code of 1961, or

(iii)   the defendant was convicted of armed violence based upon the predicate offense of solicitation of murder, solicitation of murder for hire, heinous battery, aggravated battery of a senior citizen, criminal sexual assault, a violation of subsection (g) of Section 5 of the Cannabis Control Act, cannabis trafficking, a violation of subsection (a) of Section 401 of the Illinois Controlled Substances Act, controlled substance trafficking involving a Class X felony amount of controlled substance under Section 401 of the Illinois Controlled Substances Act, calculated criminal drug conspiracy, or streetgang criminal drug conspiracy,

in which event the court shall enter sentences to run consecutively. Sentences shall run concurrently unless otherwise specified by the court.

(b) The court shall not impose a consecutive sentence except as provided for in subsection (a) unless, having regard to the nature and circumstances of the offense and the history and character of the defendant, it is of the opinion that such a term is required to protect the public from further criminal conduct by the defendant, the basis for which the court shall set forth in the record; except that no such finding or opinion is required when multiple sentences of imprisonment are imposed on a defendant for offenses that were not committed as part of a single course of conduct during which there was no substantial change in the nature of the criminal objective, and <u>one of the offenses for which the defendant was convicted was first degree murder</u> or a Class X or Class 1 felony and the defendant inflicted severe bodily injury, or when the defendant was convicted of a violation of Section 12-13, 12-14, or 12-14.1 of the Criminal Code of 1961, or where the defendant was convicted of armed violence based upon the predicate offense of solicitation of murder, solicitation of murder for hire, heinous battery, aggravated battery of a senior citizen, criminal sexual assault, a violation of subsection (g) of Section 5 of the Cannabis Control Act, cannabis trafficking, a violation of subsection (a) of Section 401 of the Illinois Controlled Substances Act, controlled substance trafficking involving a Class X felony amount of controlled substance under Section 401 of the Illinois Controlled Substances Act, calculated criminal drug conspiracy, or streetgang criminal drug conspiracy, in which event the Court shall enter sentences to run consecutively. 730 ILCS 5/5-8-4 (West 2000) (emphasis added).

Thus, it is clear that whenever a defendant commits multiple offenses after January 1, 2000 (regardless of whether or not it is a part of a single course of conduct during which there is no substantial change in the nature of the criminal objective), and where one of the offenses was first degree murder consecutive sentences must be imposed. 730 ILCS 5/5-8-4(a). If these conditions are

met, the trial court has <u>no</u> discretion in the type of sentence to impose; consecutive sentences are required. Failure to do so renders the trial court's sentencing order void. <u>People v. Arna</u>, 168 Ill. 2d 107, 113, 658 N.E.2d 445 (1995). The <u>Arna</u> court further stated:

> Because the order imposing concurrent terms was void, the appellate court had the authority to correct it at any time, and the actions of the appellate court were not barred by our rules of which limit the State's right to appeal and which prohibit the appellate court from increasing a defendant's sentence on review. <u>Id</u>. at 113 (citations omitted).

See also <u>City of Chicago v. Roman</u>, 184 Ill. 2d 504, 509-10, 705 N.E.2d 81 (1998) (holding that the prosecution may appeal when the trial court fails to impose a legislatively-mandated sentence).

In the instant case, the record is clear that defendant committed the offenses of first degree murder and aggravated battery as part of a single course of conduct during which there was no substantial change in the nature of his criminal objective.[1] Therefore, it is clear that defendant's conviction for first degree murder is a "triggering offense," the sentence for which must be served prior to the sentence for aggravated battery, a non-triggering offense. See <u>People v. Curry</u>, 178 Ill. 2d 509, 539, 687 N.E.2d 877 (1997) (holding that under section 5-8-4(a), the sentences for triggering offenses must "be served prior to, and independent of, any sentences imposed for nontriggering offenses"). Finally, because the failure to impose mandatory consecutive sentences renders a trial court's sentencing order void, the restriction contained in 730 ILCS 5/5-5-4 that a sentence cannot be increased upon resentencing does not apply. See <u>People v. Garcia</u>, 179 Ill. 2d 55, 74-75, 688 N.E.2d 57 (1997).

---

[1] Of course, even if it was not a single course of conduct, consecutive sentences would still be mandated. 730 ILCS 5/5-8-4(b). See <u>People v. Harris</u>, 203 Ill. 2d 111, 116, 784 N.E.2d 792 (2003) ("It is not necessary that we determine whether or not the trial court made a finding with respect to course of conduct or whether that finding was appropriate. Consecutive sentencing is mandatory in this case under section 5-8-4 of the Code whether the actions arose from separate courses of conduct or a single course of conduct.").

In sum, in light of the serious nature of these offenses, the trial court's sentences imposed in this case not only were reasonable, but were justified by the law and the evidence. Thus, the trial court did not abuse its discretion in sentencing defendant to terms of thirty and five years' imprisonment. Nevertheless, the People maintain that the matter must be remanded to the trial court for resentencing because defendant's sentences should have been consecutive rather than concurrent.

31

**III.**

## THE SENTENCING ORDER CORRECTLY REFLECTS THAT DEFENDANT'S TWO MURDER CONVICTIONS WERE MERGED INTO ONE MURDER CONVICTION.

The People maintain that the sentencing order is proper and need not be amended. Defendant correctly notes, "Where but one person has been murdered, there can be but one conviction of murder." People v. Kuntu, 196 Ill. 2d 105, 130, 752 N.E.2d 380 (2001); People v. Lego, 116 Ill. 2d 323, 344, 507 N.E.2d 800 (1987). In this case, at sentencing, the trial court stated that defendant's two murder convictions were merged into one murder conviction. (Supp. R. A 62) The sentencing order clearly reflects this. Specifically, the sentencing order states, "It is further ordered that count one merged into count two." (CL C 91) Consequently, the People submit that this issue is meritless, and the sentencing order properly reflects defendant's convictions.

32

## CONCLUSION

The People of the State of Illinois respectfully request that this Honorable Court affirm defendant's conviction for first degree murder and aggravated battery and remand for resentencing to make the sentences consecutive rather than concurrent.

Pursuant to <u>People v. Nicholls</u>, 71 Ill. 2d 166, 374 N.E.2d 194 (1978) and relevant statutory provisions 725 ILCS 5/110-7(h)(2002); 725 ILCS 130/13 (1992); 55 ILCS 5/4-2002.1 (2002), the People of the State of Illinois respectfully request that this Court grant the People costs and incorporate as part of its judgment and mandate a fee of $100.00 for defending this appeal.  In addition, pursuant to <u>People v. Agnew</u>, 105 Ill. 2d 275, 473 N.E.2d 1319 (1985) and 55 ILCS 5/4-2002.1 (2002), the People respectfully request that this Court also grant the People an additional fee of $50.00 in the event oral argument is held in this case.

Respectfully Submitted,

RICHARD A. DEVINE,
State's Attorney,
County of Cook,
Room 309 - Richard J. Daley Center,
Chicago, Illinois 60602

<u>Attorney for Plaintiff-Appellee</u>

RENEE GOLDFARB,
WILLIAM L. TOFFENETTI,
RICHARD SCHROEDER,
Assistant State's Attorneys,
    Of Counsel.

33