**File Date:** ___Apr 18, 2008___

**Case No:** ___08 cv 0918___

**ATTACHMENT #** _____

**EXHIBIT** ___D - K___

**TAB (DESCRIPTION)** _____

No. 1-03-0688

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the Circuit Court |
| | ) | of Cook County, Illinois. |
| Plaintiff-Appellee, | ) | |
| | ) | |
| -vs- | ) | No. 00 CR 20175. |
| | ) | |
| MONTEZ BAKER, | ) | Honorable |
| | ) | Evelyn B. Clay, |
| Defendant-Appellant. | ) | Judge Presiding. |

---

**REPLY BRIEF AND ARGUMENT FOR DEFENDANT-APPELLANT**

MICHAEL J. PELLETIER
Deputy Defender

DEBORAH ISRAEL
Assistant Appellate Defender
Office of the State Appellate Defender
203 North LaSalle Street - 24th Floor
Chicago, Illinois 60601
(312) 814-5472

COUNSEL FOR DEFENDANT-APPELLANT

EXHIBIT D

**REPLY BRIEF AND ARGUMENT FOR DEFENDANT-APPELLANT**

**I.**   **Montez Baker's conviction for first degree murder should be reduced to second degree murder because the evidence established that at the time of the killing Baker acted under a sudden and intense passion resulting from serious provocation of mutual combat.**

As an initial matter, it should be noted that although the State frames the first part of its argument so that it appears that Montez Baker contends that his first degree murder conviction should be reversed outright based on insufficient evidence, his position is that his conviction should be reduced to second degree murder because he was acting under a sudden and intense passion resulting from the serious provocation of mutual combat. (State's br. 13-15) As a point of clarification, Baker does not present this argument in the alternative, as the State conveys in its brief. (State's br. 15)

In response to Baker's position, the State first argues that there was a sufficient cooling off period between the first altercation that occurred at Baker's mother's house and the second altercation that resulted in Darryl Landry's death. (State's br. 17) Although the first altercation shows that Baker and Landry had a very contentious relationship, Baker does not claim that it provoked him to stab Landry. Baker was provoked by Landry when Landry punched him in the face and physically fought with him as they were engaged in mutual combat. Mutual combat is a fight or struggle that both parties enter willingly or in which two persons, upon a sudden quarrel and in hot blood, mutually fight upon equal terms and death results. *People v. Austin*, 133 Ill. 2d 118, 549 N.E.2d 331 (1989). Baker and Landry engaged in mutual combat when they

-1-

encountered each other at Baker's sister's apartment, just an hour or so after their first argument. (I Sup. R. 125-26)  When Baker saw Landry in the apartment, he kicked Landry's feet and told him to leave. (I Sup. R. 126)  Landry got up and started to argue with Baker. (I Sup. R. 126)  When Baker went to the kitchen, Landry also went to the kitchen. (I Sup. R. 126)  Baker picked up a knife and waved it at Landry and told him to get out. (I Sup. R. 126)  At that point, Landry punched Baker in the face with his fist, and the physical fight began. (I Sup. R. 80-81, 83, 126-27)  As this evidence shows, Landry was a willing participant in the fight.  He was not dragged into the conflict by Baker; on the contrary, he decided to follow Baker into the kitchen and then punched Baker in the face.  Baker and Landry therefore engaged in mutual combat.

The evidence showing mutual combat also contradicts the State's claim that Baker is foreclosed from a second degree murder conviction because he was the initial aggressor.  (State's br. 18-19)  In *People v. Robinson,* 189 Ill. 2d 323, 350, 545 N.E.2d 268 (1989), the Supreme Court explained that a jury may find that the defendant committed voluntary manslaughter (now codified as second degree murder) when there is evidence that mutual combat occurred immediately preceding or during the infliction of death, even if the defendant was the aggressor at the outset.  The key concept that mutual combat encompasses is that defendant's intent arose during or out of the heat of the altercation.  *Id.  See also People v. Leonard*, 83 Ill. 2d 411, 421, 415 N.E.2d 358 (1980).

As explained above, although Baker kicked at Landry's feet and told him to leave when he first arrived at the apartment, Landry willingly followed Baker into the kitchen and punched him in the face.  Landry not only instigated the physical fight by punching Baker, but he aggressively participated in the fight.  According to the State's own witnesses, Landry forcefully

-2-

fought with Baker and was stabbed during the heat of the altercation. Timothy Harper testified

that Landry was on top of Baker's back while Baker was on the floor on "all fours." (I Sup. R.

50) Landry held Baker, who was on his hands and knees, around the neck. (I Sup. R. 62)

Harper also saw another knife on the couch. (I Sup. R. 53, 54) Kelly Sandifer saw Landry punch

Baker in the face with his fist before they started tussling. (I Sup. R. 80-81) During the fight,

Landry was on top of Baker holding him down with Baker's stomach on the floor when Baker

stabbed him. (I Sup. R. 81-82) In addition, Kip Bell testified that Landry was holding Baker

against the wall when Baker stabbed him once. (I Sup. R. 90, 95-96) As Bell and Harper tried to

break up the fight, Landry grabbed Baker and put him in a headlock.[1] (I Sup. R. 92, 97-98) Even

after Landry was stabbed, he continued to fight and held Baker in a headlock until he fell down.

(I Sup. R. 62, 92, 98-99) The evidence shows that Landry not only instigated the fight, but

willingly and vigorously participated in it and was stabbed during the heat of the struggle.

The State relies on *People v. Delgado*, 282 Ill. App. 3d 851, 668 N.E.2d 173 (1st Dist.

1996), but that case actually supports Baker's argument. (State's br. 21) In *Delgado*, the

defendant argued that a second degree murder instruction based on provocation was warranted at

his trial because he testified that he stabbed one victim after the victim picked up a knife and

threatened to kill him and he stabbed the second victim when he thought he saw her reach for the

knife rack. *Id.* at 857. The defendant, who had been using cocaine with the victims before the

---

[1] Although Baker's aggravated battery conviction is not in dispute, the record does not
support the State's assertions that Baker "slashed" Bell across his wrist with the knife when Bell
intervened in the fight, much less that he purposefully injured Bell. (State's br. 8, 14, 15, 18)
The only evidence regarding Bell's injury was Bell's testimony, in which he stated, "I got cut on
my wrist" as he grabbed Baker's hand holding the knife, and Sandifer's testimony that she saw
Bell's arm bleeding. (I Sup. R. 75, 90) Nor was there any evidence that Landry's blood "poured
onto the apartment floor," as the State reports in its Statement of Facts. (State's br. 9)

stabbings, argued that he engaged in mutual combat with the victims when he attempted to defend himself from them. *Id.* This Court rejected the defendant's argument and explained that the term "mutual combat" implies a common intent to fight, and should not be confused with fighting to repel an unprovoked attack, which is self-defense. *Id.* at 858. Thus, mutual combat reduces murder to second degree murder when there is "'a readiness and intention on the part of both parties to engage in immediate conflict with each other.'" *Id.* at 858, *quoting Colvin v. State*, 155 Ga. App. 736, 738, 272 S.E.2d 516 (1980).

The concept of mutual combat that was missing in *Delgado*, *i.e.*, "a willingness by both parties to engage in a fight," is not lacking from Baker's case. *Id.* at 859. As the evidence shows, Baker did not drag Landry into a fight nor did he attack him by surprise. Instead, Landry willingly followed Baker into the kitchen and punched him in the face. Furthermore, unlike the defendant in *Delgado*, who admitted that he brought a knife to the apartment and, once inside the apartment, stabbed one victim in the back and the other as he came out of the kitchen, Baker was not the initial aggressor. *Id.* at 859. In this case, Landry instigated the physical fight by punching Baker in the face, and the stabbings occurred during the heat of the physical fight that Landry willingly and vigorously participated in.

The State also relies on *People v. Pugh*, 187 Ill. App. 3d 860, 543 N.E.2d 875 (1st Dist. 1989), to support its position that Baker's actions were not proportionate to the provocation, but that case is factually distinguishable. (State's br. 21-22) In *Pugh*, the defendant, the victim, and a person named Hunter were in a car together. *Id.* at 864. The defendant got out of the car, opened the victim's door, and demanded his money. *Id.* The victim responded by asking, "What?" and got out of the car, and the two began tussling. *Id.* After a few minutes, Hunter got

-4-

out of car to break up the fight and successfully held back the victim. *Id.* As Hunter was holding

the victim, the defendant got a gun out of the car and began firing the gun at the victim. *Id.*

Hunter dove away and the victim tried to run but fell to the ground after a few feet. *Id.* As the

victim lied on the ground, he told the defendant that he would give him his money and pleaded

for his life. *Id.* at 865. The defendant shot him again and took his money. *Id.*

On review, this Court found that the evidence of mutual combat was "doubtful." *Id.* at

868-69. As this Court observed, the defendant and the victim exchanged blows for a few

minutes but by all accounts the fighting had stopped when Hunter intervened and separated them.

*Id.* at 868. In addition, the defendant returned to the car to get the gun as Hunter was holding the

victim. *Id.* The defendant admitted that the victim hit him only three times, and he was not

struck to the ground or seriously injured. *Id.* This Court also found it significant that the victim

was wounded twice in the back and the defendant admitted that he was no longer afraid of the

victim by the time he fired the third shot. *Id.* Finally, the victim was shot as he was trying to

flee, which negates any inference of mutual combat, and the defendant fired the final lethal shot

when the victim was on the ground, pleading for his life. *Id.*

Unlike the situation in *Pugh*, the evidence of mutual combat in this case is anything but

doubtful. In *Pugh*, the victim was shot at as he was being restrained by a third party and again as

he lied on the ground pleading for his life. *Id.* In this case, Baker and Landry were in the midst

of a intense physical fight that two people were unable to break up. (I Sup. R. 92, 97-98) In

*Pugh*, the defendant admitted that he was no longer afraid of the victim when he shot at him. *Id.*

In this case, by all accounts Landry had the upper hand in the fight when the stabbings were

inflicted as he held Baker against the wall, was on top of Baker on the floor, and held Baker

-5-

around the neck in a headlock. (I Sup. R. 50, 53, 54, 81-81, 90, 92, 95-96, 98) Finally, in *Pugh*, the victim was retreating and pleading for his life when he was shot, thereby negating any inference of mutual combat. *Id*. Here, Landry showed no signs of relenting, as he continued to fight with Baker and held him in a headlock even after he was stabbed. (I Sup. R. 62, 92, 98-99)

As our Supreme Court recognized, second degree murder based on provocation "is an acknowledgment by the law of the mitigating effect of human weakness and intense passion in an otherwise unjustified homicide." *Leonard*, 83 Ill. 2d at 420. In this case, human weakness and intense passion combined and unfortunately resulted in Landry's death. Nevertheless, Landry, who had a history of physical confrontations with Baker, willingly took part in the intense physical fight that started after he punched Baker in the face. (I Sup. R. 80-81, 83, 126-27; II Sup. R. 61) As the State's own witnesses testified, the stabbings were inflicted during the heat of the fight when Landry held Baker against the wall and was on top of Baker on the floor. (I Sup. R. 81-82, 90) Furthermore, Landry's tenacity was demonstrated by the fact that he continued to fight and hold Baker around his throat in a headlock until Landry passed out. (I Sup. R. 62, 92, 98-99) The evidence in this case therefore establishes that at the time of the killing, Baker was acting under a sudden and intense passion resulting from the serious provocation of mutual combat. Montez Baker therefore maintains that his first degree murder conviction should be reduced to second degree murder and the case remanded for resentencing.

**II.    The sentences imposed by the trial court for first degree murder and aggravated**

**battery are excessive and should be reduced in light of the nature of the offenses and**

**the mitigating evidence.**

The State argues that Montez Baker's excessive sentence claim should not be considered

because the trial court already considered the mitigating evidence and argument when it imposed

sentence. (State's br. 24-26) Baker recognizes that a trial court's sentencing determination is

entitled to great deference, but the sentence must be proportionate to the offense and serve the

objective of restoring the offender to useful citizenship. Ill. Const., Art. I, sec. 11 (1970); *People

v. Nelson*, 106 Ill. App. 3d 838, 846, 436 N.E.2d 655 (1st Dist. 1982). Baker maintains that his

thirty-year sentence for first degree murder and his five-year sentence for aggravated battery do

not serve the objective of rehabilitation and should be reduced given the circumstances of the

offense along with his family ties and support and minimal criminal history. (Def. br. 17-19)

The State also argues that the cases discussed in Baker's opening brief should not be

considered because the Supreme Court rejected comparative sentencing in *People v. Fern*, 189

Ill. 2d 48, 723 N.E.2d 207 (1999). (State's br. 26) The State, however, mischaracterizes Baker's

use of *People v. Maldonado*, 240 Ill. App. 3d 470, 608 N.E.2d 499 (1st Dist. 1992), and *People

v. Nelson*, 106 Ill. App. 3d 838, 436 N.E.2d 655 (1st Dist. 1982). Baker does not ask this Court

to reduce his sentence because it is excessive when compared to those defendants' sentences.

Rather, Baker relies on *Maldonado* and *Nelson* as supporting authority for the proposition that a

trial court must consider evidence of a defendant's family ties and support and minimal criminal

background when imposing a sentence. (Def. br. 19) *See* 134 Ill. 2d R. 341(e)(7) (requiring

citation to authorities to support the appellant's argument). The *Fern* decision specifically does

-7-

not prohibit a reviewing court from using other decisions as legal precedent in deciding excessive

sentence claims. *Fern*, 189 Ill. 2d at 62. As the *Fern* Court recognized, "A court considering

whether a sentence imposed was excessive may find it useful to look at the reasoning employed

by another court in rejecting, or accepting, an excessiveness claim." *Id*. *Maldonado* and *Nelson*

support Baker's position that his family support and minimal criminal background are factors

that require a sentence reduction, and his reliance on those cases is proper.

The State argues that resentencing is nevertheless appropriate in this case because

Blanks's sentences should be consecutive rather than concurrent under 730 ILCS 5/5-8-4 (2000).

(State's br. 28)  Should this Court determine that consecutive sentences are mandatory under

section 5-8-4, Blanks agrees that the case should be remanded for resentencing so the trial court

will have the opportunity to consider the impact consecutive sentences will have on its ruling.

In conclusion, the thirty-year sentence for first degree murder and five-year sentence for

aggravated battery are excessive and should be reduced to terms that reflect the circumstances of

the offense, Baker's family ties and support, his minimal criminal history, and his rehabilitative

potential.  Montez Baker therefore respectfully requests that this Court reduce his sentences to

the minimum terms of twenty years for murder and two years for aggravated battery.

**III.**     **The sentencing order should be amended to reflect a conviction on only one count of**
**first degree murder, rather than two, because there was only a single offense of first**
**degree murder in this case.**

As the State points out in its brief, the sentencing order does in fact indicate that the two
counts of murder merged into one conviction for first degree murder.  (State's br. 32) (C. 91)
Appellate counsel for Montez Baker originally misread the sentencing order and agrees with the
State that it correctly reflects Baker's convictions.  (C. 91)  Baker therefore concedes that the
sentencing order correctly reflects his convictions, and respectfully requests to withdraw this
issue from this Court's consideration.

## CONCLUSION

For the foregoing reasons, Montez Baker, Defendant-Appellant, respectfully requests that this Court reduce his first degree murder conviction to second degree murder and remand the cause for resentencing or reduce his sentence.

Respectfully submitted,


MICHAEL J. PELLETIER
Deputy Defender

DEBORAH ISRAEL
Assistant Appellate Defender
Office of the State Appellate Defender
203 North LaSalle Street - 24th Floor
Chicago, Illinois 60601
(312) 814-5472

COUNSEL FOR DEFENDANT-APPELLANT

No. _____

IN THE

SUPREME COURT OF ILLINOIS

SPRINGFIELD, ILLINOIS

| | |
|---|---|
| PEOPLE OF THE STATE OF ILLINOIS, ]<br>           ]<br>     Plaintiff-Appellee, ]<br>           ]<br>           ]<br>    -vs-         ]<br>           ]<br>           ]<br>           ]<br>   Defendant-Appellant, ] | Appeal from the Illinois<br>Appellate Court First District<br>There on Appeal from the Circuit<br>Court of Cook County, Illinois<br><br>Case No. 2000 CR 20175<br>Appellate No. 1-03-0688<br><br>Honorable Evelyn B. Clay,<br>Presiding Judge. |

PETITION FOR LEAVE TO APPEAL

MONTEZ BAKER, (Pro Se)
Register No. K70091
Menard Correctional Center
Post Office Box 711
Menard, Illinois 62259

EXHIBIT E

No. _____

IN THE
SUPREME COURT OF ILLINOIS
SPRINGFIELD, ILLINOIS

| | |
|---|---|
| PEOPLE OF THE STATE OF ILLINOIS, ] | Appeal from the Illinois |
| ] | Appellate Court First District |
| Plaintiff-Appellee, ] | There on Appeal from the Circuit |
| ] | Court of Cook County,Illinois |
| ] | |
| -vs- ] | Case No. 2000 CR 20175 |
| ] | Appellate No. 1-03-0688 |
| ] | |
| MONTEZ BAKER, ] | Honorable Evelyn B. Clay, |
| ] | Presiding Judge. |
| Defendant-Appellant, ] | |

PETITION FOR LEAVE TO APPEAL

TO THE HONORABLE JUSTICES OF THE SUPREME COURT OF THE STATE
OF ILLINOIS:
MAY IT PLEASE THE COURT:

I.

PRAYER FOR LEAVE TO APPEAL

NOW COMES, Defendant-Appellant, pro-se, respectfully petitions
this Court pursuant to Illinois Supreme Court Rules 315 and 612 (b)
for leave to appeal from the judgment of the Appellate Court of
Illinois, First Judicial District, Fourth Division, which affirmed
the defendant's first degree murder and aggravated battery convic-
tions and vacated his concurrent sentences imposed by the Circuit
Court of Cook County and remanded for resentencing for imposition
of consecutive sentences.

-2-

## II.

### PROCEEDINGS IN THE APPELLATE COURT

The Appellate Court issued its Order affirming the defendant's convictions for first degree murder and aggravated battery, and vacated his concurrent sentences imposed by the Circuit Court of Cook County for resentencing and the imposition of consecutive sentences. The Appellate Court's Order was issued on November 4, 2004. No petition for rehearing was filed. An affidavit of intent to seek leave to appeal was filed on November 15, 2004.

## III.

### REASONS FOR GRANTING REVIEW

THE APPELLATE COURT'S RULING THAT PETITIONER WAS NOT ACTING
UNDER SUDDEN AND INTENSE PASSION FROM SERIOUS PROVOCATION
IS ERRONEOUS AND AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE
WHERE THE TRIAL COURT RELIED ON TESTIMONY OF A STATE WITNESS
WHO WAS IMPEACHED WITH HER GRAND JURY TESTIMONY WHERE SHE
TESTIFIED THAT MR. LANDRY PUNCHED PETITIONER IN THE FACE
AFTER PETITIONER RETEIEVED A KNIFE FROM THE KITCHEN AND TOLD
MR. LANDRY TO LEAVE HIS SISTER'S HOUSE, AND WITNESS TESTIFIED
AT TRIAL THAT MR. LANDRY DID NOT PUNCH PETITIONER.

Among the issues presented in the case is an issue concerning whethe petitioner was acting under sudden and intense passion from serious provocation by the victim when he stabbed victim with a butcher knife after telling victim to leave his sister's home. Whene the victim ingnored petitioner's reqest to leave, petitioner went to the kitchen and retrieved a butcher knife, and the victim shadowed the petitioner as he went into the kitchen to get the knife, and then followed petitioner back into the living room were the encounter first began. Petitioner again demanded that the victim leave the home, then the victim punched petitioner in the

instead of leaving and a 'struggle' ensued, where victim was over-powering petitioner and petitioner beganto stab the victim. This is a clear example of 'sudden and intense passion from serious provocation'. Petitoner's state of mind was reasonable where the victim and petitioner engaged in a physical altercation minutes earlier at petitioner's mother's house where petitioner lived, and petitioner left to cool off, went for a walk, then went to his sister's house to avoid going back home where the first altercation took place, and where he left the victim. Upon arriving at his sister's house, the victim was sitting there in the living room. Still angry from the first fight, petitioned told the victim to leave his sister's house, and apparently the victim refused, and in fact, he shadowed the petitioner's moves, clearly provoking petitioner.

Review should be granted by this Court to examine the Appellate Court's conclusion that the petitioner did not act under 'sudden and intense passion due to serious provocation' and to modify the petitioner's conviction to second degree murder.


## IV.

### POINTS RELIED UPON FOR REVERSAL

THE APPELLATE COURT'S RULING THAT PETITIONER'S FIRST DEGREE MURDER CONVICTION SHOULD NOT BE REDUCED TO SECOND DEGREE MURDER BECAUSE THE PETITIONER WAS NOT ACTING UNDER SUDDEN AND INTENSE PASSION FROM SERIOUS PROVOCATION WAS ERRONEOUS.

V.

## STATEMENT OF FACTS

Daryl "Cesar" Landry died from stab wounds he sustained during a fight with his stepson, Montez "Skeeter" Baker, that took place on July 25, 2000, at 625 West Division in Chicago. (I Sup. R. 36, 107) Kip Bell was cut on the wrist with a knife when he tried to break up the fight between Baker and Landry. (I Sup. R. 90) The State charged Baker with two counts of murder for the death of Landry and one count of aggravated battery of Bell. (C. 13)

At Baker's bench trial, Timothy Harper and Kelly Sandifer testified that they were at Sandifer's apartment at 625 West Division, number 1401, watching soap operas on July 25, 2000. (I Sup. R. 39-41, 65-66) At 2:30 p.m., Harper's niece came over from apartment 1403. (I Sup. R. 41, 66) After the niece spoke to Harper and Sandifer, they went to apartment 1403 and saw Baker and Landry verbally arguing. (I Sup. R. 39, 43, 67-70) Harper thought the argument would stop, so he went back to Sandifer's apartment. (I Sup. R. 45) Sandifer also returned to her apartment, but went back to 1403 after Harper's niece came to her apartment a second time. (I Sup. R. 71) When Harper heard Sandifer screaming, he went to apartment 1403 and saw Baker and Landry fighting. (I Sup. R. 47) Hollis Holloway and Kip Bell were also there. (I Sup. R. 47)

According to Harper and Sandifer, Baker and Landry were wrestling and holding each other. (I Sup. R. 47-48, 60, 72) Harper saw that one of them was on a chair. (I Sup. R. 47) Baker had a butcher knife but Landry did not have anything in his hands. (I Sup. R. 48, 74) Sandifer testified that she saw Baker stab Landry in the back three times. (I Sup. R. 73) Harper and Bell tried to break them up, but they wouldn't stop fighting. (I Sup. R. 49) Harper and Bell

-5-

tried to get the knife from Baker, but he wouldn't let go. (I Sup. R. 50)  After Bell tried to get the knife, Sandifer saw that Bell's arm was bleeding. (I Sup. R. 75)

At one point, Baker was on his hands and knees and Landry was on Baker's back. (I Sup. R. 50, 61)  Landry was holding Baker around the neck. (I Sup. R. 62)  Harper tried to put his foot on the knife, which was on the floor in Baker's hand, but Baker did not let go. (I Sup. R. 50, 78)  When Baker let go of Landry, Landry was bleeding from his head and shoulder blade. (I Sup. R. 51)  Harper never saw anything in Landry's hands. (I Sup. R. 53)  He only saw Baker with a knife, but there was a knife on the couch too. (I Sup. R. 54)

Although Sandifer testified at trial that the second time she went to apartment 1403, Baker and Landry were already wrestling and she did not see any punches thrown, Sandifer changed her testimony when she was confronted with her grand jury testimony. (I Sup. R. 79-81)  Before the grand jury, Sandifer described seeing Landry hit Baker in the face with his fist before they started tussling. (I Sup. R. 79-81)  After being impeached with her grand jury testimony, Sandifer confirmed that she had seen Landry hit Baker in the face with his fist before they started fighting. (I Sup. R. 80-81, 83)  According to Sandifer, Baker had the knife when Landry hit him. (I Sup. R. 81-82, 84)  Baker stabbed Landry when Landry was on top of him. (I Sup. R. 81)  Landry was holding Baker down with Baker's stomach on the floor and was holding Baker's arm that held the knife. (I Sup. R. 81-83)

Harper and Sandifer testified that after the fight, Baker threw the knife into the incinerator in the hallway. (I Sup. R. 54-55, 77)  Ten minutes later, Harper saw Baker at the incinerator at 630 West Evergreen wearing only his boxer shorts. (I Sup. R. 56, 63)  When Harper asked Baker what he was doing, Baker responded that Landry shouldn't have taken his food and shouldn't

-6-

have accused him of stealing food and that he would "kill that bitch again." (I Sup. R. 57)

Harper knew that Baker, an alcoholic, was drunk at the time. (I Sup. R. 57-58)

Kip Bell testified that he was watching television at apartment 1403, where his girlfriend at the time, Zonya Tate, lived. (I Sup. R. 85-86) Tate is Baker's sister. (I Sup. R. 86) Landry and Holloway were also watching television with Bell in the living room. (I Sup. R. 88) Bell went to the bedroom, and while he was there he heard the sound of glass breaking in the living room. (I Sup. R. 88) Bell went back to the living room and saw Baker, Landry, and Holloway. (I Sup. R. 89) Landry was holding Baker's arm against the wall. (I Sup. R. 89) Baker had a knife in his hand. (I Sup. R. 89) Bell never saw Landry with a weapon. (I Sup. R. 90)

Bell saw Baker stab Landry once in the back. (I Sup. R. 90) Bell tried to break up Landry and Baker by grabbing their arms. (I Sup. R. 90) Bell grabbed Baker's hand holding the knife and in the process of doing so cut his wrist. (I Sup. R. 90) Bell saw that Landry was bleeding from his back. (I Sup. R. 91) When Landry and Baker fell on the couch, Bell grabbed them by their legs and pulled them to the floor. (I Sup. R. 91) When Landry and Baker were on the floor, Harper came in and tried to help Bell break them up. (I Sup. R. 91) Baker was on his back on the floor with the knife in his right hand. (I Sup. R. 91-92) Harper stepped on Baker's hand and tried to get the knife out of his hand. (I Sup. R. 91-92) Landry grabbed Baker and put him in a tight headlock but as he lost more blood, he loosened his grip. (I Sup. R. 92) Landry's eyes rolled back and he fell to the ground. (I Sup. R. 92) Baker left the apartment with the knife. (I Sup. R. 92) At trial, Bell identified People's exhibit 34 as the knife that Baker stabbed Landry with. (I Sup. R. 93)

The parties stipulated that a forensic investigator processed the scene and recovered a

-7-

thirteen inch knife from the trash compactor on the first floor of 524 West Division. (I Sup. R. 100-01) The knife was inventoried and later examined by forensic scientists at the Illinois State Police Forensic Science Center. (I Sup. R. 102) No latent fingerprint impressions were suitable for comparison, but the presence of blood was detected. (I Sup. R. 102-04) The blood was not further analyzed as there was an insufficient amount. (I Sup. R. 106) The parties also stipulated that Dr. Kalekar of the Cook County Medical Examiner's Office performed an autopsy on Landry and prepared People's exhibit 35, a post-mortem examination report. (I Sup. R. 107)

Catherine Kelly, a former assistant state's attorney, testified that she interviewed Baker at Area 3 on July 26, 2000. (I Sup. R. 111-12) After she introduced herself and advised him of his constitutional rights, Baker agreed to speak to her. (I Sup. R. 114) The first interview lasted twenty to thirty minutes. (I Sup. R. 115) ASA Kelly spoke to Baker a second time, along with Detective Sobolewski, for another half hour. (I Sup. R. 115-16) After the second conversation, Baker chose to give a handwritten statement. (I Sup. R. 117)

In the statement, Baker explained that Landry is his brother's father. (I Sup. R. 125) On the afternoon of the offense, Baker first saw Landry at his mother's house at 630 West Evergreen, apartment 1303. (I Sup. R. 125) He and Landry got into a fight over some Popeye's chicken. (I Sup. R. 125) Baker's mother told Landry to leave; Landry left. (I Sup. R. 125) She told Baker to cool down and to go for a walk. (I Sup. R. 125) Baker left his mother's house and walked around talking to himself about how mad he was about his fight with Landry. (I Sup. R. 125-26)

About an hour later, Baker went to his sister Zonya Tate's house at 624 West Division, apartment 1403. (I Sup. R. 126) When he got to Tate's apartment, Landry was sitting on the

floor in the living room watching television with Holloway. (I Sup. R. 126) Bell was in the back room. (I Sup. R. 126) Baker kicked Landry's feet and told him to get out. (I Sup. R. 126) Baker was mad that Landry was at the apartment because he was still mad about the fight. (I Sup. R. 126) Landry got up and started to argue with Baker. (I Sup. R. 126)

Baker went into the kitchen. (I Sup. R. 126) Landry also went to the kitchen. (I Sup. R. 126) Baker got a butcher knife that had a six to eight inch blade. (I Sup. R. 126) Baker and Landry went back into the living rom. (I Sup. R. 126) Baker pointed the knife at Landry, waved it at him, and told him to get out. (I Sup. R. 126) Baker and Landry were face to face. (I Sup. R. 126) Landry punched Baker once in the face. (I Sup. R. 126-27) They started wrestling and fell on the couch. (I Sup. R. 127) Baker still had the knife in his hand. (I Sup. R. 127) Baker stabbed Landry two to three times. (I Sup. R. 127) He could not remember where he stabbed Landry, but he stabbed him once in the stomach. (I Sup. R. 127)

Bell and Timmy tried to get the knife away from Baker. (I Sup. R. 127) Baker got scared and dropped the knife down the incinerator then ran to his mother's house and put his clothes down the incinerator at 630 West Evergreen. (I Sup. R. 127) He walked around until detectives picked him up. (I Sup. R. 127) At the conclusion of his statement, Baker stated that he was giving the statement voluntarily, he had been treated well by the police and ASA Kelly, and he was not under the influence of drugs or alcohol. (I Sup. R. 127) After Baker reviewed the statement, he added that Landry put him in a choke-hold after Baker stabbed him. (I Sup. R. 128)

After the statement was published, the State rested. (I Sup. R. 131) The defense moved for a directed finding, which was denied. (I Sup. R. 132) The defense rested. (I Sup. R. 133)

-9-

After closing arguments, the court found Baker guilty of two counts of first degree murder and one count of aggravated battery of Kip Bell. (I Sup. R. 155)

Baker's motion for a new trial was denied. (II Sup. R. 4) At the sentencing hearing, the State presented evidence in aggravation concerning a charge of attempt robbery, to which Baker pleaded guilty in 1997. (II Sup. R. 11-25) The State also presented the testimony and victim impact statements of Landry's sister, Dawn Jones, and his mother, Velma Lois Landry. (II Sup. R. 26, 30) For the defense, Baker's mother and Landry's ex-wife, Linda Tate, and Baker's sister, Zonya Tate, testified in mitigation that Baker was helpful around the house and good with children. (II Sup. R. 36-41) The mother of Baker's two children, Ursula Johnson, testified that Baker took care of his children. (II Sup. R. 41-42) Baker's aunt, Louella Ellison, testified that Baker was kind and respectful. (II Sup. R. 43-45)

After the State and defense presented arguments, Baker addressed the court and apologized. (II Sup. R. 60) Baker said that he wished it hadn't happened, but he was tired of Landry beating on him and he was just defending himself. (II Sup. R. 60-61) Baker wished it hadn't happened, because he loved Landry like a father. (II Sup. R. 60-61) Baker also apologized to the Landry family. (II Sup. R. 61) The court sentenced Baker to thirty years in prison on the two counts of first degree murder, which the court merged for sentencing. (II Sup. R. 62-63) (C. 91) The court also sentenced Baker to a term of five years for aggravated battery. (II Sup. R. 63) (C. 91) Baker's motion to reconsider sentence was denied. (R. 4)

VI..

### ARGUMENT

**MONTEZ BAKER'S FIRST DEGREE MURDER CONVICTION SHOULD BE
REDUCED TO SECOND DEGREE MURDER WHERE THE EVIDENCE AT
TRIAL PROVED BY A PREPONDERANCE OF THE EVIDENCE THAT HE
ACTED UNDER SUDDEN AND INTENSE PASSION RESULTING FROM
SERIOUS PROVOCATION OF MUTUAL COMBAT.**

Here, petitioner Montez Baker, pro-se, presents this Honorable
Court with the question whether his first degree murder conviction
should be reduced to second degree murder where the evidence and the
facts of this case proves that Mr. Baker met his burden of proving
by a preponderance of the evidence that he acted under sudden and
intense passion resulting from serious provocation when he stabbed
Daryl "Cesar" Landry during mutual combat.

In order to warrant the mitigation of a first degree murder
charge to second degree murder, the defendant must prove the provo-
cation by a preponderance of the evidence. 720 ILCS 5/9-2(c)(West 2002).

In the instant case, Montez Baker, who lived with his mother
at 630 West Evergreen apt #1303, had gotten into an argument with his
brother's father Daryl "Cesar" Landry over some Popeyes chicken. The
relationship between Landry and Baker had always been strained due
to the fact that Montez Baker was not his biological son. Landry
accussed Baker of stealing some of the chicken, a heated alterction
ensued between the two. Montez's mother told Landry to leave her
home (Landry did not live in the home), Landry left. Baker's mother
told him to go for a walk and to cool off. Baker went for a walk,
after about an hour, and after he had cooled off Baker went to his
sister Zonya Tate's house to visit her. Zonya lived at 624 W. Division

-11-

Street, apt# 1403. Upon Baker's arrival     . he entered and was shocked to see Landry sitting on the floor in the living room watching television. Baker kicked Landry's foot to get his attention, then told him to leave. Landry then got up off the floor and began arguing with Baker, obviously refusing to leave Baker's sister's house. Baker then went into the kitchen with Landry shadowing his every move as the two continued to argue. Baker grabbed a knife and began waving it telling Landry to leave. Baker went into the living room and Landry continued to shadow him and argue, refusing to leave as Baker continued to demand that he leave. Landry then punched Baker in the face and a struggle ensued where Landry, who was much larger and stronger than Baker, wrestled Baker down on the couch and, then on to the floor where Landry was on top of Baker chocking Baker by having Baker in a choke-hold, Baker started stabbing Landry in the back with the knife while Landry was on top of Baker and Baker was underneath Landry face down and in a choke-hold, Baker stabbed Landry while in this position, and was doing so, trying to make Landry stop chocking him because he was unable to breathe. Landry would not let go, but continued to holding Baker in this position until his (Landry) eyes rolled back in his head and he colapsed. Baker ran from the apt to his mother's building, where being affraid and in schock, threw the knife and his clothes in the incinerator of the building. Landry died at Baker's sister's house before medical personnel arrived.

Thus two things are clear from the facts of this case, which the testimony of the occurrence witnesses is consistent with, that (1) Landry was the aggressor by punching Baker in the face, and (2) that Baker stabbed Landry out of desperation where this larger and stronger man cut his breathing off by putting Baker in a choke-hold

and would not let go. Here, Landry escalated the altercation which was only verbal initially. Landry could have left the apartment and this situation would not have gone any further, it would have been over, but Landry refused to leave, and compounded that with physically attacking Baker and putting him in a choke-hold before he was stabbed.

Under this senario, Baker was acting under sudden and intense passion from Landry's serious provocation, and but for Landry's actions this incident would not have happened.

This Court held in **People v. Bartley**, 263 Ill. 69 @ page 75, 104 N.E. 1057, @ page 1059, the Supreme Court said:

> '***Beside, the law makes a distinction and allowance between what a reasonable person would do in the heat of passion or under great provocation and what the same person would do in cooler moments, and it is just this distinction that makes a homicide in one case murder and in another manslaughter(2nd degree murder). It is true that the jury, from the evidence, have the right to say which crime has been committed, but when the evidence utterly fails to establish the crime of murder as charged and shows only manslaughter at most, then the verdict should be set aside.'

Under Illinois law, provocation that may constitute second degree murder includes substantial physical injury or physical assault, mutual quarrel or combat, illegal arrest, and adultery with the offender's spouse. (720 ILCS 5/9-2).

In the case sub judice, the evidence showed that the decedent (1) after being kicked on the foot and told to leave defendant's sister's apartment, got up off of the floor where he was sitting watching television when the defendant arrived at his sister's apartment, and began arguing with the defendant, defendant then went to the kitchen and the decedent shadowed him while continuing to argue with defendant, (2) after defendant retrieved a knife while in the kitchen and again telling decedent to leave, defendant walked back into the liv-

-13-

ing room simultaneously demanding that decedent leave. Decedent again
shadowed defendant and continued in his refusal to leave, (3) while
the defendant, while waving the knife at the decedent, defendant was
telling decedent to leave and the decedent punched the defendant in
the face and the struggle ensued, both men falling to the couch and
then to the floor where the decedent had the defendant in a choke-
hold while on top of defendant's back. Defendant's air supply was
cut off by the hold that the decedent was applying on the defendant,
and as a last resort defendant began stabbing the decedent by raising
his arm and hand holding the knife and began striking the decedent
while defendant was faced towards the floor and lying on his stomach
with the decedent on top of him continuing to squeeze tighter with
the choke-hold around defendant's neck. Here, the defendant belived
that the decedent was going to strangle him to death and out of pure
desperation began striking backwards behind his head consequently
stabbing the decedent several times resulting in his death.

The trial Court found Mr. Baker guilty of 1st degree murder,
which is inconsistent with the facts of this case. The Appellate Court
affirmed the trial Court judgment. The State argues that Mr. Baker
was the initial aggressor because he kicked Landry on the foot when
he first told Landry to leave. However, this 'kick' was not a kick
that can be considered as an act of aggression where Mr. Baker only
touched Landry's foot to get his attention while telling him to leave.
This touch that Mr. Baker made with his foot on Landry's foot was
a slight touch to get Landry's attention while conveying to Landry
that he wanted him to leave. Once Mr. Baker kicked Landry and told
him to leave Landry jumped to his feet and began to argue. The argu-
ment wasn't about being touched on the foot, but about not leaving.

-14-

The State also argue that Mr. Baker had time to cool off, however, this argument can not stand because, after having a heated argument with Landry about an hour earlier at Baker's mother's house, and Baker's mother telling Landry to leave her house Mr. Baker went for a walk and cooled off, which he was told to do by his mother. Mr. Baker decided to walk to his sister's apartment to visit her. When he arrived at his sister's apartment, who does he see? Landry sitting on the floor watching television. Mr. Baker did not expect to see Landry at his sister's house, and it was reasonable for Mr. Baker to want Landry to leave once he saw Landry there. Landry was not going to leave, that is why he shadowed Mr. Baker everywhere Baker went arguing at him, thus escalating the the quarrel, then continued to do so after Mr. Baker got the knife while they were in the kitchen. Baker made no attempts to stab Landry once he got the knife, Baker walked back into the living room  still being shadowed by Landry. Once in the living room Baker again told Landry to leave as Baker was waving the knife. Landry then attacked Baker and the altercation continued without any breaks, thus, the State's argument that Mr. Baker had time to cool off therefore he was not acting from serious provocation, here, the State's argument fails.

Under the murder statue in Illinois, a person commits second degree murder when he commits first degree murder and at the time of the killing he is acting under a sudden and intense passion resulting from serious provocation by the individual killed. 720 ILCS 5/9-2(a)(1) (West 2004). Mutual combat has been defined as a fight or a struggle that both parties enter willingly or where two person, upon sudden quarrel and in hot blood, mutually fight upon equal terms and where death results from the combat. See **People v. Williams**, 315 Ill. App.

-15-

3d 22, 35, 732 N.E.2d 767 (1st Dist. 2000). Mutual combat is one of
the recognized forms of serious provocation sufficient to reduce
first degree murder to second degree murder. See: **People v. Garcia**,
165 Ill. 2d 409, 429, 651 N.E.2d 100 (1995). The burden of proof is on
the defendant to prove the mitigating factor by a preponderance of
the evidence before the defendant can be found guilty of second degree
murder. 720 ILCS 5/9-2(c)(West 2004).

## CONCLUSION

WHEREFORE, Petitioner Montez Baker, pro-se, for the reasons
stated above  epectfully prays this Honorable Court grants leave to
appeal and reverse the judgment of the Appellate Court's ruling
affirming the Circuit Court's conviction and sentence, and remand
for his first degree murder conviction be reduced to second degree
murder and imposition of sentence within that range, or whatever
this Court deems to be eqitable.

Montez Baker, Petitioner-Defendant
Register Number K70091
Menard Correctional Center
Post Office Box 711
Menard, Illinois 62259-0711

*Montez Baker*

-16-

**SUPREME COURT OF ILLINOIS**
**CLERK OF THE COURT**
SUPREME COURT BUILDING
SPRINGFIELD, ILLINOIS 62701
(217) 782-2035

99787

March 30, 2005

Hon. Lisa Madigan
Attorney General, Criminal Appeals Div.
100 West Randolph St., 12th Floor
Chicago, IL 60601

No.  99787 - People State of Illinois, respondent, v. Montez
             Baker, petitioner.  Leave to appeal, Appellate
             Court, First District.


    The Supreme Court today DENIED the petition for leave to

appeal in the above entitled cause.


    The mandate of this Court will issue to the Appellate Court

on April 21, 2005.

EXHIBIT F

STATE OF ILLINOIS

IN THE CIRCUIT COURT OF COOK COUNTY-CRIMINAL DIVISION

CHICAGO,ILLINOIS

---

| | | |
|---|---|---|
| PEOPLE OF THE STATE OF ILLINOIS | ] | POST CONVICTION PETITION |
| PLAINTIFFS, | ] | DOCKET NUMBER: _____ |
| | ] | |
| -VS- | ] | CASE NUMBER: 00-CR-20175 |
| | ] | |
| MONTEZ BAKER , | ] | HONORABLE **EVELYN B. CLAY** |
| DEFENDANT-PETITIONER. | ] | JUDGE PRESIDING. |

---

## VERIFIED PETITION

## FOR

## POST CONVICTION RELIEF

---

**MONTEZ BAKER**
REGISTER NUMBER: K-70097
POST OFFICE BOX 711
MENARD CORRECTIONAL CENTER
MENARD, ILLINOIS 62259

EVIDENTIARY HEARING REQUESTED

EXHIBIT G

STATE OF ILLINOIS
IN THE CIRCUIT COURT OF COOK COUNTY-CRIMINAL DIVISION
CHICAGO, ILLINOIS

---

VERIFIED PETITION

FOR

POST CONVICTION RELIEF

---

NOW COMES, MONTEZ BAKER     , PETITIONER, PRO SE, and respectfully moves this Honorable Court for Post Conviction Relief pursuant to and in compliance with 725 ILCS 5/122-1 et seq., Illinois Post Conviction Hearing Act (2005)....

PETITIONER ACCORDINGLY SEEKS THE FOLLOWING RELIEF:

1. APPOINTMENT OF COUNSEL

2. A HEARING ON THIS PETITION

3. AN EVIDENTIARY HEARING

4. THE VACATION OF HIS CONVICTION AND SENTENCE

5. A NEW TRIAL AND SENTENCING HEARING

IN SUPPORT THEREOF, PETITIONER STATES AS FOLLOWS:


1. Name of Petitioner: MONTEZ BAKER

2. Place of Confinement: MENARD CORRECTIONAL CENTER

3. Prison Register Number: K-70097

4. Date of Arrest: JULY 25th, 2000

5. Date and Location of Offense:   July 25, 2000, @ 2:45pm, @ 624 West
                                   Division Street, Apartment # 1403
                                   Chicago, Illinois


6. Preliminary Hearing held on: Arraignment held on September 6th, 2000

7. Indictment/Information Number: 00-CR-20175

8. Place of Trial:           Circuit Court of Cook County
                             County Department-Criminal Division
                             2600 S. California Ave.
                             Chicago, Illinois 60608

9. Judge Presiding: Clay

10. Type of Trial:   Bench Trial

11. Name of Trial Counsel: Asst. Public Defender-Lafarrell Moffett

12. Name of Prosecuting Attorney: Asst. State Attorney-Lawrence X. O'Reilly /
                                          and   David Weiner.

13. Date of Conviction: September 9th, 2002

14. Date of Sentencing: November 1st, 2002

15. Length of Sentence: 30 years for Murder, concurrent with 5 years Agg. Battery

16. A Timely Appeal was filed on: February 5th, 2003

17. Disposition of Direct Appeal: On _____, 2004, The Illinois Appellate
                                  Court, First District, Affirmed petitioner's
                                  Conviction and Sentence

18. Appellate Attorney:


19. Petition for Leave to Appeal: On <u>March 30, 2005</u>, the Illinois
    Supreme Court DENIED petition for Leave To Appeal No. 99787


20. Post Conviction Petition:  This is petitioner Montez Baker's
    initial petition for Post Conviction Relief and is therefore
    timely and contains factual violations of the United States
    and Illinois Constitutions, moreover, this petition states
    the 'Gist' of a Constitutional Claim and therefore merits an
    'Evidentiary Hearing, and then a New Trial and Sentencing
    Hearing.


21. Habeas Corpus Relief: Petitioner Montez Baker, <u>Pro-Se</u>, has not
    filed a petition for Habeas Corpus Relief.


-4-

22. <u>CLAIM-1</u>

PETITIONER WAS DENIED HIS CONSTITUTIONAL RIGHT TO THE EFFECTIVE ASSISTANCE
OF COUNSEL BY FAILING TO BE COUNSEL OF CONSTITUTIONAL STANDARDS IN VIOLA-
TION OF THE SIXTH AMENDMENT OF THE UNITED STATES CONSTITUTION, AND ARTICLE
1, § 8 OF THE ILLINOIS CONSTITUTION OF 1970, In That:

[A.] COUNSEL FAILED TO INVESTIGATE, INTERVIEW, AND CALL TO TESTIFY PATHOLOGIST
AND PRESENT EVIDENCE OF THE 'TRAC' OF THE WOUNDS TO THE VICTIM'S BACK WHICH
WOULD HAVE CONTRADICTED THE TRIAL COURT'S FINDING THAT VICTIM WAS POSSIBLY
TRYING TO GET AWAY FROM DEFENDANT WHEN HE WAS STABBED IN THE BACK BY THE
DEFENDANT IN MAKING HIS FINDING OF GUILT TO THE CHARGE OF FIRST DEGREE MURDER.

Here, petitioner contends that his court appointed counsel failed to

investigate the autopsy report and interview the pathologist that performed the

autopsy, and present scientific evidence of the 'Trac' of the wounds in the

victim's back. Petitioner argues that the 'Trac' or 'Angles' and 'Position' of

the wounds evidence was criticle and favorable, and would have corroborated his

claim of self-defense and would have supported the eye-witness accounts of the

stabbing, which in all accounts were contrary to the trial court's finding, and

failure to call the pathologist to testify was deficient, compounded by counsel's

stipulation to the medical examiner's report. Counsel's failures and stipulation

in this case caused prejudice to the petitioner, in that, had counsel investigated,

interviewed, and called the pathologist to testify, there is a reasonable proba-

bility that the outcome would have been different.

<u>FACTUAL ALLEGATIONS</u>

Petitioner first submits by incorporation his sworn affidavit that states

in part as follows: Petitioner was represented at trial by Asst. Public Defender

Lafarrell Moffett. Moffett was appointed by the Court. Petitioner avers that

he advised counsel during one of their conversations that at the time of the

5

stabbing incident he was highly intoxicated and did not recall exactly where
he had stabbed Mr. Landry during the physical struggle, but thought he had stab-
bed Mr. Landry in the stomach while defending himself from a physical attack by
Mr. Landry after telling him to leave his sister's apartment. Petitioner told
counsel that he feared for his safety after demanding Landry to leave, that Mr.
Landry was larger than petitioner and weighed more than petitioner, and that
Mr. Landry had a reputation, therefore, he went into his sister's kitchen to
arm himself with a knife in case Landry would attack him. Petitioner further
explained that landry followed him into the kitchen, then after picking up the
knife, went back into the living room as Landry continued to shadow his movements.

It was at this point the argument escalated, instead of leaving, Landry
struck petitioner in the face with his fist and a struggle ensued. Petitioner
told counsel he knew that during the struggle he stabbed Landry but did not know
where or how many times because he was drunk. (See Exhibit # 1 )

Petitioner asserts that during the course of counsel's investigation of
his case, counsel received from the State their "Discovery" and in that discovery
were reports made by Dr. Mitra Kalekar, a Forensic Pathologist, who performed an
autopsy on the deceased, Mr. Darryl Landry and recorded her findings in her
autopsy protocol. It is standard procedure for a pathologist to take measurements
of the wounds inflicted or received to a body. There are also tests done to de-
termine the 'Trac' of the wounds, or the angle, depth, and position of the wounds
to determine how the injuries were inflicted. Once these tests are performed the
results are recorded in the protocol.

In the instant case, counsel failed to investigate Dr. Kalkar's findings
and conduct an interview with Dr. Kalekar to ascertain the scientific aspects
of the wounds and present that information to the court by calling Dr. Kalekar
to testify at trial. Failure to do so in this self-defense case was deficient

6

perfomance.

The evidence presented at trial by the eye-witnesses was that the petitioner armed himself with a knife after arriving to his sister's house to only find Darryl "Ceasar" Landry sitting on the living room floor watching TV, after just having a physical altercation with Landry at his mother's house where petitioner lives. Petitioner's mother told Landry to leave her home after Landry fought with her son. Landry left. Petitioner's mother told him to take a walk and cool off.

Petitioner went by his sister's apartment where he also stays somtimes, and became upset to see Landry there and asked him to leave. Petitioner kicked Landry on the leg and told him to leave. Landry stood up and an argument ensued. Petitioner then went into the kitchen shadowed by Landry, retrieved a knife and returned to the living room still being shadowed by Landry. Once in the living room petitioner again told Landry to leave and waived the knife at Landry. Landry then punched petitioner in the face with his fist and a struggle began. Landry then penned petitioner's hands against the wall above his head. Petitioner managed to get his right hand free reached around Landry and stabbed him in the center of his back as witness Bell was trying to break the two men apart (Tr. Trans. R., E-68)

Landry was bleeding from his back. Bell tried to grab petitioner's hand holding the knife and cut his wrist (Tr.Trans. R., E-67) Landry and petitioner then fell down onto the couch and Bell pulled both men by their legs onto the floor and Landry was on top of petitioner, and petitioner's back was on the floor with the knife in his right hand (Tr. Trans. R., E-69, & E-74) Witness Harper arrooived and tried to help Bell separate the two men while they were on the floor struggling. Petitioner was able to turn over onto his hands and knees when Landry put petitioner in a choke-hold (Tr. Trans. R., E-26,27 & E-74). Witness Kelly saw petitioner stab Landry three times (Tr. Trans. R., E-51 & E-74) It becomes apparent that petitioner stabbed Landry while he was down on all fours (hands and knees)

7

and could not have stabbed Landry as he was trying to get away from petitioner
as the court concluded in making its finding of guilt for first degree murder.

## ARGUMENT

Petitioner contends that it is inexplicable to explain why counsel would
erroneously enter into a stipulation of Dr. Kalekar's autopsy results without
investigating the scientific data documented in the reports in regards to the
(Wound Tracs) angles, depths, and positions of each wound in order to determine
how Mr. Landry was stabbed when petitioner had made counsel fully aware that he
did not know exactly where he stabbed Mr. Landry and how many times.

Counsel should have known that he needed to investigate the scientific data
in the autopsy protocol in order to ascertain where his client stabbed the de-
ceased after petitioner advised counsel that he did not know where he stabbed the
victim because he was drunk. Petitioner further argues that it was deficient
performance for counsel not to investigate evidence that is paramount to an
affirmative defense of self-defense. Petitioner argues that simply reading the
autopsy report was a perfunctory investigation at best, and counsel should have
contacted and conducted an interview with Dr. Kalekar and call her to testify
as to his findings. Failure to do so in this instance was ineffective and can
not be deemed as trial strategy. Petitioner contends that he was prejudiced by
counsel's deficient performance, in that, this failure allowed the trial court
to draw an erroneous inference from the evidence, and that, had counsel conducted
a proper investigation he would have known that it was impossible for his client
to stab the deceased while he was attempting to get away from the petitioner, and
but for counsel's failure to adequately investigate the scientific evidence and
present it to the court the outcome of his trial would have been different.

8

<u>STATEMENT OF AUTHORITY</u>

First, Petitioner incorporates petitioner's "Affidavit" (Exhibit #1) in support of his claim of Ineffective Assistance of counsel, furthermore, petitioner attaches (Exhibit #'s 2,3,4, & 5) to show that he consistently attempted to obtain from counsel copies of any statements that he obtained from witnesses during any interviews, police reports, autopsy reports, and any other memorabilia that he had in his possession in order for him to perfect an effective post conviction petition for collateral review, apparently, counsel refused to tender these items to petitioner, and thereby, thwarting petitioner's right to redress his grievances on collateral review, where it is nearly impossibe for a post-conviction to sur- vive the dismissal stage of the post conviction proceeding without supporting the alleged claims with "Affidavits , Reports, and other supporting documents" outside the record.

The right to counsel gauranteed by the Constitution is the right to effective assistance of competent counsel. <u>United States v. Chronic</u>, 466 U. S. 648, 104 S.Ct 2039, @ 2044 (1984); <u>McMann v. Richardson</u>, 397 U.S. 759, 90 S.Ct 1441, @ 1449 (1970); <u>Gideon v. Wainwright</u>, 372 U.S. 335, 83 S.Ct 792 (1963). And "[a]lthough we ought not use the power of hindsight to second-guess the tactical decisions of counsel, neither ought we use that same power to construct theories of defense for a counsel whose lack of professional effort is clear from the pages of the record." <u>Emerson v. Gramley</u>, 91 F.3d 898, @ 909 (7th Cir. 1996)(Ripple, J., concurring in part, dissen- ting in part).

Counsel has a duty to bring to bear such skill and knoweledge as will render a trial a reliable adversarial testing process. Moreover, counsel has a duty to make reasonable investigation or to make a reasonable decision that makes particular investigation unnecessary. <u>Strickland v. Washington</u>, 466 U.S. 668, 104 S.Ct 2052, 2066 (1984) See also: <u>Patrasso v. Nelson</u>, 121 F.3d 297 (7th Cir. 1997)

9

An analysis focusing on mere outcome determination, without attention to whether the result of the proceedings was fundamentally unfair or unreliable, is defective. Lockhart v. Fretwell, 506 U.S. 364, 113 S.Ct. 838, 842 (1993).

Courts have repeatedly pronounced that "[a]n attorney does not provide effective assistance if he fails to investigate sources of evidence which may be helpful to the defense." Davis v. Alabama, 596 F.2d 1234, 1217 (5th Cir. 1979); See also Goodwin v. Balkcom, 684 F.2d 794, 805 (11th Cir. 1982)("[a]t the heart of effective representation is the independent duty to investigate and prepare").

Like here, it is inexplicable to explain why counsel entered into a "Stipulation" without investigating the contents of the autopsy reports in regards to the wounds the deceased received. It was deficient and unreasonable for counsel not to interview the pathologist that performed the autopsy and call her to testify to her findings in regards to the "wound tracs", meaning the depht, angles and exact position of the wounds which would have been helpful to the defense and refuted the trial court's conclusion that the decedent possibly was trying to get away from the defendant when he was stabbed four times in the back, wich was against the manifest weight of the evidence presented via eyewitnesses. This greatly prejudiced petitioner, and his defense.

An incorrect or erroneous stipulation may establish the first prong of the Strickland Test. See Coleman, 301 Ill.App.3d @ 47, People v. Shepard, 242 Ill. App. 3d @ 748

Wherefore, petitioner prays this Honorable Court to conduct an Evidentiary Hearing as to this claim and grant petitioner's petition for Post Conviction Relief and vacate petitioner's conviction and sentence and order a new trial.

[B.]  PETITIONER WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL ON DIRECT APPEAL
AS GAURANTEED BY THE CONSTITUTIONS WHERE APPELLATE COUNSEL FAILED TO
RAISE INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL FOR FAILING TO CONDUCT
AN ADEQUATE PRE-TRIAL INVESTIGATION AND FOR ERRONEOUSLY AGREEING TO
A STIPULATION OF THE AUTOPSY REPORT, THEREBY, FAILING TO BE COUNSEL OF
CONSTITUTIONAL STANDARDS SETFORTH IN THE SIXTH AMENDMENT OF THE UNITED
STATES CONSTITUTION, AS WELL AS, ARTICLE 1, § 8, OF THE ILLINOIS CONS-
TITUTION OF 1970.

Appellate counsel on direct review was ineffective for not raising a
cognizable claim of constitutional magnitude that was evidence in the record of
petitioner's trial and other errors that deprived petitioner of a fair trial,
including, but not limited to trial counsel's failure to conduct an adequate
investigation and present evidence favorable to petitioner's affirmative defense
of self-defense, and trial counsel's erroneous stipulation to the scientific
evidense that was crucial to defendant's defense. The petitioner suffered preju-
dice by Appellate Counsel's failure to raise these issues, however, these issues
have not been defaulted or waived, and are reviewable by this Court.


STATEMENT OF AUTHORITY


Here, the petitioner asserts that his appellate counsel was ineffective for
failing to raise the ineffectiveness of trial counsel issues and others that
'some evidence' was in the Record, more specifically, appellate counsel failed
to raise on Direct Appeal the claims which have been raised in this petition,
Appellate Counsel was ineffective for failing to raise these issues.

The failure of Appellate Counsel to recognize Constitutional deficiencies
and bring them to the attention of the State reviewing Court is inconsistent
with effective appellate representation . Evitts v. Lucey, 469 U.S. 387, 105 S.Ct.
830 (1985). Where appellate counsel's performance is objectively unreasonable
and deficient, the failure to raise issue on appeal will constitute "cause and
prejudice". See Freeman v. Lane, 962 F.2d 1252 (7th Cir. 1991).

23. CLAIM-II

PETITIONER WAS DENIED HIS CONSTITUTIONAL RIGHTS UNDER THE SIX AND FOURTEENTH AMENDMENT TO DUE PROCESS AND A FAIR TRIAL WHERE THE TRIAL COURT SENTENCED HIM TO CONSECUTIVE TERMS FOR FIRST DEGREE MURDER AND AGGRAVATED BATTERY WHERE OFFENSES OCCURRED IN A SINGLE COURSE OF ACTION AND NO SEVERE BODILY INJURY WAS INFLICTED AS REQUIRED BY STATUE TO IMPOSE CONSECUTIVE SENTENCING, THUS IN VIOLATION OF THE UNITED STATES CONSTITUTION, AS WELL AS ARTICLE 1, § 2, 8, OF THE ILLINOIS CONSTITUTION OF 1970.

Here, petitioner contends that the trial court erred when it imposed a consecutive sentences of 25 years for first degree murder, and 5 years for the aggravated battery convictions. Petitioner asserts that a consecutive sentence should not have been imposed where the offenses where committed in a single course of action and the aggravated battery conviction required that petitioner has "inflicted severe bodily injury" duringthe commission of that felony.

## FACTUAL ALLEGATIONS

In the instant case, petitioner was found guilty of first degree murder of Darryl "Ceasar" Landry after a bench trial. Petitioner was also found guilty of aggravated battery on Kip Bell, an eye-witness to the altercation between the petitioner and Landry. Kip Bell attempted to break up the fight between the two men. Petitioner who stabbed Landry with a knife during the altercation, which resulted in the death of Landry, was holding the knife in his hand when Kip Bell attempted to take the weapon from petitioner and was cut on his wrist in doing so. Bell testified that he reached up towards petitioner's hand holding the knife and cut his wrist on the knife. However, the trial court found petitioner guilty of aggravated battery on Bell. Subsequently the trial court sentenced petitioner to 30 years for the murder and 5 years for the aggravated battery to be served concurrently. On appeal the Appellate Court remanded for re-sentencing and for the trial court to sentence petitioner to consecutive sentences. The trial court,

12

apparently, not agreeing with the appellate court's holding, reduced petitioner's 30 year sentence for murder to 25 years and ordered that sentence to be served consecutive to the 5 year aggravated battery sentence originally imposed.

Petitioner argues that he should not have been found guilty of aggravated battery on Kip Bell because the State failed to prove that he intended to cause injury to Bell, and that Bell did not receive an injury that can be considered as "severe bodily injury" as both elements are required in the offense of aggravated battery, and to warrant mandatory imposition of consecutive sentencing.

## STATEMENT OF AUTHORITY

The Court held in People v. Whitney, 188 Ill.2d 91, 720 N.E.2d 225 (1999) that 730 ILCS 5/5-8-4(a) creates two exceptions to the general prohibition consecutive sentences for offenses arising out of a single course of conduct, and mandates consecutive sentencing where: (1) the defendant was convicted of a Class X or Class 1 felony and inflicted severe bodily injury, and (2)the defendant was convicted of criminal sexual assault or aggravated criminal sexual assault. Consecutive sentences are mandatory only for offenses that trigger the application of § 5-8-4(a); while the sentences for such offenses must be served consecutively, sentences for non-triggering offenses may be served concurrently. The stautory lanquage creating the "Severe Bodily Injury" exception is ambiguous because it is susceptible to "two equally reasonable and conflicting interpretations": (1) that consecutive sentences are mandated whenever the defendent inflicted severe bodily injury in a single course of criminal conduct, and (2) that consecutive sentencing is required only when the severe bodily harm resulted from a Class X or Class 1 felony, because the ambiguity is not removed by legislative history, the provision **must be interpreted in favor of the defdendant.** Thus, consecutive sentences are required only where the defendant was convicted of a Class X or Class 1 felony

13

and "inflicted severe bodily injury". Where the only severe bodily injury was a death for which defendant was convicted of murder, which does not trigger mandatory consecutive sentences because it is not a Class X or Class 1 felony, consecutives sentences were not mandatory.Although defendant was also convicted of aggravated discharge of a firearm, which is a Class 1 felony, the victim of that offense did not suffer any injury.

In the case at bar, the defendant caused sever bodily injury in the death of Mr. Landry which he was convicted of, and although defendant was also found guilty of aggravated battery the victim of that offense did not suffer **"severe bodily injury"** where the victim did not seek medical attention for the small cut on his wrist, and the victim injured himself on the knife as he tried to disarm defendant while defendant was fighting with another individual. See <u>People v. Durham</u>, 303 Ill. App.3d 763, 708 N.E.2d 1249(2nd Dist. 1999)(a gunshot wound causing a "small nick or cut", but not requiring medical treatment, **is not "severe bodily injury"**

Thus, it becomes apparent here, that the trial court abused its discretion when it sentenced petitioner to consecutive sentences and denied petitioner due process and a fail trial. Therefore, this court should revisit its original judgment sentencing petitioner to consecutive sentences.

<u>CONCLUSION</u>

Wherefore, Petitioner Montez Baker, pro-se, prays that this Honorable Court reviews his claims, appoint counsel to amend his pro se petition, then conduct an evidentiary hearing iad vacate his convictions and sentences.

Subscribed and Sworn to before me
  this 3 Day Of Sept ,2005

Respectfully Submitted,

_Montez Baker_
Montez Baker, (Prp Se)
Register No.K-70097 P.O. Box 711
Menard, Illinois 62259

"OFFICIAL SEAL"
Patricia Luers
Notary Public, State of Illinois
My Commission Exp. 12/15/2008

14

Montez Baker
Register No. 70097
Post Office Box 711
Menard, Illinois 62259


April 10, 2005


Mr. Lafarrell Moffett
Assistant Public Defender
2650 South California Ave.
Chicago, Illinois 60608


SUBJECT:    REQUEST FOR DOCUMENTS IN YOUR POSSESSION


Mr. Moffett,

As I spoke with you in person on February 20, 2005, requesting that you provide
me with any and all Statements of Witnesses, any memorabilia, notes, police
reports, and any scientific information that you may have obtained in the
course of your investigation and representation in my cause, People v. Baker,
Case Number 2000-CR-20175, your response was "that's jailhouse lawyer talk" as
you abruptly walked away.
As you may well know, a pro se petitioner can only advance an effective petition
for Post Conviction Relief by supporting his claims with records, affidavits,
and other documents outside of the record. While represented by you in this
cause, you have never provided me with any of the above-mentioned instruments
in the course of my trial. I am currently being assisted by a Law Advocate Clerk
here at Menard prison law library to develope, if any, claims of constitutional
deprevations to be raised on collateral review. Please forward to me the above
requested information at your earliest convenience. Thank-You.


Respectfully Requested,    *Montez Baker*


Montez Baker


1 copy/ File: MB

1 copy ARDC


EXHIBIT #2

STATE OF ILLINOIS   ]
                    ]SS
COUNTY OF RANDOLPH  ]

## AFFIDAVIT

I, MONTEZ BAKER, Petitioner , being first duly sworn upon oath depose and states  the following   matters are both true and correct made upon my personal knowledge and belief, and if called as a witness, I am competent to testify thereto, and that because of my allegations of violations of my Sixth Amendment right to Effective Assistance of Counsel, and violations of my Fourteenth Amendment right to due process and a fair trial by the trial court, it becomes apparent that I am unable to obtain "Affidavits" from the afore-mentioned parties to support my claims, and that I have made every possible attempt to obtain certain documents "Outside of the Record" from my trial attorney in order to prepare a petition for post-conviction relief, that is in compliance with the statue governing the Illinois Post Conviction Hearing Act, 725 ILCS 5/122-1 et seq., however, my trial counsel, apparently, refuse to turn over to me any of the "Discovery Materials" in my case, thus, thwarting my right to raise claims of ineffective assistance of counsel on collateral review. I have attached to my petition for Post Conviction Relief letters written to counsel requesting said documents.

Furthermore, prior to my trial in this matter I advised my court appointed counsel Mr. Lafarrell Moffett, during attorney-client conferences, that I did not know how many times I stabbed the deceased, or where I stabbed him during the altercation because I was "Drunk" at the time of the altercation. Counsel failed to investigate and interview the Dr. Kalekar, who performed the autopsy on the deceased, and failed to call her as a witness to testify to the "Trac" of the wounds inflicted on the deceased , and thereby, allowing the trial court to draw erroneous inference from the evidence where counsel entered into a stipulation of the autopsy report and other scientific evidence that was favorable to the defense, and counsel's agreement to stipulate to these findings undermined the defendant's self-defense claim where the court concluded that the deceased possibly was trying to get away from defendant when he was stabbed four times in the back.

THEREFORE, I, MONTEZ BAKER, the affiant states that counsel was made fully aware of the facts mentioned above, as well as, of my many requests for the discovery in my case, and counsel failed to be counsel gaurinteed by the Constitution.

Sworn before me on _____

_____

"OFFICIAL SEAL"
Patricia Luers
Notary Public, State of Ill...
My Commission Exp. 12/15/2008

Respectfully,

Montez Baker   Exhibit 1



Law Office of the
## COOK COUNTY PUBLIC DEFENDER
2650 S. CALIFORNIA • 7TH FLOOR • CHICAGO, IL 60608 • (773) 869-3217 TEL • (773) 869-3247 FAX

Edwin A. Burnette • Public Defender


April 22, 2005


Mr. Montez Baker
Register No. K70097
Post Office Box 711
Menard, IL 62259


Dear Mr. Baker:

February 20, 2005, was a Sunday.

I have forwarded your request to our Legal Resources Division.  Gook luck to you and the

"law advocate clerk" at the law library.


Sincerely,

LaFarrell Moffett

LAFARRELL MOFFETT
Assistant Public Defender


P.S.  Your last appeal has not been resolved.


EXHIBIT # 3

Mr. Montez Baker
Register No. K-70097
Post Office Box 711
Menard, Illinois 62259


May 20, 2005


Assistant Public Defender/ Mr. Lafarrell Moffett
Cook County Public Defender's Office, 7th Floor
2650 S. California Ave, Chicago, Illinois 60608

Subject:  Request for Pre-trial Documents

Dear Mr. Moffett,

In reponse to your letter dated April 22, 2005, advising that you
forwarded my request for any and all reports, statements from inter-
views, police reports, autopsy report, DNA reports ect., to your
Legal Resource Department. To date, I have not received anything
from your resource office. Please follow-up on my request that I
may file a timely petition for post-conviction relief. Thank-You.


Respectfully Requested, *Monty Baker*


Montez Baker, #K70097



1 cc: File/MB

1 cc; Reserved for ARDC




EXHIBIT # 4

Montez Baker
Register No.K70097
Post Office Box 711
Menard, Illinois 62259


June 27, 2005


Cook County Legal Resources Division
2650 S. California Avenue
Chicago, Illinois 60608


SUBJECT:  Request for Documents in regards to cause, People v. Baker, No. 00-CR-20175


Dear Sir/Madam

I am writng you in regards to documents in the case file of the above-mentioned
cause. I have contacted Counsel that represented me at trial in this case requesting
that he provide me with the requested documents in order for me to perfect a
post conviction petition by attaching supporting documents that are outside the
trial record. Mr. Lafarrell Moffett (Asst. Cook Co. Public Defender) advised that
he forwarded my request to your office. Please find attached a copy of my request
to Mr. Moffett, and a copy of his response. I have a deadline date of September
29, 2005, to file my petition for Post Conviction relief. I am requesting the
discovery materials of  this case. Please consider my request and respond at your
earliest convenience. Thank-You for your inestimable contribution to my cause.


Respectfully,  *Monty Baker*


Montez Baker




EXHIBIT # 5

STATE OF ILLINOIS
IN THE CIRCUIT COURT OF COOK COUNTY–CRIMINAL DIVISION
CHICAGO, ILLINOIS

| | | |
|---|---|---|
| PEOPLE OF THE STATE OF ILLINOIS, | ] | POST CONVICTION PETITION |
| | ] | |
| Plaintiff, | ] | DOCKET NUMBER:_____ |
| | ] | |
| –VS– | ] | Case Number: 00-CR-20175-01 |
| | ] | |
| MONTEZ BAKER, | ] | HONORABLE EVELYN B. CLAY, |
| Petitioner-Defendant. | ] | Judge Presiding. |

## NOTICE AND PROOF OF SERVICE

PLEASE TAKE NOTICE, that on  9-3-05  , 2005, the petitioner, namely
, submitted the Original and (2) copies of the
petitioner's petition for Post Conviction Relief with the Below Court Clerk,
and hereby certify that (1) copy was also served upon the below mentioned
State's Attorney.

HONORABLE DORTHY BROWN–CLERK           HONORABLE RICHARD A. DEVIVE
Cook County Circuit Court              Cook County State's Attorney
2650 South California Ave.             2650 South California Ave.
Chicago, Illinois 60608                Chicago, Illinois 60608

By depositing the above-mentioned instrument with the prison internal mail sys-
tem, at Menard Correctional Center on  9-3-05  , 2005, bearing pre-paid pos-
tage addressed to the above named persons.

Respectfully Submitted,

*Montez Baker*

Subscribed and Sworn to before Me
this  3  day of  Sept , 2005.

_____
Notary Public

"OFFICIAL SEAL"
Patricia Luer
Notary Public, State of Illinois
My Commission Exp. 12/15/2008

STATE OF ILLINOIS
IN THE CIRCUIT COURT OF COOK COUNTY–CRIMINAL DIVISION
CHICAGO, ILLINOIS

| | | |
|---|---|---|
| PEOPLE OF THE STATE OF ILLINOIS, | ] | POST CONVICTION PETITION |
| | ] | |
| Plaintiff, | ] | DOCKET NUMBER:_____ |
| | ] | |
| –VS– | ] | Case Number: 00–CR–20175–01 |
| | ] | |
| MONTEZ BAKER, | ] | Honorable EVELYN B. CLAY, |
| Petitioner–Defendant. | ] | Judge Presiding. |

## MOTION FOR APPOINTMENT OF COUNSEL

NOW COMES, the petitioner, namely  MONTEZ BAKER _____ , appearing in his own person, and respectfully moves this Honorable Court pursuant to 725 ILCS 5/122-4, of the Illinois Post Conviction Hearing Act to grant the above styled motion, in suppoett thereof, petitioner states as follows:

1. The petitioner is without finance wherewith to procure private Counsel for legal representation in connection with the Post Conviction proceeding.

2. The Illinois Post Conviction Hearing Act expressly contemplates the appointment of counsel for inpecunious petitioner's upon request.

3. The appointment of counsel is necessary in this case as further developement and investigation of the claims need to be undertaken. Moreover, appointment of counsel will be necessary to examine witnesses during an evidentiary hearing, especially in regards to claims of ineffective assistance of trial counsel, which are more appropriate for resolution in a Post Conviction proceeding.

4. The petitioner's petition for Post Conviction Relief contains claims all-edging Constitutional violations, in which, many of the claims, if not all of them, will have to be ajudicated in an Evidentiary Hearing.

-1-

5. The petitioner is incarcerated and has no means to conduct any investigative work to gather additional evidence in support of certain claims enunciated in the petition for Post Conviction Relief, therefore, appointment of counsel will fulfill this role.

6. The petitioner does not have familiarity with the procedural and the substantive aspects of the law.

WHEREFORE, the petitioner, __MONTEZ BAKER_____, respectfully prays this Honorable Court grants this motion for the reasons stated herein.

Respectfully Submitted,

*Montez Baker*

Subscribed and Sworn to before Me
This 3 rd day of _Sept_ , 2005.

"OFFICIAL SEAL"
Patricia Luers
Notary Public, State of Illinois
My Commission Exp. 12/15/2008

_____
Notary Public

-2-

STATE OF ILLINOIS
IN THE CIRCUIT COURT OF COOK COUNTY-CRIMINAL DIVISION
CHICAGO, ILLINOIS

| | | |
|---|---|---|
| PEOPLE OF THE STATE OF ILLINOIS, | ] | POST CONVICTION PETITION |
| Plaintiff, | ] | DOCKET NUMBER:_____ |
| | ] | |
| -VS- | ] | Case Number: 00-CR-20175-01 |
| | ] | |
| | ] | HONORABLE EVELYN B. CLAY, |
| MONTEZ BAKER, | ] | |
| Petitioner-Defendant. | ] | Judge Presiding. |

## MOTION FOR LEAVE TO PROCEED IN FORMA PAUPERIS

NOW COMES, the petitioner, MONTEZ BAKER           , appearing in his own proper person, and respectfully moves this Honorable Court pursuant to 725 ILCS 5/122-4 of the Illinois Post Conviction Hearing Act to grant the above styled motion, in support thereof, petitioner states as follows:

1. The petitioner is unable to provide securities or pay the fees and costs associated with the proceedings due to his indigency.

2. The petitioner receives no money from pensions, annuities, businesses, or inheritances, or life insurance payments.

3. The petitioner is not theowner of any stocks, bonds, notes, securities, or other valuable properties.

4. The petitioner is not gainfully employed and has been continuously in-carcerated since July 26th          , 2000 .

5. The petitioner does not contribute to the well being of anyone. The petitioner is not the owner of any savings or checking accounts.

-1-

6. The petitioner is not the owner of any real estate or automobiles.


7. The petitioner receives small amounts of money from family members for the purpose of enabling him to purchase basic necessities from the prison commissary.


WHEREFORE, THE PETITIONER, MONTEZ BAKER        , RESPECTFULLY PRAYS THIS HONORABLE COURT SUSTAINS HIS MOTION FOR THE RESONS EXPRESSED HEREIN.


Respectfully Submitted,

*Montez Baker*


Subscribed and Sworn to before Me
This  3  day of  Sept ,2005.

_____
Notary Public

"OFFICIAL SEAL"
Patricia Luers
Notary Public, State of Illinois
My Commission Exp. 12/15/2008

-2-

STATE OF ILLINOIS }SS
COUNTY OF RANDOLPH }SS

## AFFIDAVIT OF VERIFICATION

I, MONTEZ BAKER          , swears under penalties of perjury and states as follows:

On 9-3-05    , 2005, your affiant, deposited the Original and (2) cop-
ies of the below listed pleadings in the prison internal mail system, at Menard
Correctional Center, addressed to the Clerk of the Cook County Circuit Court
below.

> Honorable Dorthy Brown-Clerk
> Cook County Circuit Court
> 2650 South California Ave.
> Chicago, Illinois 60608

A. Motion for Leave to Proceed in Forma Pauperis.
B. Notice of Filing and Proof of Service.
C. Motion for Appointment of Counsel.
D. Petitioner's Petition for Post Conviction Relief,
   with Exhibits attached to petition.

This Affidavit of Verification is being submitted in compliance with 725 ILCS
5/122-1 (b) of the Illinois Post Conviction Hearing Act.

Respectfully Submitted,

*Montez Baker*

Subscribed and Sworn to before Me
this  3  day of  Sept , 2005

Notary Public

"OFFICIAL SEAL"
Patricia Luers
Notary Public, State of Illinois
My Commission Exp. 12/15/2008

No. 1-05-3937

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the Circuit Court |
| | ) | of Cook County, Illinois. |
| Respondent-Appellee, | ) | |
| | ) | |
| -vs- | ) | No. 00 CR 20175. |
| | ) | |
| MONTEZ BAKER, | ) | Honorable |
| | ) | Evelyn B. Clay, |
| Petitioner-Appellant. | ) | Judge Presiding. |

BRIEF AND ARGUMENT FOR PETITIONER-APPELLANT

MICHAEL J. PELLETIER
Deputy Defender

REBECCA I. LEVY
Assistant Appellate Defender
Office of the State Appellate Defender
203 North LaSalle Street - 24th Floor
Chicago, Illinois 60601
(312) 814-5472

COUNSEL FOR PETITIONER-APPELLANT

ORAL ARGUMENT REQUESTED



RECEIVED
CRIMINAL APPEALS

JUL 11 2006

300 RICHARD J. DALEY CENTER
RICHARD A. DEVINE

EXHIBIT H

## POINTS AND AUTHORITIES                                    Page

**The Circuit Court Erred In Dismissing Montez Baker's *Pro Se* Post-Conviction Petition Where He Alleged The Gist Of A Constitutional Claim That His Trial Attorney Was Ineffective For Stipulating To The Medical Examiner's Testimony, Because The Testimony Could Have Supported Baker's Claim That He Stabbed The Victim In Self-Defense.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

725 ILCS 5/122-2.1(a)(West 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

725 ILCS 5/122-2.1(a)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*People v. Coleman*, 183 Ill. 2d 366, 701 N.E.2d 1063 (1998) . . . . . . . . . . . . . . . . 13, 17

*People v. Jennings*, 411 Ill. 21, 102 N.E.2d 824 (1952) . . . . . . . . . . . . . . . . . . . . . 13

*People v. Lopez*, 317 Ill. App. 3d 1047, 740 N.E.2d 1179 (1st Dist. 2000) . . . . . . . . 13

*People v. Boclair*, 202 Ill. 2d 89, 789 N.E.2d 734 (2002) . . . . . . . . . . . . . . . . . . . . . 13

*People v. Von Perbandt*, 221 Ill. App. 3d 951, 583 N.E.2d 90 (1st Dist. 1991) . . . . . . 13

*People v. Dredge*, 148 Ill. App. 3d 911, 500 N.E.2d 445 (4th Dist. 1986) . . . . . . . . . 13

*People v. Edwards*, 197 Ill. 2d 239, 757 N.E.2d 442 (2001) . . . . . . . . . . . . . . . . . . . 13

725 ILCS 5/122 *et seq* (West 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 17

U.S. Const., amends. VI, XIV . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Ill. Const. 1970, art. I, sec. 8 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Strickland v. Washington*, 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 16

*Evitts v. Lucey*, 469, U.S. 387, 105 S. Ct. 830, 83 L. Ed. 2d 821 (1985) . . . . . . . . . . 14

*People v. Albanese*, 104 Ill. 2d 504, 473 N.E.2d 1246 (1984) . . . . . . . . . . . . . . . . . 14

*People v. King*, 316 Ill. App. 3d 901, 738 N.E.2d 556 (1st Dist. 2000) . . . . . . . . . . . 14

*People v. Tate*, 305 Ill. App. 3d 607, 712 N.E.2d 826 (1st Dist. 1999) . . . . . . . . . . 14-15

*People v. Coleman,* 301 Ill. App. 3d 37, 704 N.E.2d 690 (1ˢᵗ Dist. 1998) . . . . . . . . . . . . 15

*People v. Pugh,* 157 Ill. 2d 1, 623 N.E.2d 255 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*People v. Meja,* 247 Ill. App. 3d 55, 617 N.E.2d 799 (1st Dist. 1993) . . . . . . . . . . . . . 15

*People v. Collins,* 202 Ill. 2d 59, 782 N.E.2d 195 (2002) . . . . . . . . . . . . . . . . . . . . . . . 16

*People v. Smith,* 326 Ill. App. 3d 831, 761 N.E.2d 306 (1st Dist. 2001) . . . . . . . . . . . . 16

*People v. Whitehead,* 169 Ill. 2d 355, 662 N.E.2d 1304 (1996) . . . . . . . . . . . . . . . . . . 17

*People v. Harris,* 2002 Ill. LEXIS 1643 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*People v. Mahaffey,* 194 Ill. 2d 154, 742 N.E.2d 251 (2000) . . . . . . . . . . . . . . . . . . . . 17

## NATURE OF THE CASE

Montez Baker, petitioner-appellant, appeals from a judgment dismissing his petition for post-conviction relief.

No issue is raised concerning the charging instrument.  However, an issue is raised concerning the sufficiency of the post-conviction pleadings.

-1-

## ISSUE PRESENTED FOR REVIEW

Whether the circuit court erred in dismissing Montez Baker's *pro se* post conviction petition where he alleged the gist of a constitutional claim that his trial attorney was ineffective for stipulating to the medical examiner's testimony, where the testimony could have supported Baker's claim that he stabbed the victim in self-defense.

## JURISDICTION

Montez Baker, petitioner-appellant, appeals the dismissal of his post-conviction petition. The judgment being appealed was entered on October 21, 2005. (C44-49). Notice of appeal was timely filed on November 30, 2005, as the notice was mailed by petitioner on November 10, 2005. (C50). Jurisdiction therefore lies in this Court pursuant to Article VI, Section 6, of the Illinois Constitution, and Supreme Court Rule 651 (a).

## STATEMENT OF FACTS

After his arrest on July 25, 2000, the State charged Montez Baker with two counts of the first degree murder of Daryl "Cesar" Landry, and the aggravated battery with a knife of Kip Bell. (D.A. C9, C13-15).[1]  A bench trial was held on September 9, 2002, during which the evidence revealed that on July 25, 2000, Baker stabbed Landry three times after a verbal argument escalated into a physical altercation. (D.A. R. Sup. Vol. I, 25).

At Baker's trial, Timothy Harper and Kelly Sandifer testified that they were at Sandifer's apartment at 625 West Division, number 1401, watching television on the date of the incident. (D.A. Sup. R. Vol. I, 39-41, 65-66).  At 2:30 p.m., Harper's niece came over from apartment 1403.  (D.A. Sup. R. Vol. I, 41, 66).  After the niece spoke to Harper and Sandifer, they went to apartment 1403 and saw Baker and Landry verbally arguing.  (D.A. Sup. R. Vol. I, 39, 43, 67-70).  Harper thought the argument would stop, so he went back to Sandifer's apartment.  (D.A. Sup. R. Vol. I, 45).  Sandifer also returned to her apartment, but went back to 1403 after Harper's niece came to her apartment a second time.  (D.A. Sup. R. Vol. I, 71).  When Harper heard Sandifer screaming, he went to apartment 1403 and saw Baker and Landry fighting.  (D.A. Sup. R. Vol. I, 47).  Hollis Holloway and Kip Bell were also present.  (D.A. Sup. R. Vol. I, 47).

According to Harper and Sandifer, Baker and Landry were wrestling and holding each other.  (D.A. Sup. R. Vol. I, 47-48, 60, 72).  Baker had a butcher knife but Landry did not have anything in his hands.  (D.A. Sup. R. Vol. I, 48, 74).  Sandifer testified that she saw Baker stab

---

[1]Citations to the original direct appeal record are preceded by "D.A."  Citations to the post-conviction record are preceded by "P.C."  Citations to the resentencing record are preceded by "R."

Landry in the back three times. (D.A. Sup. R. Vol. I, 73). Harper and Bell tried to break them up, but they wouldn't stop fighting. (D.A. Sup. R. Vol. I, 49). Harper and Bell tried to get the knife from Baker, but he wouldn't let go. (D.A. Sup. R. Vol. I, 50). After Bell tried to get the knife, Sandifer saw that Bell's arm was bleeding. (D.A. Sup. R. Vol. I, 75).

At one point, Baker was on his hands and knees and Landry was on Baker's back. (D.A. Sup. R. Vol. I, 50, 61). Landry was holding Baker around the neck. (D.A. Sup. R. Vol. 1, 62). Harper tried to put his foot on the knife, which was on the floor in Baker's hand, but Baker did not let go. (D.A. Sup. R. Vol. 1, 50, 78). When Landry let go of Baker, Landry was bleeding from his head and shoulder blade. (D.A. Sup. R. Vol. 1, 51). Harper testified that he did not see anything in Landry's hands. (D.A. Sup. R. Vol. 1, 53). He saw Baker with a knife, but also saw a knife on the couch. (D.A. Sup. R. Vol. 1, 54).

Although Sandifer testified at trial that the second time she went to apartment 1403, Baker and Landry were already wrestling and she did not see any punches thrown, Sandifer changed her testimony when she was confronted with her grand jury testimony. (D.A. Sup. R. Vol. 1, 79-81). Before the grand jury, Sandifer described seeing Landry hit Baker in the face with his fist before they started tussling. (D.A. Sup. R. Vol. 1, 79-81). After being impeached with her grand jury testimony, Sandifer confirmed that she had seen Landry hit Baker in the face with his fist before they started fighting. (D.A. Sup. R. Vol. 1, 80-81, 83). According to Sandifer, Baker had the knife when Landry hit him. (D.A. Sup. R. Vol. 1, 81-82, 84). Baker stabbed Landry when Landry was on top of him. (D.A. Sup. R. Vol. 1, 81). Landry was holding Baker down with Baker's stomach on the floor and was holding Baker's arm that held the knife. D.A. Sup. R. Vol. 1, 81-83).

Harper and Sandifer testified that after the fight, Baker threw the knife into the incinerator in the hallway. (D.A. Sup. R. Vol. 1, 54-55, 77). Ten minutes later, Harper saw Baker at the incinerator at 630 West Evergreen wearing only his boxer shorts. (D.A. Sup. R. Vol. 1, 56, 63). When Harper asked Baker what he was doing, Baker responded that Landry shouldn't have taken his food and shouldn't have accused him of stealing food and that he would "kill that bitch again." (D.A. Sup. R. Vol. 1, 57). Harper knew that Baker, an alcoholic, was drunk at the time. (D.A. Sup. R. Vol. 1, 57-58).

Kip Bell testified that he was watching television at apartment 1403, where his girlfriend at the time, Zonya Tate, lived. (D.A. Sup. R. Vol. 1, 85-86). Tate is Baker's sister. (D.A. Sup. R. Vol. 1, 86). Landry and Holloway were also watching television with Bell in the living room. (D.A. Sup. R. Vol. 1, 88). Bell went to the bedroom, and while he was there he heard the sound of glass breaking in the living room. (D.A. Sup. R. Vol. 1, 88). Bell went back to the living room and saw Baker, Landry, and Holloway. (D.A. Sup. R. Vol. 1, 89). Landry was holding Baker's arm against the wall. (D.A. Sup. R. Vol. 1, 89). Baker had a knife in his hand. (D.A. Sup. R. Vol. 1, 89). Bell never saw Landry with a weapon. (D.A. Sup. R. Vol. 1, 90).

Bell saw Baker stab Landry once in the back. (D.A. Sup. R. Vol. 1, 90). Bell tried to break up Landry and Baker by grabbing their arms. (D.A. Sup. R. Vol. 1, 90). Bell grabbed Baker's hand holding the knife and, in the process of doing so, cut his wrist. (D.A. Sup. R. Vol. 1, 90). Bell saw that Landry was bleeding from his back. (D.A. Sup. R. Vol. 1, 91). When Landry and Baker fell on the couch, Bell grabbed them by their legs and pulled them to the floor. (D.A. Sup. R. Vol. 1, 91). When Landry and Baker were on the floor, Harper came in and tried to help Bell break them up. (D.A. Sup. R. Vol. 1, 91). Baker was on his back on the floor with

-6-

the knife in his right hand. (D.A. Sup. R. Vol. 1, 91-92). Harper stepped on Baker's hand and tried to get the knife out of it. (D.A. Sup. R. Vol. 1, 91-92). Landry grabbed Baker and put him in a tight headlock but as he lost more blood, he loosened his grip. (D.A. Sup. R. Vol. 1, 92). Landry's eyes rolled back and he fell to the ground. (D.A. Sup. R. Vol. 1, 92). Baker left the apartment with the knife. (D.A. Sup. R. Vol. 1, 92). At trial, Bell identified People's exhibit 34 as the knife that Baker stabbed Landry with. (D.A. Sup. R. Vol. 1, 93).

The parties stipulated that a forensic investigator processed the scene and recovered a 13-inch knife from the trash compactor on the first floor of 524 West Division. (D.A. Sup. R. Vol. 1, 100-01). The knife was inventoried and later examined by forensic scientists at the Illinois State Police Forensic Science Center. (D.A. Sup. R. Vol. 1, 102). No latent fingerprint impressions were suitable for comparison, but the presence of blood was detected. (D.A. Sup. R. Vol. 1, 102-04). The blood was not further analyzed as there was an insufficient amount. (D.A. Sup. R. Vol. 1, 106). The parties also stipulated that Dr. Kalekar of the Cook County Medical Examiner's Office performed an autopsy on Landry and prepared People's exhibit 35, a post-mortem examination report. (D.A. Sup. R. Vol. 1, 107). There is neither a description of the wounds, nor a cause of death included in the stipulation.

Catherine Kelly, a former assistant state's attorney, testified that she interviewed Baker at Area 3 on July 26, 2000. (D.A. Sup. R. Vol. 1, 111-12). After she introduced herself and advised him of his constitutional rights, Baker agreed to speak to her. (D.A. Sup. R. Vol. 1, 114). The first interview lasted twenty to thirty minutes. (D.A. Sup. R. Vol. 1, 115). ASA Kelly spoke to Baker a second time, along with Detective Sobolewski, for another half hour. (D.A. Sup. R. Vol. 1, 115-16). After the second conversation, Baker chose to give a handwritten

-7-

statement. (D.A. Sup. R. Vol. 1, 117).

In the statement, Baker explained that Landry is his brother's father. (D.A. Sup. R. Vol. 1, 125). On the afternoon of the offense, Baker first saw Landry at his mother's house at 630 West Evergreen, apartment 1303. (D.A. Sup. R. Vol. 1, 125). He and Landry got into a fight over some Popeye's chicken which was Landry's, but Baker had eaten a piece. (D.A. Sup. R. Vol. 1, 125). Baker's mother told Landry to leave, and Landry left. (D.A. Sup. R. Vol. 1, 125). She told Baker to cool down and to go for a walk. (D.A. Sup. R. Vol. 1, 125). Baker left his mother's house and walked around talking to himself about how mad he was about his fight with Landry. (D.A. Sup. R. Vol. 1, 125-26).

About an hour later, Baker went to his sister Zonya Tate's house at 624 West Division, apartment 1403. (D.A. Sup. R. Vol. 1, 126). When he got to Tate's apartment, Landry was sitting on the floor in the living room watching television with Holloway. (D.A. Sup. R. Vol. 1, 126). Bell was in the back room. (D.A. Sup. R. Vol. 1, 126). Baker kicked Landry's feet and told him to get out. (D.A. Sup. R. Vol. 1, 126). Baker was mad that Landry was at the apartment because he was still mad about the fight. (D.A. Sup. R. Vol. 1, 126). Landry got up and started to argue with Baker. (D.A. Sup. R. Vol. 1, 126).

Baker went into the kitchen. (D.A. Sup. R. Vol. 1, 126). Landry followed him. (D.A. Sup. R. Vol. 1, 126). Baker got a butcher knife that had a six to eight inch blade. (D.A. Sup. R. Vol. 1, 126). Baker and Landry went back into the living room. (D.A. Sup. R. Vol. 1, 126). Baker pointed the knife at Landry, waved it at him, and told him to get out. (D.A. Sup. R. Vol. 1, 126). Baker and Landry were face to face. (D.A. Sup. R. Vol. 1, 126). Landry punched Baker once in the face. (D.A. Sup. R. Vol. 1, 126-27). They started wrestling and fell on the couch.

(D.A. Sup. R. Vol. 1, 127). Baker still had the knife in his hand. (D.A. Sup. R. Vol. 1, 127).

Baker stabbed Landry two to three times. (D.A. Sup. R. Vol. 1, 127). He could not remember

where he stabbed Landry, but thought that he stabbed Landry once in the stomach. (D.A. Sup. R.

Vol. 1, 127).

Bell and Harper tried to get the knife away from Baker. (D.A. Sup. R. Vol. 1, 127).

Baker got scared and dropped the knife down the incinerator then ran to his mother's house and

put his clothes down the incinerator at 630 West Evergreen. (D.A. Sup. R. Vol. 1, 127). He

walked around until detectives picked him up. (D.A. Sup. R. Vol. 1, 127). At the conclusion of

his statement, Baker stated that he was giving the statement voluntarily, he had been treated well

by the police and ASA Kelly, and he was not under the influence of drugs or alcohol. (D.A. Sup.

R. Vol. 1, 127). After Baker reviewed the statement, he added that Landry put him in a choke-

hold after Baker stabbed him. (D.A. Sup. R. Vol. 1, 128).

After the statement was published, the State rested. (D.A. Sup. R. Vol. 1, 131). The

defense moved for a directed finding, which was denied. (D.A. Sup. R. Vol. 1, 132). The

defense then rested. (D.A. Sup. R. Vol. 1, 133). After closing arguments, the court found Baker

guilty of two counts of first degree murder of Daryl Landry and one count of aggravated battery

of Kip Bell. (D.A. Sup. R. Vol. 1, 155).

Baker's motion for a new trial was denied. (D.A. Sup. R. Vol. 2, 4). At the sentencing

hearing, the State presented evidence in aggravation concerning a charge of attempt robbery, to

which Baker pleaded guilty in 1997. (D.A. Sup. R. Vol. 2, 11-25). The State also presented the

testimony and victim impact statements of Landry's sister, Dawn Jones, and his mother, Velma

Lois Landry. (D.A. Sup. R. Vol. 2, 26, 30). For the defense, Baker's mother and Landry's ex-

wife, Linda Tate, and Baker's sister, Zonya Tate, testified in mitigation that Baker was helpful

around the house and good with children. (D.A. Sup. R. Vol. 2, 36-41). The mother of Baker's

two children, Ursula Johnson, testified that Baker took care of his children. (D.A. Sup. R. Vol.

2, 41-42). Baker's aunt, Louella Ellison, testified that Baker was kind and respectful. (D.A. Sup.

R. Vol. 2, 43-45).

After the State and defense presented arguments, Baker addressed the court and

apologized. (D.A. Sup. R. Vol. 2, 60). Baker said that he wished it hadn't happened, but he was

tired of Landry beating on him and he was just defending himself. (D.A. Sup. R. Vol. 2, 60-61).

Baker wished it hadn't happened, because he loved Landry like a father. (D.A. Sup. R. Vol. 2,

60-61). Baker also apologized to the Landry family. (D.A. Sup. R. Vol. 2, 61). The court

sentenced Baker to 30 years in prison on the two counts of first degree murder, which the court

merged for sentencing. (D.A. Sup. R. Vol. 2, 62-63; C91). The court also sentenced Baker to a

term of five years for aggravated battery, to run concurrent with the murder sentence. (D.A. Sup.

R. Vol. 2, 63; C91). Baker's motion to reconsider sentence was denied. (D.A. R. 4).

On direct appeal, this Court affirmed Baker's conviction, and remanded the case for

resentencing, finding that the circuit court was required to impose consecutive, rather than

concurrent, sentences. *People v. Baker*, 1-03-0688, Order at 7-8 (November 4, 2004). Pursuant

to this Court's order, the circuit court, on May 31, 2005, resentenced Baker to 25 years for the

murder, consecutive to 5 years for the aggravated battery. (R. Sup. C2). Thereafter, on June 22,

2005, Baker filed a timely notice of appeal, and that case is pending separately before this Court.

On September 3, 2005, Baker mailed his *pro se* post-conviction petition to the court.

(P.C. C19). In it he argued that he was denied the effective assistance of trial counsel where his

-10-

attorney failed to investigate, interview, and call the medical examiner to testify, rather than merely stipulating to the medical examiner's testimony. (P.C. C29). Baker stated that the medical examiner's protocol, or report of the autopsy, would have included information about the angles, depth, and size of the stab wounds to the back. (P.C. C29-30). The circuit court, when finding Baker guilty, stated that Landry must have been trying to get away from Baker at the time Baker stabbed him, and that the evidence thus did not support Baker's claims of either self-defense or second degree murder. (P.C. C31). Baker therefore argued that the protocol would have supported the fact that Landry was not trying to flee at the time of the stabbing, and that his attorney was ineffective for stipulating to the medical examiner's testimony, rather than investigating the angles of the wounds, and then questioning the medical examiner as a witness at trial. (P.C. C32). Baker also argued that his attorney on direct appeal was ineffective for failing to raise this issue there. (P.C. C35). Finally, Baker argued that he was denied his right to due process and his right to a fair trial when the circuit court sentenced him to consecutive sentences. (P.C. C36).

On October 21, 2005, the circuit court entered an order denying the post-conviction petition as frivolous and patently without merit. (P.C. C44-49). Thereafter, Baker filed a timely notice of appeal. (P.C. C52).

**ARGUMENT**

**The Circuit Court Erred In Dismissing Montez Baker's *Pro Se* Post-Conviction Petition Where He Alleged The Gist Of A Constitutional Claim That His Trial Attorney Was Ineffective For Stipulating To The Medical Examiner's Testimony, Because The Testimony Could Have Supported Baker's Claim That He Stabbed The Victim In Self-Defense.**

Baker's defense at trial was that he acted in self-defense when he stabbed Landry, and Baker asked for a finding of second degree murder under the mutual combat theory, rather than first degree. (D.A. R. Sup. Vol. 1, 149-50). The testimony from the witnesses at trial revealed that when Baker stabbed Landry, Landry was either facing Baker, or on top of him, trying to hold Baker down. (D.A. R. Sup. Vol. 1, 60-62, 89-92). Yet, when announcing her verdict, the judge stated that the stab wounds to Landry's back showed Baker's "violent aggression" toward Landry, who was "quite possibly at that time the wounds being in the back was attempting to get away from [Baker]." (D. A. R. Sup. Vol. 1, 155). In his *pro se* post-conviction petition, Baker argued that his attorney was ineffective for stipulating to the medical examiner's testimony, and for not investigating his or her findings, as the medical examiner would have had information regarding the angles, depth, and size of the stab wounds, which would have shown that Landry was not trying to get away from Baker at the time of the stabbing. (P.C. C32). Because Baker alleged the gist of a constitutional claim in his petition, the circuit court erred in dismissing it without appointing an attorney for Baker.

Under the Post-Conviction Hearing Act, a trial court is required to review a *pro se* post-

conviction petition within 90 days of filing. 725 ILCS 5/122-2.1(a) (West 2001). If the petition

is "frivolous or patently without merit," it may be summarily dismissed. 725 ILCS 5/122-

2.1(a)(2). The summary dismissal of a post-conviction petition presents a legal question subject

to *de novo* review. *See People v. Coleman*, 183 Ill. 2d 366, 387-88, 701 N.E.2d 1063 (1998).

A *pro se* post-conviction petition should not be summarily dismissed unless, "liberally

constru[ing] the petition in favor of the petitioner," and "accept[ing] as true all facts pleaded in

the petitioner's papers," the petition fails to articulate "the gist of a claim for relief." *Coleman*,

183 Ill. 2d at 380 (*quoting People v. Jennings*, 411 Ill. 21, 26, 102 N.E.2d 824 (1952)); *People v.*

*Lopez*, 317 Ill. App. 3d 1047, 1053, 740 N.E.2d 1179 (1st Dist. 2000). *Accord People v. Boclair*,

202 Ill. 2d 89, 789 N.E.2d 734 (2002). "Requiring *pro se* petitioners to state their claims in

greater detail than this would have the practical effect of depriving many such persons of their

right of meaningful access to the courts." *People v. Von Perbandt*, 221 Ill. App. 3d 951, 955,

583 N.E.2d 90 (1st Dist. 1991) (*quoting People v. Dredge*, 148 Ill. App. 3d 911, 913, 500 N.E.2d

445 (4th Dist. 1986)). *See also People v. Edwards*, 197 Ill. 2d 239, 245, 757 N.E.2d 442 (2001)

("gist" standard is "something less than a completely pled or fully stated claim" and therefore *pro*

*se* petitions need not be "factually complete"). "The process at the summary review stage

measures a petition's substantive virtue rather than its procedural compliance." *Boclair*, 202 Ill.

2d at 102. Because Baker's petition raised the gist of a meritorious constitutional issue, this

Court should reverse the circuit court's decision and remand this case for the appointment of

counsel and further proceedings on the petition pursuant to 725 ILCS 5/122 *et seq.* (West 2000).

Baker's *pro se* post-conviction petition was improperly dismissed because it presents the

gist of a constitutional claim. Baker alleges in his *pro se* petition that his trial attorney was

-13-

ineffective with regard to the medical examiner's testimony. (P.C. C32). He also alleges that his attorney on direct appeal was ineffective in failing to raise this issue. (P.C. C35). A defendant is guaranteed the right to effective assistance of counsel under the United States and Illinois Constitutions. This right applies to both trial counsel and counsel on appeals as of right. U.S. Const., amends. VI, XIV; Ill. Const. 1970, art. I, sec. 8; *Strickland v. Washington*, 466 U.S. 668, 80 L. Ed.2d 674, 104 S. Ct. 2052 (1984); *Evitts v. Lucey*, 469, U.S. 387, 105 S. Ct. 830, 83 L. Ed.2d 821 (1985); *People v. Albanese*, 104 Ill. 2d 504, 473 N.E.2d 1246 (1984). The applicable standard for a claim of ineffective assistance of counsel was set forth by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 80 L. Ed.2d 674, 104 S. Ct 2052 (1984), and adopted by the Illinois Supreme Court in *People v. Albanese*, 104 Ill. 2d 504, 473 N.E.2d 1246 (1984).

Ineffective assistance of counsel claims are subjected to the two-prong test articulated in *Strickland*, 466 U.S. at 687. Under *Strickland*, the defendant must show that (1) trial counsel's representation fell beneath an objective standard of reasonableness; and (2) there exists a reasonable probability that, but for counsel's error, the result of the trial would have been different. *Id.* Although there is a strong presumption that trial counsel's actions were the result of a sound trial strategy, the mere characterization of a decision not to call an available witness as "trial strategy" does not preclude inquiry into the reasonableness of that strategy. *Coleman*, 183 Ill. 2d at 397; *People v. King*, 316 Ill. App. 3d 901, 916, 738 N.E.2d 556 (1st Dist. 2000). Illinois courts have recognized that the failure to investigate or call a witness constitutes ineffective assistance of counsel where the witness was known to trial counsel and the witness's testimony may have been exonerating. *Coleman*, 183 Ill. 2d at 398; *King*, 316 Ill. App. 3d at 916; *People v.*

-14-

*Tate*, 305 Ill. App. 3d 607, 612, 712 N.E.2d 826 (1st Dist. 1999). Moreover, defense counsel's

stipulation to testimony may form the basis of a meritorious claim of ineffective assistance of

counsel. *See, e.g., People v. Coleman*, 301 Ill. App. 3d 37, 704 N.E.2d 690 (1st Dist. 1998);

*People v. Pugh*, 157 Ill. 2d 1, 623 N.E.2d 255 (1993); *People v. Meja*, 247 Ill. App. 3d 55, 617

'N.E.2d 799 (1st Dist. 1993).

  Here, Baker's attorney obviously knew that the medical examiner was available as a

potential witness, as the attorney stipulated to the medical examiner's testimony. (D.A. R. Sup.

Vol. 1, 106-07). Yet, within the stipulation, there was no mention of the location, size, or angle

of the stab wounds. (D.A. R. Sup. Vol. 1, 106-07). This information was critical to Baker's

defense, as it could have refuted the judge's contention that Landry was trying to flee from Baker

when Baker stabbed him, as this belief on the part of the judge eviscerated Baker's mutual

combat defense. If the medical examiner's evidence had shown that due to the nature of

Landry's wounds, Landry was not trying to flee from Baker, as the circuit court erroneously

stated when finding Baker guilty, there is a reasonable probability that Baker's mutual combat

defense would have succeeded.

  Indeed, the medical examiner's report was admitted as evidence at trial as People's

Exhibit # 35. In it, Dr. Kalelkar describes the three stab wounds to Landry's back, indicating

their size, angle, and depth. Two of the wounds had a downward angle, while the third had an

upward angle. (People's Exhibit # 35). This would tend to indicate that there was a struggle, as

Baker argued at trial, because if Baker had just stabbed Landry in the back without any struggle,

the wounds would presumably all be of the same angle. Yet, Baker's attorney, by stipulating to

the medical examiner's testimony, failed to question Kalekar regarding the implications of the

angles of the wounds, and such questioning could have supported Baker's mutual combat theory.

Therefore, in claiming that his attorney was ineffective for failing to call the medical examiner as a witness, Baker alleged the gist of a constitutional claim. *See Strickland,* 466 U.S. 668, 80 L. Ed 2d 674, 104 S. Ct 2052. Furthermore, while Baker did not attach an affidavit from the medical examiner to his petition, this should not be fatal to his argument. Generally, a petitioner is required to attach supporting documentation in the form of affidavits, records, or other evidence containing specific facts to support his or her claim in order to survive summary dismissal. *See, generally, People v. Collins,* 202 Ill. 2d 59, 69, 782 N.E.2d 195 (2002). Baker, however, attached his own affidavit to the petition stating that the facts he alleged are true. (P.C. C40). In his affidavit, he also explains that he has been unable to obtain affidavits from the relevant parties, and he also explains the lengths he went to in order to obtain outside documents supporting his claim. (P.C. C40). Indeed, Baker attached the letters he wrote to his trial attorney, and the responses from the attorney, to his petition, showing the effort he made, although ultimately fruitless, to obtain the documents. (P.C. C39, 41, 42, 43). As is apparent from these letters, his trial attorney in effect ignored his requests, and Baker, therefore, could not obtain the documents.

Furthermore, at this stage in the post-conviction proceedings, Baker is not required to fully prove his claims of ineffective assistance of counsel. Whether or not the petitioner would be entitled to relief is a separate matter not before the trial court at first stage review. *See, e.g., People v. Smith,* 326 Ill. App. 3d 831, 846, 761 N.E.2d 306 (1ᵈ Dist. 2001). "Substantive questions relating to the issues raised in the petition are not to be addressed at the first stage of the post-conviction proceeding. The test is whether defendant's alleged deprivation of his

-16-

constitutional rights is positively rebutted by the record." *Id.* (citing *People v. Coleman*, 183 Ill. 2d. 366, 385, 701 N.E.2d 1063 (1998)). Here, Baker has alleged the gist of a constitutional claim, and it is not positively rebutted by the record.

Therefore, because the medical examiner could have testified to information helpful to Baker's case, Baker raised a cognizable claim that his attorney was ineffective for not calling the medical examiner as witness at trial. To the extent this issue could have been raised on direct appeal, Baker also raised a cognizable claim that his appellate counsel was ineffective for failing to raise it there. Because Baker's petition presented the gist of a constitutional claim that his trial and appellate attorneys were ineffective, the doctrines of waiver and *res judicata* are relaxed. *See People v. Whitehead*, 169 Ill. 2d 355, 372, 662 N.E.2d 1304 (1996) (*overruled on other grounds*); *People v. Harris*, 2002 Ill. LEXIS 1643; *People v. Mahaffey*, 194 Ill. 2d 154, 171, 742 N.E.2d 251 (2000).

The circuit court erred in dismissing Baker's petition as frivolous. Accordingly, Baker asks that this Court reverse the circuit court's dismissal of his post-conviction petition, and remand his post-conviction petition for the appointment of counsel and further post-conviction proceedings in accordance with the Post-Conviction Hearing Act. 725 ILCS 5/122-1 *et seq.* (West 2000).

-17-

-18-

## CONCLUSION

For the foregoing reasons, Montez Baker, Petitioner-Appellant, respectfully requests that this Court reverse the circuit court's dismissal of his post-conviction petition and remand the cause for second stage proceedings under the Post-Conviction Hearing Act.


Respectfully submitted,


MICHAEL J. PELLETIER
Deputy Defender


REBECCA I. LEVY
Assistant Appellate Defender
Office of the State Appellate Defender
203 North LaSalle Street - 24th Floor
Chicago, Illinois  60601
(312) 814-5472

COUNSEL FOR PETITIONER-APPELLANT

-19-



NO. 1-05-3937

IN THE

APPELLATE COURT OF ILLINOIS

FIRST JUDICIAL DISTRICT

PEOPLE OF THE STATE OF ILLINOIS,

Respondent-Appellee,

vs.

MONTEZ BAKER,

Petitioner-Appellant.

Appeal from the Circuit Court of Cook County, Criminal Division,
Honorable EVELYN B. CLAY, Judge Presiding.

BRIEF AND ARGUMENT FOR
RESPONDENT-APPELLEE

RICHARD A. DEVINE,
State's Attorney,
County of Cook,
Room 309 - Richard J. Daley Center,
Chicago, Illinois 60602

Attorney for Respondent-Appellee

JAMES E. FITZGERALD,
ANTHONY M. O'BRIEN,
EDWARD HUNTER OLIVIERI,
Assistant State's Attorneys,
Of Counsel.

EXHIBIT I

LB-213

IN THE

APPELLATE COURT OF ILLINOIS

FIRST JUDICIAL DISTRICT

---

PEOPLE OF THE STATE OF ILLINOIS,

                                        Respondent-Appellee,

                        vs.

MONTEZ BAKER,

                                        Petitioner-Appellant.

---

## POINTS AND AUTHORITIES

### I.

**THE TRIAL COURT CORRECTLY DENIED DEFENDANT'S PETITION FOR POST-CONVICTION RELIEF AS FRIVOLOUS AND PATENTLY WITHOUT MERIT AS DEFENDANT FAILED TO PRESENT THE GIST OF A CONSTITUTIONAL CLAIM** .......................................... 9

*People v. Simms*, 192 Ill. 2d 348, 359 (2000) ................................................. 9

*People v. King*, 192 Ill. 2d 189, 192 (2000) ..................................................... 9

*People v. Richardson*, 189 Ill. 2d 401, 407 (2000) ......................................... 9

*People v. Cloutier*, 191 Ill. 2d 392, 397 (2000) ............................................. 9

*People v. Johnson*, 191 Ill. 2d 257, 268 (2000) ............................................. 9

*People v. Edwards*, 197 Ill. 2d 239, 244(2001) ............................................. 9

1

*People v. Barrow*, 195 Ill. 2d 506, 519 (2001) ............................................... 10

*People v. McNeal*, 194 Ill. 2d 135, 140 (2001).............................................. 10

*Strickland v. Washington*, 466 U.S. 668, 687 (1984) ..................................... 10

*People v. Hickey*, 204 Ill. 2d 585, 613 (2001) .............................................. 10

*People v. Erickson*, 183 Ill. 2d 213, 224 (1998) ............................................ 10

*People v. Morgan*, 187 Ill. 2d 500, 529-30 (1999) ................. ...................... 10

*People v. Easley*, 192 Ill. 2d 307, 344 (2000)................................................. 10

*People v. Edwards*, 195 Ill. 2d 142, 163 (2001) ............................................ 10

*People v. Palmer*, 162 Ill. 2d 465, 476 (1994)............................................... 10

*People v. Hillenbrand*, 121 Ill. 2d 537, 548 (1988)....................................... 10

 *People v. Fuller*, 205 Ill. 2d 308, 331 (2002) ............................................. 10, 11

*People v. Flores*, 128 Ill. 2d 66, 85-6 (1989)............................................... 11

*People v. Jones*, 323 Ill. App. 3d 451, 457 (1st Dist. 2001) .......................... 11

*People v. Roberts*, 318 Ill. App. 3d 719, 723 (1st Dist. 2000)....................... 11

*People v. Collins*, 202 Ill. 2d 59, 66-67 (2002) ............................................ 11

*In re Marriage of Pitulla*, 202 Ill. App. 3d 103, 120 (1990) ......................... 12

*People v. Maggette*, 195 Ill. 2d 336, 350 (2001) ........................................... 12

*People v. Johnson*, 183 Ill. 2d 176, 187 (1998)............................................. 13

*People v. Coleman*, 168 Ill. 2d 509, 522-23 (1995)....................................... 13

725 ILCS 5/122-1(b) (West 2000)................................................................. 11

725 ILCS 5/122-2 (West 2000) .................................................................... 12

## ISSUES PRESENTED FOR REVIEW

1) Whether the trial court erred in denying defendant's petition for post-conviction relief as frivolous and patently without merit.

## STATEMENT OF FACTS

Defendant Montez Baker was charged with first degree murder and aggravated battery under indictment number 00 CR 20175. (CL 13-16)  The charges arose after defendant fatally stabbed Darryl Landry and wounded Kip Bell on July 25, 2000. (Supp. R. E 25, 50, 67)  On September 19, 2002, defendant was tried before the Honorable Evelyn B. Clay and was found guilty of first degree murder and aggravated battery. (Supp. R. E 1, 133)  After considering the arguments in aggravation and mitigation, the trial court sentenced defendant to concurrent terms of thirty and five years' incarceration in the Illinois Department of Corrections. (Supp. R. A 61-62)

On July 25, 2000, Timothy Harper was watching soap operas at Kelly Sandifer's apartment located at 624 West Division, Chicago, Illinois. (Supp. R. E 16-17)  At around 2:30 P.M., Mr. Harper's niece came into the apartment to speak with them. (Supp. R. E 18)  After speaking with his niece, Mr. Harper and Ms. Sandifer went to apartment 1403, which was located next door to Ms. Sandifer's apartment. (Supp. R. E 19)  Defendant and the victim, Darryl Landry, were arguing inside the apartment. (Supp. R. E 20)

Mr. Harper had known both Mr. Landry and defendant for about nine years. (Supp. R. E 20-21)  After Mr. Harper saw the men arguing, he left the apartment because he thought the argument was going to stop. (Supp. R. E 22)  Mr. Harper and Ms. Sandifer went back to her

3

apartment. (Supp. R. E 22)

Kip Bell and Hollis Holloway were also in apartment 1403 when the fight started. (Supp. R. E 24, 64) At around 2:30 p.m., Mr. Bell was in a bedroom when he heard the sound of glass breaking. (Supp. R. E 65) As Mr. Bell entered the living room, he saw defendant holding a knife in his right hand. (Supp. R. E 66, 73) Mr. Landry did not have any weapons. (Supp. R. E 66)

At around the same time, Mr. Harper's niece came back to Ms. Sandifer's apartment and told them about the fight that was taking place in apartment 1403. (Supp. R. E 48) Again, Ms. Sandifer went to apartment 1403. (Supp. R. E 48) Mr. Harper remained on the couch watching television. (Supp. R. E 48)

As Ms. Sandifer entered apartment 1403, she saw Mr. Landry and defendant wrestling. (Supp. R. E 49) Ms. Sandifer noticed that defendant was holding a large knife with a black handle. (Supp. R. E 50) There was nothing in Mr. Landry's hands. (Supp. R. E 25, 50-51) She then saw Mr. Landry hit defendant in the face. (Supp. R. E 57) The victim held defendant's arm against the wall so defendant could not stab him. (Supp. R. E 66) As Mr. Landry was holding defendant against the wall, defendant stabbed him three times in the back. (Supp. R. E 50, 67) Blood flowed from Mr. Landry's head and back. (Supp. R. E 52)

Meanwhile, Mr. Harper heard Ms. Sandifer screaming. (Supp. R. E 23) Mr. Harper rushed to apartment 1403. (Supp. R. E 23) As Mr. Harper entered the apartment, he also saw defendant holding a butcher knife in his hand. (Supp. R. E 25) Mr. Landry was bleeding from his head and his shoulder blade. (R. E 28) Mr. Harper joined Mr. Bell in attempting to separate defendant from Mr. Landry. (Supp. R. E 26, 67) As Mr. Bell was trying to grab defendant's hand, defendant

4

slashed Mr. Bell's left wrist with his knife. (Supp. R. E 51, 67) The men then fell onto the couch. (Supp. R. E 68) Mr. Bell grabbed both Mr. Landry and defendant by the legs and tried to drag them outside. (Supp. R. E 68) Mr. Harper tried to step on defendant's knife, but his grip was too tight. (Supp. R. E 27) Defendant would not let go. (Supp. R. E 27)

Mr. Landry also grabbed defendant to hold him down. (Supp. R. E 53, 69) His grip was tight at first. (Supp. R. E 69) However, as the victim lost more and more blood, his grip loosened. (Supp. R. E 69) His eyes rolled back. (Supp. R. E 69) Mr. Landry's body fell backwards to the apartment floor. (Supp. R. E 69) Finally, as Mr. Landry's blood poured onto the apartment floor, he stopped moving and lost consciousness. (Supp. R. E 29-30, 53)

Defendant left the apartment, walked over to the incinerator, and threw the knife down the chute. (Supp. R. E 31, 53-54) Defendant then ran down the hallway. (Supp. R. E 31) About ten minutes later, Mr. Harper saw defendant near another incinerator in a different building located at 630 West Evergreen, Chicago, Illinois. (Supp. R. E 33, 40) Defendant had thrown his clothes down the incinerator chute. (Supp. R. E 104) When Mr. Harper saw him, defendant only had his boxer shorts on. (Supp. R. E 33) Defendant also appeared to be drunk. (Supp. R. E 34) Mr. Harper asked, "What you doing, man?" (Supp. R. E 34) Defendant replied, "He should not have took my food." (Supp. R. E 34) Defendant then said that he would "kill that bitch again." (Supp. R. E 34) Defendant then walked around until detectives picked him up. (Supp. R. E 104)

Zbigniew M. Niewdach, a forensic investigator for the Chicago Police Department, was called to the scene on July 25, 2000. (Supp. R. E 77) At approximately 4:45 p.m., Investigator Niewdach arrived at the crime scene located at 624 West Division, apartment 1403. (Supp. R. E

5

77) Investigator Niewdach took photographs of the location and Mr. Landry's body. (Supp. R. E

78) He also recovered a knife with a black handle that was approximately thirteen inches in length

from the trash compactor. (Supp. R. E 78) He properly inventoried the knife and sent it to the

Illinois State Police Crime Laboratory for testing and analysis. (Supp. R. E 78) An examination of

the knife revealed an insufficient amount of blood to be further analyzed. (Supp. R. E 81, 83) The

examination did not reveal latent impressions suitable for comparison. (Supp. R. E 80)

Dr. Mitra Kalelkar of the Cook County Medical Examiner's Office performed an autopsy on

Mr. Landry's remains. (Supp. R.E 84) During the course of Dr. Kalelkar's examination, she

observed four injuries which included: a stab wound which entered the victim's right midback and

perforated the lung, a stab wound which entered the victim's left back and perforated the skin and

muscle, a stab wound which entered the right upper shoulder, and a non-penetrating puncture wound

to the left back. (Supp. R. E 112)

At approximately 6:30 P.M. on July 26, 2000, Cook County Assistant State's Attorney

Catherine Kelly, who was assigned to the Felony Review Unit, went to the Area 3 police station.

(Supp. R. E 87-88) ASA Kelly introduced herself to defendant and advised him of his rights.

(Supp. R. E 90) Defendant and ASA Kelly then had a brief conversation. (Supp. R. E 92) After

this conversation, ASA Kelly left the interview room. (Supp. R. E 92) She returned at about 9:15

p.m. (Supp. R. E 92) At 9:15 p.m., defendant and ASA Kelly had a second conversation. (Supp.

R. E 92) After this brief conversation, ASA Kelly memorialized defendant's statement in a

handwritten form. (Supp. R. E 94)

Defendant stated that everyone called him "Skeeter" because he had a lot of kids. (Supp. R.

6

E 102) Defendant stated that he knew Mr. Landry because he is the father of his brother. (Supp. R. E 102) Defendant first saw Mr. Landry at defendant's mom's house located at 630 West Evergreen, apartment 1303, in the afternoon of July 25, 2000. (Supp. R. E 102) He stated that he got into a fight with Mr. Landry over Popeye's chicken. (Supp. R. E 102)

Defendant stated that about an hour after the fight he went to the home of his sister, Zonya Tate, located at 624 West Division, apartment 1403. (Supp. R. E 103) He stated that Mr. Landry was on the floor in the living room, Mr. Holloway was sitting on a chair, and Mr. Bell was in a back room. (Supp. R. E 103) Defendant stated that he was mad that Mr. Landry was there because of their earlier fight. (Supp. R. E 103) Defendant stated that he kicked Mr. Landry in his feet and told him to get out. (Supp. R. E 103)

Defendant stated that he went into the kitchen and got a butcher's knife. (Supp. R. E 103) He stated that the blade of the butcher's knife was 6 to 8 inches. (Supp. R. E 103) Mr. Landry also went into the kitchen. (Supp. R. E 103) The two men then went into the living room. (Supp. R. E 103) Defendant stated that he pointed and waived the knife at Mr. Landry and told him to leave. (Supp. R. E 103) The two men were face to face. (Supp. R. E 103) Defendant stated that Mr. Landry punched him in the face and the two men began wrestling. (Supp. R. E 104) Defendant stated that he then stabbed Mr. Landry two or three times. (Supp. R. E 104)

Defendant stated that during the altercation Mr. Bell and Mr. Harper tried to get the knife away from him. (Supp. R. E 104) Defendant stated that he got scared and dropped the knife down the incinerator at 624 West Division and then ran to his mom's house and dropped his clothes down the incinerator at 630 West Evergreen. (Supp. R. E 104) Defendant stated that he walked

7

around until detectives picked him up. (Supp. R. E 104) Defendant was then given the opportunity to read through and make corrections to his statement. (Supp. R. E 105) Afterwards, he signed the bottom of each page of his statement to indicate that the statement was correct. (Supp. R. E 105)

The trial court found defendant guilty of first degree murder and aggravated battery. (Supp. R. E 156) After a hearing in aggravation and mitigation, the court sentenced defendant to concurrent thirty and five year terms for first degree murder and aggravated battery, respectively. (Supp. R. A 61-62)

On direct appeal, this Court affirmed defendant's conviction. However, this Court also remanded the case directing the circuit court to impose consecutive rather than concurrent sentences. *People v. Baker*, 1-03-0688, Order at 7-8 (November 4, 2004). The circuit court then resentenced defendant to twenty-five years for murder to be served consecutive to the five year sentence for aggravated battery. (R.Supp. C-2). Defendant then filed, *pro se*, a petition for post-conviction relief alleging (1) he received ineffective assistance of counsel when his attorney failed to call or interview the medical examiner who performed the autopsy on the victim, and where he stipulated to the contents of the medical examiner's testimony; (2) he received ineffective assistance of appellate counsel when his attorney failed to raise the issue of ineffective assistance of trial counsel on direct appeal; and (3) he was improperly sentenced to consecutive terms of imprisonment. (P.C. C-32, 5-6) The circuit court denied defendant's post-conviction petition as frivolous and patently without merit. (P.C. C 44-9) This appeal follows.

8

## ARGUMENT

### I.

**THE TRIAL COURT CORRECTLY DENIED DEFENDANT'S PETITION FOR POST-CONVICTION RELIEF AS FRIVOLOUS AND PATENTLY WITHOUT MERIT AS DEFENDANT FAILED TO PRESENT THE GIST OF A CONSTITUTIONAL CLAIM.**

A post-conviction petition is a collateral attack on prior judgment (*People v. Simms*, 192 Ill. 2d 348, 359 (2000)), and is limited to constitutional issues which were not and could not have been raised on direct appeal. *People v. King*, 192 Ill. 2d 189, 192 (2000). Where the petitioner raises non-meritorious claims, the court may summarily dismiss them. *People v. Richardson*, 189 Ill. 2d 401, 407 (2000).

Under the Act, a petitioner enjoys no entitlement to an evidentiary hearing. *People v. Cloutier*, 191 Ill. 2d 392, 397 (2000). In order to obtain a hearing, the petitioner has the burden of establishing that a substantial violation of his constitutional rights occurred at trial or sentencing. *People v. Johnson*, 191 Ill. 2d 257, 268 (2000). However, a *pro se* post-conviction petition may be summarily dismissed as frivolous or patently without merit during the first stage of post-conviction review unless the allegations in the petition, taken as true and liberally construed, present the "gist" of a valid constitutional claim. *People v. Edwards*, 197 Ill. 2d 239, 244(2001). Further, a post-conviction proceeding is not a direct appeal, but rather is a collateral attack on prior judgment. *People v. Barrow*, 195 Ill. 2d 506, 519 (2001). Therefore, the issues raised on post-conviction review are limited to those that could not be or were not previously raised on direct appeal or in prior post-conviction proceedings. *People v. McNeal*, 194 Ill. 2d 135, 140 (2001).

9

Petitioner first claims that he received ineffective assistance of trial counsel. In examining petitioner's claims of ineffective assistance of counsel, the trial court followed the two-pronged test of *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Under this standard, petitioner must show that counsel's representation fell below an objective standard of reasonableness, and that because of this deficiency, there is a reasonable probability that counsel's performance was prejudicial to the defense. *People v. Hickey*, 204 Ill. 2d 585, 613 (2001). "Prejudice exists when 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *People v. Erickson*, 183 Ill. 2d 213, 224 (1998) (citations omitted). A petitioner's failure to make the requisite showing of either deficient performance or sufficient prejudice defeats a claim of ineffectiveness. *People v. Morgan*, 187 Ill. 2d 500, 529-30 (1999).

Effective assistance of counsel in a constitutional sense means competent, not perfect, representation. *People v. Easley*, 192 Ill. 2d 307, 344 (2000). Courts indulge in the strong presumption that counsel's performance fell within a wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 690; *People v. Edwards*, 195 Ill. 2d 142, 163 (2001). Moreover, "the fact that another attorney might have pursued a different strategy is not a factor in the competency determination." *People v. Palmer*, 162 Ill. 2d 465, 476 (1994) (citing *People v. Hillenbrand*, 121 Ill. 2d 537, 548 (1988)).

Further, counsel's strategic decisions will not be second-guessed. Accordingly, to ruminate over the wisdom of counsel's advice is precisely the kind of retrospection proscribed by *Strickland* and its progeny. *See Strickland*, 466 U.S. at 689 ("[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight"); *see also People*

10

*v. Fuller*, 205 Ill. 2d 308, 331 (2002) (issues of trial strategy must be viewed, not in hindsight, but from the time of counsel's conduct, and with great deference accorded to counsel's decisions).

In the instant case, petitioner alleged that his trial counsel was incompetent for failing to investigate or call as a witness Dr. Mitra Kalekar, the forensic pathologist who performed the autopsy of Mr. Landry. Petitioner claimed that such an investigation would have demonstrated that the tracks of the stab wounds inflicted on Mr. Landry by petitioner support a theory of self-defense. "In general, whether to call a particular witness is a matter of trial strategy." *People v. Flores*, 128 Ill. 2d 66, 85-6 (1989) (citations omitted). Such a claim cannot form the basis for a claim of ineffective assistance of counsel unless the trial strategy is so unsound that counsel can be said to have entirely failed to conduct any meaningful adversarial testing of the State's prosecution. *People v. Jones*, 323 Ill. App. 3d 451, 457 (1st Dist. 2001). "When the defendant attacks the competency of his counsel for failing to call or contact witnesses, he must attach to his post-conviction petition affidavits showing the potential testimony of such witnesses and explain the significance of their testimony." *People v. Roberts*, 318 Ill. App. 3d 719, 723 (1st Dist. 2000).

The Illinois Supreme Court has rejected the contention that a petitioner's sworn verification can serve as a substitute for the "affidavits, records, or other evidence" mandated by section 122-2. *People v. Collins*, 202 Ill. 2d 59, 66-67 (2002). First, the Act itself clearly distinguishes between the sworn verification that defendant filed and the supporting "affidavits, records, or other evidence" that defendant neglected to file. *Id.* The necessity of a sworn verification is addressed in section 122-1 of the Act, which provides that a post-conviction proceeding is initiated by the filing of a petition "verified by affidavit." *Id.* citing 725 ILCS 5/122-1(b) (West 2000). The necessity of

11

attaching "affidavits, records, or other evidence" to the petition is addressed in section 122-2, which provides that "[t]he petition shall have attached thereto affidavits, records, or other evidence supporting its allegations or shall state why the same are not attached." *Id.* citing 725 ILCS 5/122-2 (West 2000). Thus, under the plain language of the Act, the sworn verification described in section 122-1 serves a purpose wholly distinct from the "affidavits, records, or other evidence" described in section 122-2. *Id.* The former, like all pleading verifications, confirms that the allegations are brought truthfully and in good faith. *Id. See, e.g., In re Marriage of Pitulla*, 202 Ill. App. 3d 103, 120 (1990). The latter, by contrast, shows that the verified allegations are capable of objective or independent corroboration. *Id.* To equate the two is not only to confuse the purposes of subjective verification and independent corroboration but also to render the "affidavits, records, or other evidence" requirement of section 122-2 meaningless surplusage. *Id. See People v. Maggette*, 195 Ill. 2d 336, 350 (2001) (statute should be construed so that no term is rendered superfluous or meaningless).

As explained by the trial court, petitioner did not make the requisite factual showing in his petition. Petitioner failed to submit an affidavit from any potential witnesses. Additionally, defendant failed to explain the significance of their testimony. Petitioner merely stated that he had requested from trial counsel "copies of any statements taken from witnesses during any interviews, police reports, autopsy reports, and any other memorabilia that he had in his possession." Petitioner failed to explain to what the witnesses would testify or how their testimony would further his claims of constitutional violations.  Moreover, a wealth of evidence was presented at trial which indicated that petitioner did not act in self-defense, that Mr. Landry was not armed, and that

12

petitioner was the initial aggressor, kicking and taunting Mr. Landry before stabbing him multiple times in the back. Therefore, his claim that counsel was ineffective for failing to contact the proposed witness must fail. Likewise, petitioner's claim that counsel rendered ineffective assistance when he stipulated to the autopsy report is similarly meritless.

Petitionert's claim that appellate counsel was ineffective for not raising the issue of trial counsel's own incompetence is also meritless. Where a petitioner claims that appellate counsel was deficient for failing to raise the issue of trial counsel's ineffectiveness, the focus necessarily must be on trial counsel's performance. *People v. Johnson*, 183 Ill. 2d 176, 187 (1998); *People v. Coleman*, 168 Ill. 2d 509, 522-23 (1995). As previously discussed, trial counsel's failure to interview, call, or investigate Dr. Kalekar and his decision to stipulate to the autopsy report do not amount to ineffective assistance of counsel. Thus, it cannot be maintained that appellate counsel's decision to not raise those issues likewise constituted incompetence. Because the trial court determined that petitioner's underlying claims of trial counsel's ineffectiveness lack support, petitioner's claims of ineffective assistance of appellate counsel likewise are without merit.

Finally, petitioner claims that he was improperly sentenced to consecutive terms of imprisonment for first degree murder and aggravated battery. However, as noted by this Court when it remanded this case for resentencing under a consecutive scheme, petitioner was convicted of first degree murder, a triggering offense, as well as aggravated battery, and severe bodily injury was inflicted. Therefore, petitioner's sentences must be consecutive. *People v. Baker*, No. 1-03-0688 (2004) (unpublished order under Supreme Court Rule 23). Thus, this claim is also meritless.

13

Accordingly, the finding of the trial court dismissing petitioner's petition for post-conviction relief should be affirmed.

## CONCLUSION

The People of the State of Illinois respectfully request that this Honorable Court affirm the holding of the trial court denying petitioner's petition for post-conviction relief.

Pursuant to *People v. Nicholls*, 71 Ill. 2d 166, 374 N.E.2d 194 (1978) and relevant statutory provisions 725 ILCS 5/110-7(h)(2004); 725 ILCS 130/13 (2004); 55 ILCS 5/4-2002.1 (2004), the People of the State of Illinois respectfully request that this Court grant the People costs and incorporate as part of its judgment and mandate a fee of $100.00 for defending this appeal. In addition, pursuant to *People v. Agnew*, 105 Ill. 2d 275, 473 N.E.2d 1319 (1985) and 55 ILCS 5/4-2002.1 (2004), the People respectfully request that this Court also grant the People an additional fee of $50.00 in the event oral argument is held in this case.

Respectfully Submitted,

RICHARD A. DEVINE,
State's Attorney,
County of Cook,
Room 309 - Richard J. Daley Center,
Chicago, Illinois 60602

<u>Attorney for Plaintiff-Appellee</u>

JAMES E. FITZGERALD,
ANTHONY M. O'BRIEN
EDWARD HUNTER OLIVIERI
Assistant State's Attorneys.
    Of Counsel.

15

## CONCLUSION

The People of the State of Illinois respectfully request that this Honorable Court affirm the holding of the trial court denying petitioner's petition for post-conviction relief.

Pursuant to *People v. Nicholls*, 71 Ill. 2d 166, 374 N.E.2d 194 (1978) and relevant statutory provisions 725 ILCS 5/110-7(h)(2004); 725 ILCS 130/13 (2004); 55 ILCS 5/4-2002.1 (2004), the People of the State of Illinois respectfully request that this Court grant the People costs and incorporate as part of its judgment and mandate a fee of $100.00 for defending this appeal. In addition, pursuant to *People v. Agnew*, 105 Ill. 2d 275, 473 N.E.2d 1319 (1985) and 55 ILCS 5/4-2002.1 (2004), the People respectfully request that this Court also grant the People an additional fee of $50.00 in the event oral argument is held in this case.

Respectfully Submitted,

RICHARD A. DEVINE,
State's Attorney,
County of Cook,
Room 309 - Richard J. Daley Center,
Chicago, Illinois 60602

Attorney for Respondent-Appellee

JAMES E. FITZGERALD,
ANTHONY M. O'BRIEN
EDWARD HUNTER OLIVIERI
Assistant State's Attorneys.
    Of Counsel.

15

No. 1-05-3937

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| **PEOPLE OF THE STATE OF ILLINOIS,** | ) | Appeal from the Circuit Court of Cook County, Illinois. |
| Respondent-Appellee, | ) | |
| | ) | |
| -vs- | ) | No. 00 CR 20175. |
| | ) | |
| **MONTEZ BAKER,** | ) | Honorable |
| | ) | Evelyn B. Clay, |
| Petitioner-Appellant. | ) | Judge Presiding. |

**REPLY BRIEF AND ARGUMENT FOR PETITIONER-APPELLANT**

MICHAEL J. PELLETIER
Deputy Defender

REBECCA I. LEVY
Assistant Appellate Defender
Office of the State Appellate Defender
203 North LaSalle Street - 24th Floor
Chicago, Illinois 60601
(312) 814-5472

COUNSEL FOR PETITIONER-APPELLANT

RECEIVED
APPEALS

SEP - 1 2006

309 RICHARD J. DALEY CENTER

EXHIBIT J

No. 1-05-3937

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the Circuit Court |
| | ) | of Cook County, Illinois. |
| Respondent-Appellee, | ) | |
| | ) | |
| -vs- | ) | No. 00 CR 20175. |
| | ) | |
| MONTEZ BAKER, | ) | Honorable |
| | ) | Evelyn B. Clay, |
| Petitioner-Appellant. | ) | Judge Presiding. |

## REPLY BRIEF AND ARGUMENT FOR PETITIONER-APPELLANT

**The Circuit Court Erred In Dismissing Montez Baker's *Pro Se* Post-Conviction Petition Where He Alleged The Gist Of A Constitutional Claim That His Trial Attorney Was Ineffective For Stipulating To The Medical Examiner's Testimony, Because The Testimony Could Have Supported Baker's Claim That He Stabbed The Victim In Self-Defense.**

The State's response requires a brief reply. First, the State spends much of its argument claiming that the court properly dismissed the petition because Baker cannot make the *Strickland* showing. *See Strickland v. Washington*, 466 U.S. 668, 104 S.Ct 2052 (1983), (St. Br. at 10). Yet, the State acknowledges that in order for a post-conviction petition to avoid first-stage dismissal, it "need only contain a simple statement presenting a gist of a claim for relief which is meritorious when considered in view of the record of trial court proceedings." (St. Br. 9, quoting *People v. Edwards*,

-1-

197 Ill.2d 239, 757 N.E.2d 442 (2001)).  Because Baker's petition was dismissed at the

first stage, he need not successfully make out the entire *Strickland* showing.  *See*

*Edwards*, 197 Ill.2d 239 (finding that because the standard for surviving first-stage post-

conviction proceedings is so low, *pro se* petitioners cannot be expected to adequately

explain the constitutional grounds for arguing their petition would likely succeed).

Moreover, in order to survive summary dismissal, a petitioner need only present

*a simple statement* that presents the gist of a constitutional claim.  *People v. Edwards*,

197 Ill. 2d 239, 757 N.E.2d 442 (2001); *People v. Dredge*, 148 Ill. App. 3d  911, 500

N.E.2d 445 (4th Dist. 1986) (emphasis supplied).  To set forth the gist of a constitutional

claim, the post-conviction petition need only present *a limited amount of detail*, and

hence need not set forth the claim in its entirety.  *Edwards*, 197 Ill. 2d at 244 (emphasis

supplied).  The issue, therefore, is not whether defense counsel can ultimately justify his

decision to stipulate to the medical examiner's testimony, rather than calling him as a

witness.  Neither the trial judge, nor Baker's attorney, has been called upon yet to

address the issue.  The State's discussion about Baker's attorney stipulating to the

testimony for "strategic" reasons is therefore premature.  (St. Br. at 10-11).  Thus,

because he sufficiently raised the gist of a constitutional claim, the circuit court erred in

dismissing Baker's post-conviction petition without appointing an attorney.

Accordingly, this court should reverse the dismissal and remand the case for second

stage review.

Next, the State spends much time arguing that Baker has not produced the

adequate attachments to support his petition.  (St. Br. at 11-12).  However, again, to

survive dismissal of a stage-one post-conviction petition a defendant need only state the

gist of a meritorious claim. *People v. Edwards*, 197 Ill. 2d 239, 245, 757 N.E.2d 442

(2001). As Justice McMorrow points out in her concurrence to the majority's opinion in

*People v. Boclair*, 202 Ill. 2d 89, 789 N.E.2d 734 (2002), the circuit court may dismiss a

post-conviction petition at the initial stage only if the petition is deemed "frivolous or

patently without merit." 202 Ill. 2d at 121. The *Boclair* majority determined that the

phrase "frivolous or patently without merit" refers *only* to the substance of the claim

alleged in the petition, and *not* to any procedural requirements or limitations imposed by

the Act (Section 122-2.1). 202 Ill. 2d at 122.

Justice McMorrow noted that the majority opinion in *Boclair*, decided

subsequent to *People v. Collins*, 202 Ill.2d 59, 782 N.E.2d 195 (2002), conflicts with

*Collins*, which allowed for summary dismissal of a post-conviction petition if

unsupported by affidavits, records or other evidence, since such documentation does not

refer to the substance of the petition or whether the petition states the "gist of a

meritorious claim." *Id.* at 123-124. Therefore, Justice McMorrow concluded the

majority opinion in *Boclair* overruled the *Collins* affidavit requirement *sub silencio*. *Id.*

at 127. Furthermore, this court has held that *Collins* does not require an affidavit in

every post-conviction petition. *People v. Hanks*, 335 Ill.App.3d 894, 899, 781 N.E.2d

601 (1ˢᵗ Dist. 2002) (finding that in cases where the record, contents of the court file and

the exhibits allow for objective and independent corroboration of the allegations, an

affidavit is not required for a post-conviction petition).

Thus, the failure to attach such supporting documentation is not necessarily fatal

to a petition for post-conviction relief where the allegations stand uncontradicted and are

supported by the record. *See People v. Smith*, 268 Ill.App. 3d 574, 581, 645 N.E.2d 313

(1ˢᵗ Dist. 1994); *People v. Bates*, 324 Ill.App.3d 812, 815-816, 755 N.E.2d 139 (1ˢᵗ Dist. 2001).

In *Bates*, the petitioner alleged that his trial attorney was ineffective for failing to call a witness which the petitioner claimed could have corroborated his defense. Bates did not attach an affidavit from the potential witness. However, the appellate court noted that his attorney alleged in a motion for continuance that the police reports contained information from the uncalled witness which supported the petitioner's claim of self-defense. The court therefore found that there was enough supporting documentation for the petition. *People v. Bates*, 324 Ill.App.3d, at 815. Important to the court's decision was the fact that the information contained in the record was uncontested by the State. *Id*.

In the instant case, the record itself supports Baker's claim. The medical examiner's report is contained within the exhibits to the record, and it states the information about the stab wounds (depth, angle, and size) that Baker contends would have supported his mutual combat claim at trial. (People's Exhibit #35). Additionally, Baker attempted to get more information from his trial attorney, as shown by the correspondence between he and his attorney that Baker attached to the petition, and he got nowhere. (P.C. C39, 41, 42, 43). Thus, Baker did all he could to attach supporting documentation, and what he was able to attach, combined with the record itself supporting his claim, is sufficient evidence under 725 ILCS 5/122-2.

Next, the State claims that there was "a wealth of evidence presented at trial which indicated that petitioner did not act in self-defense, that Mr. Landry was not armed, and that petitioner was the initial aggressor," and, thus, the circuit court could not

-4-

have possible found that the two were engaged in mutual combat, even had the medical examiner testified. (St. Br. at 12-13). However, as argued in Baker's initial brief, the circuit court was incorrect when it found that the stab wounds to Landry's back showed Baker's "violent aggression" toward Landry, who was "quite possibly at that time the wounds being in the back was attempting to get away from [Baker]." (D. A. R. Sup. Vol. 1, 155). The testimony from the eyewitnesses very clearly refuted this finding, because their testimony revealed that when Baker stabbed Landry, Landry was either facing Baker, or on top of him, trying to hold Baker down. (D.A. R. Sup. Vol. 1, 60-62, 89-92). Thus, the medical examiner's testimony could very well have helped with Baker's defense, as we know from the report that the stab wound were not all from the same angle, indicating that Baker may have stabbed Landry while Landry was indeed on top of him, and not as Landry was fleeing.

Finally, the State's discussion regarding Baker's consecutive sentences is irrelevant to this discussion, as Baker did not raise that issue in the appeal of his post-conviction petition dismissal. The circuit court erred in dismissing Baker's petition as frivolous. Accordingly, Baker asks that this Court reverse the circuit court's dismissal of his post-conviction petition, and remand his post-conviction petition for the appointment of counsel and further post-conviction proceedings in accordance with the Post-Conviction Hearing Act. 725 ILCS 5/122-1 *et seq.* (West 2000).

## CONCLUSION

For the foregoing reasons, Montez Baker, Petitioner-Appellant, respectfully requests that this Court reverse the circuit court's dismissal of his post-conviction petition and remand the cause for second stage proceedings under the Post-Conviction Hearing Act.

Respectfully submitted,


MICHAEL J. PELLETIER
Deputy Defender


REBECCA I. LEVY
Assistant Appellate Defender
Office of the State Appellate Defender
203 North LaSalle Street - 24th Floor
Chicago, Illinois 60601
(312) 814-5472

COUNSEL FOR PETITIONER-APPELLANT

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CRIMINAL DIVISION

PEOPLE OF THE STATE OF ILLINOIS,   )
                                       )

      Plaintiff-Respondent        )

                                       )           Post-Conviction
          v.                  )           00-CR-20175
                                       )           Judge Evelyn B. Clay

MONTEZ BAKER,                )

      Defendant-Petitioner.      )
                                       )

### ORDER

Petitioner, Montez Baker, seeks post-conviction relief from the judgment of conviction entered against him on November 1, 2002. Following a bench trial, petitioner was found guilty of committing first degree murder and aggravated battery in violation of Sections 9-1(A) and 12-4(B)(1) of the Illinois Criminal Code. 720 ILCS 5/9-1(A) and 5/12-4(B) (West 1992). Petitioner was subsequently sentenced to consecutive terms of 25 years and 5 years imprisonment. As grounds for post-conviction relief, petitioner claims that (1) he received ineffective assistance of trial counsel when his attorney failed to interview or call the medical examiner who performed the autopsy of the victim, and when he stipulated to the admission of the medical examiner's autopsy report; (2) he received ineffective assistance of appellate counsel when his attorney failed to raise the issue of ineffective assistance of trial counsel on appeal; and (3) he was improperly sentenced to consecutive terms of imprisonment.

EXHIBIT K

## BACKGROUND

Petitioner's conviction stems from the stabbing death of Darryl Landry and stabbing injury sustained by Kip Bell on July 25, 2000 at 624 West Division Street in Chicago.

## PROCEDURAL HISTORY

A direct appeal was taken to the Illinois Appellate Court, First Judicial District, wherein petitioner contended that (1) his first degree murder conviction should be reduced to second degree murder because he acted under the sudden and intense passion of mutual combat when he killed Landry; and (2) that his sentences were excessive. On November 4, 2004, petitioner's conviction was affirmed and his case was remanded for resentencing so that he would receive consecutive, rather than concurrent, sentences. *People v. Baker*, No. 1-03-0688 (2004) (unpublished order under Supreme Court Rule 23).

Following remandment, the trial court resentenced petitioner to consecutive terms of 25 and 5 years imprisonment, rather than concurrent terms of 30 years and 5 years imprisonment.

Petitioner sought leave to appeal to the Illinois Supreme Court. However, his petition was denied on March 30, 2005. *People v. Baker*, 830 N.E.2d 4, 2005 Ill. LEXIS 417 (2005). The record does not reflect whether petitioner sought further review in the United States Supreme Court.

## ANALYSIS

The instant petition was filed on September 14, 2005 and is before the court for an initial determination of its legal sufficiency pursuant to Section 2.1 of the Post-

2

Conviction Hearing Act. 725 ILCS 5/122-2.1 (West 2002); *People v. Holiday*, 313 Ill. App. 3d 1046, 1048, 732 N.E.2d 1, 2 (2000). A post-conviction petition is a collateral attack on prior judgment, *People v. Simms*, 192 Ill. 2d 348, 359, 736 N.E.2d 1092, 1105 (2000), and is limited to constitutional issues which were not and could not have been raised on direct appeal. *People v. King*, 192 Ill. 2d 189, 192, 735 N.E.2d 569, 572 (2000). Where the petitioner raises non-meritorious claims, the court may summarily dismiss them. *People v. Richardson,* 189 Ill. 2d 401, 407, 727 N.E.2d 362, 367 (2000).

Under the Act, a petitioner enjoys no entitlement to an evidentiary hearing. *People v. Cloutier*, 191 Ill. 2d 392, 397, 732 N.E.2d 519, 523 (2000). In order to obtain a hearing, the petitioner has the burden of establishing that a substantial violation of his constitutional rights occurred at trial or sentencing. *People v. Johnson*, 191 Ill. 2d 257, 268, 730 N.E.2d 1107, 1111 (2000). However, a *pro se* post-conviction petition may be summarily dismissed as frivolous or patently without merit during the first stage of post-conviction review unless the allegations in the petition, taken as true and liberally construed, present the "gist" of a valid constitutional claim. *People v. Edwards*, 197 Ill. 2d 239, 244, 757 N.E.2d 442, 445 (2001).

Further, a post-conviction proceeding is not a direct appeal, but rather is a collateral attack on prior judgment. *People v. Barrow*, 195 Ill. 2d 506, 519, 749 N.E.2d 892, 901 (2001). Therefore, the issues raised on post-conviction review are limited to those that could not be or were not previously raised on direct appeal or in prior post-conviction proceedings. *People v. McNeal,* 194 Ill. 2d 135, 140, 742 N.E.2d 269, 272 (2001).

Petitioner first claims that he received ineffective assistance of trial counsel. In examining petitioner's claims of ineffective assistance of counsel, this court follows the two-pronged test of *Strickland v. Washington*, 466 U.S. 668, 687, 80 L. Ed. 2d 674, 693, 104 S. Ct. 2052, 2064 (1984). Under this standard, petitioner must show that counsel's representation fell below an objective standard of reasonableness, and that because of this deficiency, there is a reasonable probability that counsel's performance was prejudicial to the defense. *People v. Hickey*, 204 Ill. 2d 585, 613, 792 N.E.2d 232, 251 (2001). "Prejudice exists when 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *People v. Erickson*, 183 Ill. 2d 213, 224, 700 N.E.2d 1027, 1032 (1998) (citations omitted). A petitioner's failure to make the requisite showing of either deficient performance or sufficient prejudice defeats a claim of ineffectiveness. *People v. Morgan*, 187 Ill. 2d 500, 529-30, 719 N.E.2d 681, 698 (1999).

Significantly, effective assistance of counsel in a constitutional sense means competent, not perfect, representation. *People v. Easley*, 192 Ill. 2d 307, 344, 736 N.E.2d 975, 999 (2000). Notably, courts indulge in the strong presumption that counsel's performance fell within a wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 690, 80 L. Ed. 2d at 695, 104 S. Ct. at 2066; *People v. Edwards*, 195 Ill. 2d 142, 163, 745 N.E.2d 1212, 1223 (2001). Moreover, "the fact that another attorney might have pursued a different strategy is not a factor in the competency determination." *People v. Palmer*, 162 Ill. 2d 465, 476, 643 N.E.2d 797, 802 (1994) (citing *People v. Hillenbrand*, 121 Ill. 2d 537, 548, 521 N.E.2d 900, 904 (1988)).

4

Further, counsel's strategic decisions will not be second-guessed. Indeed, to ruminate over the wisdom of counsel's advice is precisely the kind of retrospection proscribed by *Strickland* and its progeny. *See Strickland*, 466 U.S. at 689, 80 L. Ed. 2d at 694, 104 S. Ct. at 2065 ("[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight"); *see also People v. Fuller*, 205 Ill. 2d 308, 331, 793 N.E.2d 526, 542 (2002) (issues of trial strategy must be viewed, not in hindsight, but from the time of counsel's conduct, and with great deference accorded counsel's decisions).

In the instant case, petitioner alleges that trial counsel was incompetent for failing to investigate or call as a witness Dr. Mitra Kalekar, the forensic pathologist who performed the autopsy of Mr. Landry. Petitioner claims that such an investigation would have demonstrated that the tracks of the stab wounds inflicted on Mr. Landry by petitioner support a theory of self-defense. "In general, whether to call a particular witness is a matter of trial strategy." *People v. Flores*, 128 Ill. 2d 66, 85-6, 538 N.E.2d 481, 487-88 (1989) (citations omitted). Such a claim cannot form the basis for a claim of ineffective assistance of counsel unless the trial strategy is so unsound that counsel can be said to have entirely failed to conduct any meaningful adversarial testing of the State's prosecution. *People v. Jones*, 323 Ill. App. 3d 451, 457, 752 N.E.2d 511, 516 (1st Dist. 2001). "When the defendant attacks the competency of his counsel for failing to call or contact witnesses, he must attach to his post-conviction petition affidavits showing the potential testimony of such witnesses and explain the significance of their testimony." *People v. Roberts*, 318 Ill. App. 3d 719, 723, 743 N.E.2d 1025, 1028 (1st Dist. 2000). In the instant matter, petitioner has not made the requisite factual showing. Petitioner has

5

failed to submit an affidavit from any of these potential witnesses. Additionally, petitioner has failed to explain the significance of their testimony. Moreover, a wealth of evidence was presented at trial which indicated that petitioner did not act in self-defense, that Mr. Landry was not armed, and that in fact petitioner was the initial aggressor, kicking and taunting Mr. Landry before stabbing him multiple times. Therefore, his claim that counsel was ineffective for failing to contact the proposed witness must fail. Likewise, petitioner's claim that counsel rendered ineffective assistance when he stipulated to the autopsy report is similarly meritless.

Next, petitioner claims that appellate counsel was ineffective for not raising the issue of trial counsel's own incompetence. Where a petitioner claims that appellate counsel was deficient for failing to raise the issue of trial counsel's ineffectiveness, the focus necessarily must be on trial counsel's performance. *People v. Johnson*, 183 Ill. 2d 176, 187, 700 N.E.2d 996, 1001 (1998); *People v. Coleman*, 168 Ill. 2d 509, 522-23, 660 N.E.2d 919, 927 (1995). As previously discussed, trial counsel's failure to interview, call, or investigate Dr. Kalekar and his decision to stipulate to the autopsy report do not amount to ineffectiveness. Thus, it cannot be said that appellate counsel's decision to not raise those issues constituted incompetence. Because the court has determined that the underlying claims of ineffectiveness lack support, petitioner's claims of ineffective assistance of appellate counsel likewise are without merit.

Finally, petitioner claims that he was improperly sentenced to consecutive terms of imprisonment for first degree murder and aggravated battery. However, as noted by the appellate court when it remanded this case for resentencing under a consecutive scheme, petitioner "was convicted of first degree murder, a triggering offense, as well as

6

aggravated battery, and severe bodily injury was inflicted. Therefore, petitioner's "sentences must be consecutive." *People v. Baker*, No. 1-03-0688 (2004) (unpublished order under Supreme Court Rule 23). Thus, this claim is also meritless.

## CONCLUSION

Based upon the foregoing discussion, the court further finds that the issues raised and presented by petitioner are frivolous and patently without merit. Accordingly, the petition for post-conviction relief is hereby dismissed. Petitioner's request for leave to proceed *in forma pauperis* and for appointment of counsel is likewise denied.


ENTERED:    _____

Judge Evelyn B. Clay
Circuit Court of Cook County
Criminal Division

**DATED:**    _____

7