IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.* MONTEZ BAKER, | ) ) ) |
| Petitioner, | ) Civil Action No.: 08 C 918 ) |
| v. | ) Suzanne B. Conlon, Judge ) |
| GERARDO ACEVEDO, Warden, Hill Correctional Center, | ) ) ) ) |
| Respondent. | ) |

## MEMORANDUM OPINION AND ORDER

### BACKGROUND

After a state court bench trial in 2002, Montez Baker was convicted of the first degree murder of Darryl Landry and the aggravated battery of Kip Bell. Baker was sentenced to concurrent prison terms of 30 years and 5 years. In 2004, the Illinois appellate court affirmed Baker's convictions, but vacated his sentences and remanded for the imposition of consecutive sentences. The trial court re-sentenced Baker to consecutive prison terms of 25 years for murder and 5 years for aggravated battery. Baker's conviction and sentence on remand were affirmed and his post-conviction petition denied by Illinois courts. Baker is currently incarcerated at the Hill Correctional Center in Galesburg, Illinois, where he is in the custody of Warden Gerardo Acevedo.[1] Proceeding *pro se*, he petitions for a writ of *habeas corpus* pursuant to 28 U.S.C. § 2254. For the

---

[1] After the filing of this case, Baker was transferred to the Hill Correctional Center where Gerardo Acevedo is the warden. Warden Acevedo is the proper respondent and is substituted for the originally named respondent, Warden Donald A. Hulick. *See* Rule 2(a) of the Rules Governing Section 2254 Cases in the United States District Courts; Fed. R. Civ. P. 25(d)(1); *Bridges v. Chambers*, 425 F.3d 1048, 1049-50 (7th Cir. 2005).

reasons set forth below, the petition is denied.

## BACKGROUND

### I. The Trial

Factual findings of state courts are presumed correct in a federal *habeas* proceeding unless the petitioner rebuts the presumption with clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Daniels v. Knight*, 476 F.3d 426, 434 (7th Cir. 2007). The record does not reveal any evidence contrary to the findings of the Illinois courts. Accordingly, the following facts are taken from the Illinois appellate court's Rule 23 Order, *People v. Baker*, No. 1-03-0688, slip op. at 1-4 (Ill. App. Ct. 1st Dist. Nov. 4, 2004), filed in this case as Respondent's Exhibit A.

#### A. Timothy Harper's Testimony

Timothy Harper testified that on the afternoon of July 25, 2000, he and Kelly Sandifer went to an apartment where Baker and Landry were "arguing." Harper left the apartment and returned shortly to find Baker "fighting" or "sort of wrestling" with Landry. Baker had a butcher knife in his hand, Landry was weaponless, and there was another knife on a couch. Hollis Holloway and Kip Bell were also present and unsuccessfully tried to break up the fight. Bell pulled on Landry's legs, causing Baker and Landry to fall to the floor. At that point, Landry was bleeding from his head and his shoulder blade. Harper then stepped on the knife blade in an unsuccessful attempt to get it away from Baker. While Baker was on the ground, the knife was in his hand, resting on the floor. Landry was over Baker's back, holding Baker around his neck. After the fighting ceased, Baker left the apartment, threw the knife down the building's garbage incinerator, and ran down the hall. Approximately 10 minutes later, Harper saw Baker near the garbage incinerator in another building, dressed only in his boxer shorts. Harper asked Baker, "what you [sic] doing man?" Baker replied

that "[h]e should not have took [sic] my food." Baker also said that Landry should not have accused Baker of stealing food and that he "would kill that bitch again." Although Harper had not seen Baker consume any alcohol that day, he claimed Baker was drunk.

### B.     Kelly Sandifer's Testimony

Kelly Sandifer testified that she and Harper went to the apartment and saw Baker and Landry arguing. She left the apartment and returned shortly (without Harper) and saw Baker "wrestling" or "fighting" with Landry. She saw Baker stab Landry three times in the back with a knife, but Landry was weaponless. Harper then returned to the apartment and he and Bell attempted to break up the fight. Bell suffered a cut on his arm and Landry was bleeding from his head and back. At that point, Landry was holding Baker down "so he won't [sic] stab him again." Landry then lost consciousness, and Baker left the apartment and threw the knife down the building's garbage incinerator chute.

On cross-examination, Sandifer testified that she did not see any punches thrown between Baker and Landry. Defense counsel then impeached Sandifer with her grand jury testimony, where she testified that she had seen Landry "hit" Baker in the face. Sandifer also testified on cross-examination that when Baker stabbed Landry, Landry was on top of Baker, holding Baker's arms down. On re-direct, Sandifer testified that at the time Landry hit Baker, Baker already had the knife in his hand.

### C.     Kip Bell's Testimony

Kip Bell testified that on the afternoon of July 25, 2000, he, Holloway, and Landry were in the apartment where the fight occurred. He heard glass breaking in the living room, and when he entered, he saw Landry holding Baker's arm against the wall "so he wouldn't stab him." At that time, Baker had a knife in his hand, but Landry was weaponless. Bell testified he saw Baker stab Landry

3

once in the back. Bell then attempted to break up the fight, and was cut on the wrist in the process. As Baker and Landry fell on the couch, Bell saw that Landry's back was bleeding. Bell grabbed Landry and Baker by their legs and both Landry and Baker fell to the ground. Harper then entered the apartment and helped Bell in trying to break up the fight. Landry put Baker in a headlock, but began to lose his grip. Landry's eyes rolled back into his head and he fell to the ground. Baker then left the apartment with his knife in his hand. Bell testified he did not hear Baker and Landry argue and did not see any punches thrown.

### D. Assistant State Attorney Catherine Kelly's Testimony

Assistant State's Attorney Catherine Kelly testified that on July 26, 2000, Baker proffered a handwritten statement. In the statement, Baker stated he first encountered Landry at his mother's apartment (in a separate building), where a fight ensued between the two men. He then went for a walk to try to relax. About an hour later, he went to his sister's apartment, where he saw Landry and Holloway seated on the living room floor. Baker walked over to Landry, kicked his feet, and told him to leave because he was still angry with Landry about their fight earlier in the day. Landry stood up and the men began to argue. Landry followed as Baker went to the kitchen to grab a butcher knife with a six or eight-inch blade. When they returned to the living room, Baker began to point and wave the knife at Landry and told Landry to leave. Landry then punched Baker in the face and the two began to wrestle and fell on the couch. Baker then stabbed Landry two or three times, including once in the stomach. Bell and Harper attempted to get the knife away from him, and Baker became scared and dropped the knife down the incinerator of the building. Baker then returned to his mother's apartment building and threw his clothing down the incinerator.

### E. The Parties' Stipulations

4

The parties stipulated that a 13-inch Faberware knife with a black handle was recovered from the trash compactor of the building where the conflict arose. The knife did not contain any latent fingerprints suitable for comparison and did not contain a sufficient amount of blood to be tested. The State also admitted into evidence a certified report of the autopsy performed on Landry indicating that he died from multiple stab wounds, including four to his back.

### F. Baker's Defense

Baker did not call any witnesses or testify in his defense. The trial court rejected Baker's mutual combat theory and found him guilty of first degree murder and aggravated battery.

## II. Appeal and Collateral Proceedings

Baker based his direct appeal on three grounds: (1) his conviction for first degree murder should be reduced to second degree murder because the evidence established he acted under a sudden and intense passion resulting from serious provocation of mutual combat; (2) his sentences were excessive and should be reduced in light of the nature of the offenses and the mitigating evidence; and (3) the sentencing order should be amended to reflect a conviction of only one count of first degree murder, rather than two. Resp. Ex. B at 2. The appellate court affirmed Baker's convictions, finding that Baker was the aggressor and that a rational trier of fact could have found that there was no mutual combat sufficient to support a finding of serious provocation. Resp. Ex. A. However, the state appellate court vacated Baker's sentences and remanded for the imposition of consecutive sentences rather than concurrent ones. *Id.* at 8.

Baker then filed a *pro se* petition for leave to appeal in the Illinois Supreme Court, arguing his conviction should be reduced to second degree murder because the evidence established that Baker acted under a sudden and intense passion resulting from serious provocation of mutual

combat. Resp. Ex. E. The Illinois Supreme Court denied the petition for leave to appeal. Resp. Ex. F.

In addition to his direct appeal, Baker petitioned for post-conviction relief pursuant to 725 ILL. COMP. STAT. 5/122-1 *et seq.* In his *pro se* petition, he claimed that (1) his trial counsel was ineffective for failing to interview or call the medical examiner who performed the autopsy on Landry, and for stipulating to the medical examiner's report; (2) appellate counsel was ineffective for failing to raise trial counsel's ineffectiveness on direct appeal, and (3) the trial court improperly sentenced Baker to consecutive prison terms. Resp. Exs. G-J. His post-conviction petition was summarily denied as "frivolous and without merit." Resp. Ex. K. The Illinois appellate court affirmed, determining that Baker's allegations were inadequate to demonstrate the gist of a meritorious ineffective assistance of counsel claim. Resp. Ex. L. Baker filed a petition for leave to appeal the decision, which was denied. Resp. Exs. M, N.

On May 31, 2005, the trial court re-sentenced Baker to consecutive prison terms of 25 years for murder and 5 years for aggravated battery.[2] Resp. Ex. O. Baker appealed, arguing that the trial court erred in re-sentencing him without allowing him to present mitigating evidence and for failing to adequately admonish him regarding his right to appeal his sentence under Illinois Supreme Court Rule 605(a). Resp. Exs. P-R. The Illinois appellate court affirmed the sentence. Resp. Ex. S. Baker then filed a *pro se* petition for leave to appeal in the Illinois Supreme Court that raised the same claims as in the appellate court. Resp. Ex. T. The petition was denied. Resp. Ex. U.

In this *habeas* petition, Baker raises two claims: (1) ineffective assistance of trial counsel for

---

[2] The Illinois appellate court's remand of the sentence was stayed pending Baker's petition for leave to appeal to the Illinois Supreme Court. After the Illinois Supreme Court denied the petition, the Illinois appellate court issued the re-sentencing mandate on April 27, 2005.

6

failure call or investigate the medical examiner who performed the Landry autopsy, because the testimony would likely have corroborated Baker's mutual combat defense theory; and (2) the trial court erred in denying Baker's right to present mitigation factors during re-sentencing after the Illinois appellate court remanded the case for the imposition of consecutive sentences.

## DISCUSSION

### I.  Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996, 28 U.S.C. § 2254 provides that *habeas corpus* relief may be granted only if the state court proceeding "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court." 28 U.S.C. § 2254(d)(1). The state court's decision must be unreasonable; it is not enough for the state court to be wrong or that this court would decide the issue differently. *Danks v. Davis*, 355 F.3d 1005, 1008 (7th Cir. 2004). To grant *habeas* relief under the "contrary to" clause, the court must find that the state court reached a result opposite to that reached by the Supreme Court on materially indistinguishable facts. *See Terry Williams v. Taylor*, 529 U.S. 362, 405, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000); *Jackson v. Miller*, 260 F.3d 769, 774 (7th Cir. 2001). To obtain relief under the "unreasonable application" clause, a *habeas* petitioner must show that the state court's decision unreasonably applied clearly established Supreme Court precedent by unreasonably extending a rule to a context where it should not have applied or by unreasonably refusing to extend a rule to a context where it should have applied. *Jackson*, 260 F.3d at 774; *Virsnieks v. Smith*, --- F.3d ----, 2008 WL 867757, at *4 (7th Cir. Apr. 2, 2008).

Under § 2254, a petitioner must fairly present his federal claims to the state courts in one complete round of state appellate review before a federal court may grant *habeas corpus* relief.

7

*O'Sullivan v. Boerckel*, 526 U.S. 838, 845, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999). To satisfy "one complete round" of appellate review in Illinois, he must present his claims on either direct appeal or post-conviction review at each stage of the appellate process, including the Illinois Supreme Court. *Id.* at 847-48; *see White v. Godinez*, 192 F.3d 607, 608 (7th Cir. 1999) (applying the rule in the context of post-conviction proceedings).

If Baker meets the fair-presentment requirement, the court will conduct a deferential review of the state court decisions on his claims. *See* 28 U.S.C. § 2254(d); *see also Woodford v. Visciotti*, 537 U.S. 19, 24, 123 S.Ct. 357, 154 L.Ed.2d 279 (2002) (federal courts must give state court decisions the benefit of the doubt). The court cannot issue a writ of *habeas corpus* simply because, in its independent judgment, the state court decision applied law incorrectly. *Yarborough v. Alvarado*, 541 U.S. 652, 665, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004). A federal court must defer to state courts if their decisions are reasonable or "minimally consistent with the facts and circumstances of the case." *Schulz v. Page*, 313 F.3d 1010, 1015 (7th Cir. 2002) (citation omitted).

## II. Ineffective Assistance of Counsel For Failing to Call or Investigate the Medical Examiner's Report of Landry's Autopsy

Baker argues he received ineffective assistance of counsel because his attorney failed to investigate, interview, and call the State's medical examiner Dr. Mitra Kalekar as a witness, and for stipulating to Dr. Kalekar's medical report. During the trial, the parties stipulated that Dr. Kalekar performed an autopsy on Landry and prepared a post-mortem examination report.

Baker contends that had trial counsel called Dr. Kalekar as a witness, counsel could have demonstrated that the stab wounds supported a mutual combat theory, and could have refuted the inference that Landry was attempting to flee from petitioner. After Baker's ineffective assistance

8

of counsel claim was denied by the trial court in his post-conviction petition, the state appellate court affirmed the denial, holding that Baker's conclusory allegations were inadequate in demonstrating a "gist of a meritorious [ineffective assistance of counsel] claim," and failed to allege "what, if anything, the medical examiner would have testified to [or explain] how that testimony would have impacted the trial court's findings." Resp. Ex. L at 5-7.

Under *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), to establish a claim that Baker's lawyer was constitutionally ineffective, he must show both that his counsel's performance fell below an objective standard of reasonableness and that it prejudiced him. *Strickland*, 466 U.S. at 687-88; *Daniels*, 476 F.3d at 433-34. The analysis of a claim of ineffective assistance of counsel always begins with "a strong presumption in favor of adequate assistance, [and] then determines whether these acts or omissions fall outside of the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690; *Rutledge v. United States*, 230 F.3d 1041, 1049 (7th Cir. 2000).

Under a deferential standard of review, there is no reason to disturb the conclusion of the Illinois appellate court that counsel was not unreasonable by failing to investigate or call Dr. Kalekar to testify and by stipulating to the medical report. As the Illinois appellate court held, the record reflected Baker's counsel disclosed Dr. Kalekar as a potential witness, and therefore did not *fail* to investigate Dr. Kalekar, but rather purposefully chose to stipulate to his medical report rather than call him to testify. Thus, the court found that counsel's decision not to call Dr. Kalekar was strategic, rather than a failure to investigate. Resp. Ex. L at 5. This comes as no surprise because the medical report revealed the specific location, size, shape, and angle of the wounds that killed Landry, including several downward stab wounds to his back.. It is mere speculation to suggest that the

9

medical examiner would have testified differently, or that Dr. Kalekar would have been able to proffer *additional* information in support of a mutual combat defense. *Cf. United States v. Pergler*, 233 F.3d 1005, 1010 (7th Cir. 2000) (rejecting claim of ineffective assistance when counsel may have concluded that witnesses testimony would hurt defendant). Because counsel's strategic decision was sound at the time it was made, the tactical decision cannot support a claim of ineffective assistance of counsel. *See United States v. Cieslowski*, 410 F.3d 353, 360 (7th Cir. 2005).

There is also no reason to reject the conclusion of the appellate court that the prejudice prong of the *Strickland* test was not met. The Illinois appellate court found that prejudice could not be satisfied because beyond speculation, Baker failed to allege what Dr. Kalekar's testimony would have precisely stated. Resp. Ex. L at 5-7. Indeed, even in Baker's *habeas* petition, Baker fails to show what concrete information the investigation would have revealed, and that the information would have produced a different result. His blanket allegation that the testimony would have been favorable was deemed self-serving, and insufficient to sustain an ineffective assistance claim. *Cf. United States v. Ashimi*, 932 F.2d 643, 650 (7th Cir. 1991) (assertion that testimony would have been favorable is self-serving speculation and will not sustain an ineffective assistance claim). Moreover, the Illinois appellate court also found that any purported testimony from Dr. Kalekar did not counterbalance the evidence produced at trial indicating Baker was the aggressor, kicking and taunting Landry before stabbing him multiple times while fighting. The evidence at trial also showed that Landry was unarmed during the struggle and was trying to prevent Baker from stabbing him. This evidence demonstrated Baker's actions were disproportionate to any evidence of provocation by Landry. Accordingly, the assertion Dr. Kalekar *may* have attested to the *possibility* of mutual combat does not establish a likelihood the outcome in the case would have been different

because there was substantial, independent evidence to support the verdict. *Taylor v. Bradley*, 448 F.3d 942, 951 (7th Cir. 2006); *Whitman v. Bartow*, 434 F.3d 968, 972 (7th Cir. 2006). The Illinois appellate court's determination that Baker failed to satisfy the prejudice prong of *Strickland* was not unreasonable. *See, e.g., Barrow v. Uchtman*, 398 F.3d 597, 606 (7th Cir. 2005) (in light of evidence against petitioner, which included a recorded confession, the Illinois court's ruling on the second *Strickland* prong was not unreasonable); *Stuckey v. Hulick*, No. 07-2057, 2007 WL 4437222, slip op. at *2-3 (7th Cir. Dec. 18, 2007) (independent evidence established guilt thereby mitigating prejudice of ineffective assistance of counsel); *U.S. ex rel. Gilford v. Carter*, No. 98 C 3665, 1999 WL 543188, at *7-8 (N.D. Ill. July 22, 1999) (Marovich, J.) (evidence supported conclusion that defendant's self-defense theory was unwarranted).

### III. Failure to Allow Baker to Present Mitigating Evidence During Re-Sentencing Following Remand

Baker claims that on remand, the trial court erred in re-sentencing him to consecutive sentences without allowing him to present mitigation evidence. The State argues this claim is procedurally defaulted, and that the claim is nonetheless not cognizable on federal *habeas* review.

#### A. Exhaustion and Procedural Default

As noted above, before considering the merits of a *habeas* petition, the court must ensure that the petitioner has exhausted all available remedies in the state courts. 28 U.S.C. § 2254(b)(1)(A); *Lewis v. Sternes*, 390 F.3d 1019, 1025 (7th Cir. 2004). The exhaustion requirement is premised on concerns of comity; the state courts must be given the first opportunity to address and correct violations of their prisoner's federal rights. *Picard v. Connor*, 404 U.S. 270, 275, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971); *Perruquet v. Briley*, 390 F.3d 505, 514 (7th Cir. 2004). The petitioner must

11

"fairly present" his constitutional claims in one complete round of state review. *Baldwin v. Reese*, 541 U.S. 27, 30-31, 124 S.Ct. 1347, 158 L.Ed.2d 64 (2004); *Boerckel*, 526 U.S. at 845. Baker must have raised the same federal law claim in state court that is raised in the federal petition. *Duncan v. Henry*, 513 U.S. 364, 365-66, 115 S.Ct. 887, 130 L.Ed.2d 865 (1995); *Sweeney v. Carter*, 361 F.3d 327, 332 (7th Cir. 2004); *Chambers v. McCaughtry*, 264 F.3d 732, 737 (7th Cir. 2001).

Even if a petitioner has exhausted all state court remedies, his claim may nonetheless be barred under the related procedural default doctrine. The doctrine precludes the court from reaching the merits of a *habeas* petition when either: (1) the claim was presented to the state courts and was denied on the basis of an adequate and independent state law procedural ground; or (2) the claim was not presented to the state courts and it is clear those courts would now find the claim procedurally barred under state law. *Coleman v. Thompson*, 501 U.S. 722, 735, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991); *Perruquet*, 390 F.3d at 514. In other words, when a *habeas* petitioner fails to fairly present his claim to the state courts and the opportunity to raise that claim has now passed, the claim is procedurally defaulted. *Boerckel*, 526 U.S. at 853-54.

However, procedural default may be excused where a petitioner demonstrates either "cause for the default and actual prejudice" or a "fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750. Cause is an external impediment preventing a petitioner from presenting his federal claim to the state courts. *Murray v. Carrier*, 477 U.S. 478, 488, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986). Prejudice is a violation of a petitioner's federal rights "infecting his entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982). The burden for showing a miscarriage of justice is extremely high. *Schlup v. Delo*, 513 U.S. 298, 327-29, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995).

Respondent argues there are two grounds for procedural default that prevent the court from addressing the merits of Baker's re-sentencing claim. First, it contends procedural default is warranted because the Illinois appellate court did not review the merits of Baker's re-sentencing claim on the ground the claim was waived under Illinois law.[3] *See* Resp. Ex. S at 9. Indeed, the Illinois appellate court held that Baker waived his re-sentencing argument because no objection was made at the re-sentencing hearing nor did Baker raise the argument on a motion to reconsider his sentence. *Id.* at 6, 9. Therefore, the state appellate court's disposition of Baker's claim rested on adequate and independent state procedural grounds, now barring federal review of his claim. *See Miranda v. Leibach*, 394, F.3d 984, 992-97 (7th Cir. 2005) (even where waived claim reviewed for plain error, procedural default barred petitioner's claim).

Second, respondent contends Baker's re-sentencing claim is procedurally defaulted because Baker did not present the re-sentencing issue as a federal constitutional issue to the state court. In considering whether a claim was fairly presented in state court, a federal habeas court must strive to avoid "hypertechnicality." *Verdin v. O'Leary*, 972 F.2d 1467, 1480 (7th Cir. 1992). A petitioner need not cite "book and verse on the federal constitution" to fairly present his claim; instead he must simply present the "substance" of his federal claim in the state courts, *Picard*, 404 U.S. at 278, and must "in some manner, alert the state courts to the federal underpinnings of his claim." *Perruquet*, 390 F.3d at 519.

The Seventh Circuit has developed a detailed framework for analyzing whether a claim was fairly presented in state court. The court must consider whether petitioner (1) relied on federal cases

---

[3] The Illinois appellate court reviewed the forfeited claim for "plain error" under Illinois law and ultimately considered the claim waived. Resp. Ex. S at 9.

employing constitutional analysis; (2) relied on state cases applying constitutional analysis to a similar factual situation; (3) asserted the claim "in terms so particular as to call to mind a specific constitutional right"; or (4) alleged a pattern of facts that is "well within the mainstream of constitutional litigation." *Verdin*, 972 F.2d at 1473-74; *Perruquet*, 390 F.3d at 519-20; *Sweeney*, 361 F.3d at 332. None of these factors alone are determinative, and the court must "consider the specific facts of each case." *Verdin*, 972 F.2d at 1474.

Baker did not fairly present the federal nature of the re-sentencing issue to the Illinois appellate court, thereby precluding this court from reaching the merits of the claim. On direct appeal, where Baker first raised the issue, the entirety of Baker's argument was that the re-sentencing court failed to allow him to present mitigation evidence pursuant to state statutes 730 ILCS 5/5-5-3(d) and 730 ILCS 5/5-4-1(a). Resp. Ex. P at 12-17; Resp. Ex. R at 1-4. Significantly, Baker did not rely on any federal or state cases applying a federal constitutional analysis to a set of similar facts. *See, e.g., Lieberman v. Thomas*, 505 F.3d 665, 670 (7th Cir. 2007); *Wilson v. Briley*, 243 F.3d 325, 327 (7th Cir. 2001). Baker referred only to state court decisions, and failed to invoke the operative facts and legal principles controlling a federal issue in support of his claim. Therefore, Baker failed to adequately present his federal claim at each level of state court review, resulting in a procedural default of his claim. *Id.*; *Baldwin*, 541 U.S. at 32-34; *Verdin*, 972 F.2d at 1473-1475.

Baker does not present any cause or prejudice to warrant an exception to the aforementioned procedural defaults. Nor does Baker show that a miscarriage of justice would result if *habeas* relief is foreclosed. Nothing in this record remotely meets this high burden. Baker's procedural default cannot be excused. Accordingly, his claim that the trial court erred in failing to consider mitigating evidence during his re-sentencing is barred from *habeas* review.

## B.  Additional Grounds

Even assuming procedural default does not bar Baker's re-sentencing claim, his claim is not cognizable on federal *habeas* review. Baker asserts that the Illinois appellate court's adjudication of the re-sentencing claim failed to comport with state sentencing statutes 730 ILCS 5/5-5-3(d) and 730 ILCS 5/5-4-1(a).[4] However, this issue is not cognizable on federal *habeas* review because an alleged state law sentencing error does not involve a federal law error. 28 U.S.C. § 2254(a); *Dellinger v. Bowen*, 301 F.3d 758, 764 (7th Cir. 2002).

Second, Baker claimed federal constitutional error for failure to consider mitigating evidence at his re-sentencing, but this claim does not invoke clearly established Supreme Court authority. *See Calloway v. Montgomery*, 512 F.3d 940, 944-45 (7th Cir. 2008) (*habeas* relief unavailable where state court decision did not run afoul of "clearly established Federal law"); *Lockhart v. Chandler*, 446 F.3d 721 (7th Cir. 2006) (same). Although Baker appears to argue that his sentencing was void of *any* consideration of mitigating factors, the precise issue raised in the Illinois appellate court was not whether the re-sentencing court considered mitigation evidence *altogether*, but rather, whether the remand from the appellate court required the re-sentencing court to allow re-submission of mitigation evidence. This narrow issue - whether a trial court, when imposing consecutive sentences pursuant to a remand order, must allow a defendant to submit mitigation evidence - is foreclosed by § 2254(d)(1), because there is no clearly established Supreme Court authority supporting this claim.

Finally, Baker also appears to claim that his re-sentencing resulted in a disproportionate sentence. However, this claim fails because there has been no showing that the sentencing court

---

[4]Baker asserts that these statutes require a trial court to allow for presentation of mitigation evidence at re-sentencing. Pet. at 5e-5f

15

lacked jurisdiction to impose the sentence or committed a constitutional error making the sentence fundamentally unfair. *Gleason v. Welborn*, 42 F.3d 1107, 1112 (7th Cir. 1994) (citation omitted); *Bowens v. Clark*, 54 F.3d 779, slip op, at 2 (7th Cir. 1995). The sentence was within the statutory range and has not been shown to be "fundamentally unfair" through constitutional error. *See, e.g., Koo v. McBride*, 124 F.3d 869, 875 (7th Cir. 1997) (no showing of grossly disproportionate sentence warranting *habeas* relief); *cf. Harmelin v. Michigan*, 501 U.S. 957, 994-95, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991) (mandatory non-capital sentences that afford no opportunity to consider mitigating factors do not violate the Eighth Amendment). Accordingly, *habeas* relief must be denied on Baker's re-sentencing claim.

## CONCLUSION

For the reasons set forth above, the petition for a writ of *habeas corpus* is denied.

ENTER:

May 1, 2008

*Suzanne B. Conlon*

Suzanne B. Conlon
United States District Judge